1  Matthew C. Helland, CA State Bar No. 250451
   helland@nka.com
2  Daniel S. Brome, CA State Bar No. 278915
   dbrome@nka.com
3  NICHOLS KASTER, LLP
   235 Montgomery St., Suite 810
4  San Francisco, CA  94104
   Telephone: (415) 277-7235
5  Facsimile: (415) 277-7238

6
   Rachhana T. Srey, MN State Bar No. 340133*
7  srey@nka.com
   NICHOLS KASTER, PLLP
8  4600 IDS Center
   80 South 8th Street
9  Minneapolis, MN  55402
   Telephone: (612) 256-3200
10 Facsimile: (612) 338-4878
11 *Admitted pro hac vice

12 Benjamin L. Davis, MD Bar No. 29774*
   bdavis@nicholllaw.com
13 The Law Offices of Peter T. Nicholl
   36 Charles Street, Suite 1700
14 Baltimore, MD 21201
15 *Pro hac vice application forthcoming

16 Attorneys for Plaintiff and those similarly situated

17                  **IN THE UNITED STATES DISTRICT COURT**

18                    **NORTHERN DISTRICT OF CALIFORNIA**

19

20  Aaron Kudatsky, individually and on behalf of | Case No.        **3:19-CV-07647-WHA**
21  all others similarly situated,
                                                  | **PLAINTIFFS' REPLY IN SUPPORT OF**
22                                    Plaintiff,   | **MOTION FOR CLASS CERTIFICATION**
                                                  | **PURSUANT TO FED. R. CIV. P. 23(b)**
23          v.
                                                  | **Date: January 7, 2021**
24  Tyler Technologies,                           | **Time: 8:00 am**
                                                  | **Courtroom: 12 – 19th Floor**
25                                    Defendant.
                                                  | **Judge: Hon. William H. Alsup**
26

27

28

---

PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR CLASS CERTIFICATION          3:19-cv-07647-WHA

1

## <u>TABLE OF CONTENTS</u>

I.    **Introduction** ..................................................................................................... 1

II.   **Tyler's Administrative Exemption Presents Common Questions of Law or Fact, which Predominate over Individual Issues** ..................................................... 2

      A.   **ICs' Work is not Directly Related to Management or General Business Operations** .................................................................................... 3

      B.   **Whether ICs Exercise Legally Significant Discretion Will be Determined from Common Evidence** ...................................................... 6

      C.   **Tyler's Uniform Classification *Analysis* is Highly Relevant** ..................... 9

III.  **Whether Tyler Is Liable Under California Law for Traveling ICs is a Common, Predominant Question** .............................................................................. 10

      A.   **Non-California Residents Have Overtime and Waiting Time Claims** ... 11

IV.  **Individual Damages are Expected in Wage and Hour Cases, and do not Defeat Certification** ............................................................................................... 13

V.    **The Other Rule 23 Factors are Satisfied** ................................................ 14

VI.  **Conclusion** ................................................................................................. 15

1

## <u>TABLE OF AUTHORITIES</u>

2

**Cases**

3    *Abdullah v. U.S. Sec. Assocs., Inc.*, 731 F.3d 952 (9th Cir. 2013)....................................................2

4    *Alakozai v. Chase Inv. Servs. Corp.*, 2014 WL 5660697 (C.D. Cal. Oct. 6, 2014) ........................5

5    *Amgen v. Connecticut Retirement Plans and Trust Funds*, 568 U.S. 455 (2013)............................2

6    *Anderson v. Mount Clemens Pottery Co.*, 328 U.S. 680 (1946) ....................................................13

7    *Armstrong v. Davis*, 275 F.3d 849 (9th Cir. 2001) ........................................................................2

8    *Ayala v. Antelope Valley Newspapers, Inc.*, 59 Cal. 4th 522 (2014) ..........................................8, 9

9    *Bisaccia v. Revel Sys. Inc.*, 2019 WL 861425 (N.D. Cal. Feb 22, 2019)......................................13

10   *Brinker Rest. Corp. v. Superior Court*, 53 Cal. 4th 1004 (2010) ..........................................2, 6, 8

11   *Campbell v. Vitran Express Inc.*, 2015 WL 7176110 (C.D. Cal. Nov. 12, 2015)...........................8

12   *Cruz v. Lawson Software, Inc.*, 764 F. Supp. 2d 1050 (D. Minn. 2011)........................................5

13   *Deluca v. Farmers*, 2018 1981393 (N.D. Cal. Feb. 27, 2018)................................................8, 15

14   *Dunbar v. Albertson's, Inc.*, 141 Cal. App. 4th 1422 (2006)........................................................5

15   *Eicher v. Advanced Bus. Integrators, Inc.*, 151 Cal. App. 4th 1363 (2007) ..........................4, 5, 6

16   *General Tel. Co. of Southwest v. Falcon,* 457 U.S. 147 (1982)....................................................15

17   *Gordon v. Model N, Inc.*, 2016 WL 3194240 (N.D. Cal. June 9, 2016) ............................4, 5, 6, 7

18   *Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998)............................................................2

19   *Hanon v. Dataproducts Corp.*, 976 F.2d 497 (9th Cir. 1992)....................................................15

20   *Leyva v. Medline Industries, Inc.*, 716 F.3d 510 (9th Cir.2013) ................................................13

21   *Linscheid v. Natus Med. Inc.*, 2015 WL 1470122 (N.D. Ga. Mar. 30, 2015)................................5

22   *Lymburner v. U.S. Fin. Funds, Inc.*, 263 F.R.D. 534 (N.D. Cal. 2010)..........................................2

23   *Martinez v. Joe's Crab Shack Holdings*, 231 Cal. App. 4th 362 (2014) ........................................6

24   *McKeen-Chaplin v. Provident Savings Bank, FSB*, 862 F.3d 847 (9th Cir. 2017) ........................3

25   *Monroe v. FTS USA, LLC*, 860 F.3d 389 (6th Cir. 2017) ............................................................14

26   *Nelson v. Avon Prod., Inc.*, 2015 WL 1778326 (N.D. Cal. Apr. 17, 2015) ............................3, 5, 7

27   *Norris-Wilson v. Delta-T Group, Inc.*, 270 F.R.D. 596 (S.D. Cal. 2010)................................7, 12

28   *Oman v. Delta Air Lines, Inc.* 9 Cal. 5th 762 (2020) ..................................................................11

*Patel v. Nike Retail Servs.*, 2016 2016 WL 1241777 (N.D. Cal. Mar. 29, 2016) ............................ 5

*Pavloff v. Cardinal Logistics Mgt. Corp.*, 2020 WL 6821072 (N.D. Cal. Oct. 7, 2020) ............... 11

*Ramirez v. Yosemite Water Co., Inc.*, 20 Cal. 4th 785 (1999) ......................................... 3

*Strauch v. Computer Scis. Corp.*, 322 F.R.D. 157 (D. Conn. 2017) ................................. 4

*Sullivan v. Oracle*, 51 Cal. 4th 1191 (2011) ......................................................... 11

*Swamy v. Title Source, Inc.*, 2018 WL 1586139 (N.D. Cal. Apr. 2, 2018) ................................. 12

*Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036 (2016) ........................................... 13

*Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011) ................................................. 7

*Ward v. United Airlines, Inc.*, 9 Cal. 5th 732 (2020) ............................................. 11, 13

*Wolph v. Acer Am. Corp.*, 272 F.R.D. 477 (N.D. Cal. 2011) ........................................... 2

**Statutes**

Cal. Labor Code § 203 ................................................................................ 12

**Regulations**

8 C.C.R. § 11040(1)(A)(2)(a)(I) ....................................................................... 3

## I.    Introduction

Tyler's Implementation Consultants ("ICs") perform the same work and are uniformly classified exempt. Along with 40 California residents, 252 ICs traveled to and performed work in California without receiving overtime premiums. Tyler's standard work schedule results in ICs inevitably working unpaid daily overtime when they work in California. The Court should grant class certification so this case can be resolved once, for all ICs who worked in California.

Plaintiff demonstrated through common evidence—Tyler's own policies and manager testimony—how he will show all ICs fill the same non-administrative role within Tyler's business, and are all constrained in exercising discretion and independent judgment by the same policies. Tyler has failed to rebut this showing and failed to explain why this common evidence does not warrant class certification. Instead, Tyler presented its own evidence, including manager declarations and IC declarations, that confirms that all ICs played the same role within the business regardless of their seniority, their supervisor, or which phase of implementation they were working on, and were expected to perform the same suite of duties, in a consistent manner.

Tyler focuses on these legally insignificant distinctions, and implies that ICs' primary duty changes based on their daily workload. Tyler further suggests that the significant volume of work its ICs performed in California for California clients may be excluded from coverage under California law, while ignoring the reality that its own scheduling expectations and travel records demonstrate that ICs come to California for days or weeks at a time, and consistently work daily overtime when they are in the state.

In opposing class certification, Tyler actually demonstrates why class certification is appropriate. In the introduction to its Opposition, Tyler identifies three crucial issues that support certification because they are susceptible to common proof and predominate over any individualized issues. Specifically, whether ICs were properly classified will be resolved for all ICs considering they all share the same primary job duty of implementing Tyler's software – either they are all exempt, or none are. Second, whether Tyler is liable to the nonresident class members will be determined once, since ICs' work schedules inevitably entail daily overtime during on-site days. Finally, Tyler's statement that "the individualize[d] amount of any resulting liability" is a

thinly veiled attempt to oppose certification based on individualized damages, which it acknowledges does not in fact defeat certification. (*See* ECF No. 85, Opp. Br. at 6[1].)

District courts have "broad discretion" to determine whether a class should be certified. *Armstrong v. Davis*, 275 F.3d 849, 871 n.28 (9th Cir. 2001). Moreover, "[a]ny doubts regarding the propriety of class certification generally should be resolved in favor of certification." *Wolph v. Acer Am. Corp.*, 272 F.R.D. 477, 481 (N.D. Cal. 2011) (citation omitted).

On a certification motion, the court "must examine the plaintiff's theory of recovery," and must assume plaintiff's claims have merit. *Brinker Rest. Corp. v. Superior Court*, 53 Cal. 4th 1004, 1025 (2010). The Court should not "engage in free-ranging merits inquiries at the certification stage." *Amgen v. Connecticut Retirement Plans and Trust Funds*, 568 U.S. 455, 466 (2013). "Merits questions may be considered to the extent—but only to the extent—that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied." *Id.*

The Rule 23(b) predominance analysis focuses on "the relationship between the common and individual issues' in the case, and tests whether the proposed class is sufficiently cohesive to warrant adjudication by representation." *Abdullah v. U.S. Sec. Assocs., Inc.*, 731 F.3d 952, 964 (9th Cir. 2013) (citation omitted.) "Claims need not be identical for common issues of law and fact to predominate, they need only be reasonably coextensive with those of absent class members." *Lymburner v. U.S. Fin. Funds, Inc.*, 263 F.R.D. 534, 541 (N.D. Cal. 2010) (citing *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998)).

## II.    Tyler's Administrative Exemption Presents Common Questions of Law or Fact, which Predominate over Individual Issues

Class certification is appropriate because Tyler's affirmative defense will be resolved through common evidence applied to common questions, thus satisfying Rule 23's commonality requirement. Further, the proposed class is sufficiently cohesive to warrant adjudication by representation, demonstrating that common questions will predominate over individual ones.

While Tyler asserts that some individual issues exist based on ICs' supervisors and which phases of implementation they worked on, it fails to show that those issues require separate

---

[1] Cites to Defendant's Opposition are to the ECF page number (e.g., 6 of 266).

adjudication. Tyler asserts the administrative exemption justified its refusal to pay ***all*** its ICs overtime premiums. *Nelson v. Avon Prod., Inc.*, 2015 WL 1778326, at *9 (N.D. Cal. Apr. 17, 2015) ("an internal exemption policy that treats all employees alike for exemption purposes suggests that the employer believes some degree of homogeneity exists among the employees.") (citation omitted). Tyler bears the burden of proof, and the exemption is narrowly construed against it. *Ramirez v. Yosemite Water Co., Inc.*, 20 Cal. 4th 785, 794 (1999).

## A. ICs' Work is not Directly Related to Management or General Business Operations

To avoid paying overtime compensation under the administrative exemption, Tyler must prove each element of its exemption defense. The first prong requires Tyler to prove that employees' primary "duties and responsibilities involve . . . the performance of office or non-manual work directly related to the management or general business operations of his/her employer or his employer's customers." 8 C.C.R. § 11040(1)(A)(2)(a)(I). The essence of the administrative exemption is "not whether an employee is essential to the business, but rather whether her primary duty goes to the heart of internal administration—rather than marketplace offerings." *McKeen-Chaplin v. Provident Savings Bank, FSB*, 862 F.3d 847, 855 (9th Cir. 2017) (finding mortgage underwriters not administratively exempt, even though they are essential to the bank's business). Tyler admits that "[i]mplementation generates revenue for Tyler," acknowledges the ICs' status as a Tyler "marketplace offering," but contends that such a status does not resolve the "directly related" prong of the exemption analysis. (Opp. at 3, 24.)

Tyler admits that its ICs "have one common goal—helping the client transition to their new Tyler software" and the parties agree that the implementation process is broken down into standard component parts.[2] (*Id.* at 8-9; ECF No. 71, Pl. Br. at 11-13.) Yet, Tyler's opposition emphasizes the unremarkable fact that ICs' work is not evenly divided between these phases, and some spend more time doing certain steps than others. (Opp. at 14.) In doing so, Tyler does not—because it cannot—go so far as to claim that ICs have different primary duties, or suggest that some ICs

---

[2] Tyler asserts that Plaintiff concedes that some parts of implementation "can constitute exempt duties." (Opp. at 23.) It is unclear to what Tyler is referring; Plaintiff's motion does not make this concession.

engage in "administrative" work, while others do not. Tyler instead attempts to parse ICs' primary duty of implementing Tyler's software products into its component parts, to suggest that each phase within implementation should be analyzed independently for purposes of determining whether the administrative exemption applies even though Tyler admits that implementations contain standard steps and are all part of an IC's duties. (Opp. at 8-9.)

Of course, this approach is the exact opposite of what Tyler has previously done in assessing whether its employees are exempt, and would be completely unmanageable in practice. If an IC's primary duty changed week to week, Tyler would need to track what tasks an employee performed each week, and might need to reclassify them based on their weekly assignments. If, for example, the "fundamentals review" part of implementations was non-exempt, while the "current state/future state" portion was exempt, an IC could go from exempt to non-exempt in different weeks. But, this level of review is unworkable for an employer, has not been even been done by Tyler, and is not required by courts analyzing the administrative exemption in similar workplaces. *See Strauch v. Computer Scis. Corp.*, 322 F.R.D. 157, 183 (D. Conn. 2017) (compiling "essential job functions" for relevant positions).

Employers and courts can and do evaluate the primary duty holistically. *E.g.*, *Gordon v. Model N, Inc.*, 2016 WL 3194240, *1 (N.D. Cal. June 9, 2016) (plaintiff was the "principal technical education consultant" for a company that "supplied revenue management software solutions," and was responsible for "developing, preparing, and delivering training to customers . . . . updating the training materials . . . rebuilding virtual environments . . . [and] tweaking aspects of the training materials and virtual environments"); *Eicher v. Advanced Bus. Integrators, Inc.*, 151 Cal. App. 4th 1363, 1370 (2007) (plaintiff's duties included "training customer employees on [defendant's software] and trouble shooting the software when he was engaged in implementation on the customer's site . . . gathering information about the customers' employment practices and entering data into the appropriate field"). Both of those cases determined the administrative exemption did not apply because the workers' duties related "to the core 'day-to-day business of [defendant].'" *Gordon*, 2016 WL 3194240, at *3 (citing *Eicher*, 151 Cal. App. 4th at 1373). The same merits analysis can be conducted here on a class-wide basis: whether ICs' primary duties

1   directly relate to Tyler's or its clients' general business operations does not change based on what

2   phase of the implementation they are assigned on a given week.[3] The work is either all exempt or

3   all non-exempt.

4        This is not a case, as Tyler implies, where the scope of the covered duties will implicate

5   whether ICs' primary duty is exempt or non-exempt. *Cf. Patel v. Nike Retail Servs.*, 2016 2016

6   WL 1241777, at *11 (N.D. Cal. Mar. 29, 2016) (plaintiff spent most of her time on the floor,

7   managing operations of the store, but that time "encompasses both exempt and non-exempt

8   tasks."); *Dunbar v. Albertson's, Inc.*, 141 Cal. App. 4th 1422, 1428-29 (2006) (class certification

9   not appropriate where workers admit they perform combination of exempt and non-exempt duties,

10  and evidence shows some performed exempt duties more than half the time). The situation here is

11  different: Plaintiff contends *all* phases of implementation work are non-exempt; Tyler asserts all

12  ICs are performing exempt work in *all* implementation phases. (Opp. at 24-25.)[4] In other words,

13  the Parties agree that the exemption analysis does not turn on an individual assessment of how

14  frequently a given IC performed one task or another. *See Nelson*, 2015 WL 1778326, at *6

15  ("Defendant does not argue that some DSMs engage in work directly related to management

16  policies while others do not . . . Both parties thus offer a single class-wide argument on the merits

17  of the 'directly related' prong."). Instead, this prong of the exemption turns on how

18  implementation <u>overall</u> factors into Tyler's business operations. Because this prong will be

19  resolved for all ICs based on common evidence, class certification is warranted.

20        Plaintiff maintains that Tyler's administrative exemption defense can be defeated for all

21

---

22  [3] Tyler repeatedly cites *Alakozai*, but there the court found there were differences in job duties
     between members of the proposed class that bore directly on whether their work qualified as

23  exempt. *Alakozai v. Chase Inv. Servs. Corp.*, 2014 WL 5660697, at *7 (C.D. Cal. Oct. 6, 2014).

    [4] Tyler cites non-binding cases to argue that all ICs meet the administrative exemption. Plaintiff

24  contends that the *Gordon* and *Eicher* cases, cited above, are more compelling authority and will
     result in summary judgment for the Plaintiff, but the Court need not delve into these merits

25  arguments at this phase. *Gordon*, 2016 WL 3194240, at *3 (citing *Eicher*, 151 Cal. App. 4th at
     1373. What is notable here, however, is that in the two of the decisions, the courts decided the

26  administrative exemption for multiple plaintiffs, rather than on an individualized basis, based on
     their shared common duties. *Linscheid v. Natus Med. Inc.*, 2015 WL 1470122, at *9 (N.D. Ga.

27  Mar. 30, 2015) (denying employer's summary judgment as to the administrative exemption for
     four plaintiffs); *Cruz v. Lawson Software, Inc.*, 764 F. Supp. 2d 1050, 1070 (D. Minn. 2011)

28  (finding five named plaintiffs exempt, decertifying as to other employees).

---

ICs on summary judgment. *See Gordon*, 2016 WL 3194240, *1 (granting plaintiff's summary judgment motion in large part). Tyler admits ICs provide an "ancillary service" (Opp. at 8), implicitly recognizing that they occupy a narrow role within Tyler's business: getting Tyler's clients "up and running" with a new software product; not advising management about how to conduct their internal affairs. *See Eicher*, 151 Cal. App. 4th at 1373 (plaintiff dealt with the customers' management policies and business operations "only to implement the software in the most beneficial way for the customers and not to participate in policy-making or alter the general operation of the business."). Tyler's ICs similarly are responsible for conducting the portions of those implementations that are assigned to them. They do not do the kinds of work that any business needs performed in order to operate, such as: setting the price offered to Tyler's clients; marketing, promoting, or advertising Tyler's software products; using Tyler's products to assess whether clients could operate more effectively or efficiently; or planning Tyler's implementation projects. Instead, all ICs spent the vast majority of their time implementing, so there should be no dispute that performing implementations is ICs' primary duty. Therefore, if implementing is not an exempt activity, as Plaintiff contends, ICs are eligible for overtime, and Tyler is liable for unpaid wages (assuming no other defenses apply). In other words, "by classifying all [ICs] as exempt, [Tyler] violated mandatory overtime wage laws." *See Martinez v. Joe's Crab Shack Holdings*, 231 Cal. App. 4th 362, 380 (2014). This theory is "'by nature a common question eminently suited for class treatment.'" *Id.* (quoting *Brinker*, 53 Cal. 4th at 1034.).

Whether Tyler can satisfy the administrative exemption will be decided once utilizing common evidence, for all ICs, based on the directly related prong. This factor warrants class certification.

**B.  Whether ICs Exercise Legally Significant Discretion Will be Determined from Common Evidence**

Tyler also argues that certification is not proper because the common question of whether ICs exercised discretion and independent judgment cannot be answered through a single adjudication. (Opp. at 23-24.) But, the Court need not even reach this prong of the administrative exemption. *See Gordon*, 2016 WL 3194240, *2 (resolving summary judgment based on "directly

1    related" prong, without deciding whether plaintiff exercised significant discretion). The Court can
2    grant class certification here based solely on the "directly related" prong since "even a single
3    common question will do" for purposes of commonality. *See Wal-Mart Stores, Inc. v. Dukes*, 564
4    U.S. 338, 359 (2011).

5          Even if the Court did reach this question, certification is appropriate because common
6    issues predominate. Tyler acknowledges that the IC position encompasses a standardized set of
7    duties, that ICs are supervised in the same way, and fails to rebut Plaintiff's showing that common
8    policies constrain ICs' discretion across the board. (Opp. at 8-11.) Instead of disputing these
9    material facts, Tyler suggests that because ICs had different supervisors and worked on different
10   tasks at different times, the discretion afforded them may have varied. But Tyler offers no analysis
11   of whether such variation means some ICs are exempt and some non-exempt, nor whether the
12   asserted individual issues (arising from different supervisors and different daily tasks) on this
13   prong will predominate over common issues.

14         Even if variations exist, the ultimate question "is whether those variations . . . are
15   meaningful when it comes to answering the question whether [the workers] are" correctly
16   classified. *Norris-Wilson v. Delta-T Group, Inc.*, 270 F.R.D. 596, 608 (S.D. Cal. 2010); *Nelson*,
17   2015 WL 1778326 at * 9 ("individual differences exist among the named Plaintiffs and absent
18   class members – as they would in any case in which hundreds of employees engage in the same
19   job."). Here, they are not. Differences connected to Tyler's individuals supervisors are
20   unremarkable considering that at every other employer, junior workers are supervised more
21   closely than more senior workers, and different supervisors have different styles. *See Nelson* at *7
22   ("Though some DSMs may be subject to greater supervision than others, the common question
23   here is whether DSMs were subject to more than just general supervision."). And while Tyler
24   notes that some project managers look to ICs "for input on scheduling and implementation
25   planning," (Opp. at 14) it recognizes that is not ICs' primary duty: "project managers have
26   responsibility for organizing and coordinating the overall implementation process." (*Id.* at 10.)
27   And even if that did entail discretion, it will not impact the primary duty analysis at the merits
28   stage since any ICs *could* provide that input. *See Ayala v. Antelope Valley Newspapers, Inc.*, 59

PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR CLASS CERTIFICATION
3:19-cv-07647-WHA
7

Cal. 4th 522, 537 (2014) (in independent contractor misclassification case, differences in work may indicate employer concluded control was unnecessary). ICs perform the same set of tasks, subject to the same constraints, on different implementations because Tyler expects its implementations to produce consistent results across the country regardless of which IC is handling the work.

More importantly, common issues will resolve this prong for all ICs. Any discretionary matters are subject to a universal backstop: all decisions in configuring the software rest with the client, and even if ICs may offer suggestions, they do not make decisions. Indeed, in all cases, ICs provide factual information and guidance so that Tyler's clients can make decisions about software configuration; ICs are not responsible for making configuration decisions or formal recommendations regardless of the specifics of a given project or what phase an IC is handling in a given week. Tyler also leaves implementation planning up to the project managers (ICs' supervisors) who closely supervise ICs even though they are remote. (Opp. at 10.) As Tyler admits, ICs "provide constant, extremely detailed feedback to project managers to ensure that deadlines are met and that the implementation stays on schedule." (Opp. at 11.)

Tyler also limits all ICs' discretion through common formal policies and required templates. "Claims alleging that a uniform policy consistently applied to a group of employees is in violation of the wage and hour laws are of the sort routinely, and properly, found suitable for class treatment." *Campbell v. Vitran Express Inc.*, 2015 WL 7176110, at *6 (C.D. Cal. Nov. 12, 2015) (quoting *Brinker*, 53 Cal. 4th at 1033). And, although Tyler suggests the Court should not rely exclusively on written policies (Opp. at 24), it does not suggest that those written materials (which include policies, scripts, and templates) do not accurately reflect ICs' work. These written materials illustrating job duties are consistent with manager testimony and Opt-in testimony about their jobs. *See Deluca v. Farmers*, 2018 1981393, at *8 (N.D. Cal. Feb. 27, 2018) (granting class certification in administrative exemption case where job descriptions indicating the same primary job duty were "buttressed by declarations and deposition testimony attesting to the fact that all special investigators essentially perform the same fundamental duties.").

Finally, Tyler's conclusory assertions that ICs must have exercised significant discretion is

1    not supported by evidence,[5] and ignores the existence of common policies and practices, which

2    constitute common proof on the exemption defense, that directly address how ICs spend their time.

3    At class certification, the relevant question is not whether ICs exercised discretion, but whether the

4    extent of discretion, "whatever it might be, is susceptible to classwide proof." *Ayala*, 59 Cal. 4th at

5    537. Indeed, the Court should not "focus[] too much on the substantive issue" of whether ICs

6    exercise discretion, "instead of whether that question could be decided using common proof." *Id*.[6]

7         Class certification should be granted because the common issues, including policies,

8    templates, plans, and guidelines that constrain discretion for all ICs are "more important questions

9    apt to drive the resolution of the litigation," than any issues raised by Tyler (such as individual

10   supervisors consulting ICs about project planning), and so "are given more weight in the

11   predominance analysis." *Torres*, 835 F.3d at 1134.

12              **C.  Tyler's Uniform Classification *Analysis* is Highly Relevant**

13        Tyler asserts the administrative exemption justified its refusal to pay ***all*** its ICs overtime

14   premiums. Not only that, Tyler asserts that it evaluated whether ICs were correctly classified. As

15   explained in Plaintiff's opening brief, Tyler conducted that evaluation for all ICs. This fact shows

16   Tyler recognizes ICs perform the same work. *Nelson*, 2015 WL 1778326, at *9 ("an internal

17   exemption policy that treats all employees alike for exemption purposes suggests that the

18   employer believes some degree of homogeneity exists among the employees.") (citation omitted).

19        Tyler misstates Plaintiff's position on this issue. Plaintiff does not contend certification is

20   appropriate merely because of a uniform classification (*see* Opp. at 22), but rather that Tyler

21   previously looked at difference among ICs and determined they were not relevant to the exemption

22   analysis. (Diaz Dep. at 17:8-19 (while they "might have identified differences in some of the

23
     ⁵ Likewise, Tyler's emphasis on Plaintiff's LinkedIn profile is a transparent attempt to imply that
24   a description of a position can make that position exempt. As Plaintiff explained, the language
     there is typical for a resume: the "trying to make it sound fancy way of describing" the work.
25   (Kudatsky Dep. at 118:10-14.)
     ⁶ The examples Tyler contends illustrate discretion will not satisfy the exemption. Adjusting the
26   pace and approach to training "based on the mood and receptiveness of the client's employees" is
     hardly exercising discretion on a matter of significance and whether ICs "help guide clients
27   through hundreds of critical decisions" is a far cry from *making* those decisions. (Opp. at 9-10.)
     While ICs use their knowledge of Tyler's software products, exempt discretion "must be more
28   than the use of skill in applying well-established techniques." 29 C.F.R. 541.202(e).

functions of implementation consultant roles across the company, those differences did not change the ultimate conclusion as to how that role should be classified from an FLSA perspective"); 31:1-6 ("to the extent any differences among the implementation consultant roles . . . were identified, they did not impact the overall determination that implementation consultants were properly classified as exempt.").) In other words, Tyler's position prior to this case was that it was appropriate to look at implementation broadly to determine whether ICs' primary duty is administrative, without regard to distinctions between ICs. Tyler cannot simultaneously assert that its previous internal analysis of the exemption—which was conducted for *all* ICs—was legitimate, yet deny that this Court may do its own class-wide review of the exemption for all ERP ICs.[7]

III.    **Whether Tyler Is Liable Under California Law for Traveling ICs is a Common, Predominant Question**

Tyler sends ICs from all over the country to California to perform implementations. Tyler acknowledges that its records show how many ICs traveled to California for their work. (Opp. at 15 ("252 ERP ICs and ERP Senior ICs who do not reside in California but have performed work in California.").) This group is ascertainable because it can be determined from Tyler's records of reimbursed business travel and records of ICs' billable work.[8] These two sources show when ICs traveled *and worked* in California, and do not reflect, as Tyler misleadingly implies, presence without work. (*See* Opp. at 18.) Moreover, ICs travel to work in California for days at a time. Tyler's standardized schedule calls for ICs to travel to the client site on Monday, work onsite Tuesday, Wednesday, and Thursday, and return either Thursday or Friday. (Webster Dep. at 134:11-18, ECF No. 85 at 267.) Tyler schedules ICs for an 8-hour on-site day, ███████

███████████████████████████████████████████████████████

███████████████████████████████████████ (Brome Dec. Ex. 5 (sealed) at Tyler007387.) Therefore, whenever ICs travel to California to perform implementation

---

[7] Indeed, the class at issue here is *narrower* than the group that Tyler considered, because Plaintiff limits the proposed class and collective to ICs within the ERP division.

[8] Tyler asserts that billing records do not indicate where an employee worked, but this is not correct. *See* Brome Dec. ¶ 5, ECF No. 78-1 at 2 (explaining that these records "generally reflect the date and location of the individuals' work" and can aid an analysis of where ICs were working). And billing records will be used in conjunction with Tyler's business travel records.

work, they work at least some daily overtime within the state. Common evidence shows class members' identities and Tyler's liability; any individualized issues will only go to damages.

### A. Non-California Residents Have Overtime and Waiting Time Claims

Tyler does not point to any instances of ICs working in California without working overtime, or working less than a day within the state, and all the evidence shows that ICs worked for full days—including daily overtime—when they came to California. California law therefore applies to this work. *Sullivan v. Oracle*, 51 Cal. 4th 1191, 1201 (2011) ("California's overtime law [applies] to full days and weeks of work performed here by nonresidents"). On the merits question of whether California law applies to nonresidents, the Court should follow *Sullivan*, which concerned workers whose "job was to train Oracle's customer in the use of the company's products," as opposed to transportation worker cases, where the presence in the state is considerably different. *Id*. at 1195.

The cases involving transportation workers are readily distinguishable. Flight attendants, at issue in *Ward* and *Oman*, work "in California 'only episodically and for less than a day at a time.'" *Oman v. Delta Air Lines, Inc.* 9 Cal. 5th 762, 776 (2020). In *Pavloff v. Cardinal Logistics Mgt. Corp.*, cited repeatedly by Tyler, the court found that nonresident truck drivers was not suitable for class certification because evidence showing travel to California did not necessarily mean a driver had claims. 2020 WL 6821072, at \*\*4-6 (N.D. Cal. Oct. 7, 2020). Here, travel to California entails working overtime, so the class is ascertainable from Tyler's records.

The takeaway from these cases is that where, as here, membership in the class is not enough to determine whether California law would apply or whether a class member would have a viable claim, certification may be inappropriate. This is not such a case. Instead, all of the evidence, from deposition and declarations of ICs, to corporate policies, to manager testimony, shows that when ICs travel to California they work in state days at a time, so they are covered by California overtime law. *Sullivan* 51 Cal. 4th at 1201 (overtime protections apply when workers are in California for days or weeks); *Ward v. United Airlines, Inc.*, 9 Cal. 5th 732, 754 n. 8 (2020) (recognizing that coverage under state law considers whether the plaintiffs worked in California throughout the relevant time frame for the law at issue). Additionally, common evidence,

including standard policies and manager testimony, buttressed by ICs' testimony, shows that ICs routinely worked more than 8 hours per day, consistent with Tyler's expectations. Unlike in the *Swamy* case, where the plaintiff only "sometimes" worked overtime, and where the employer "sharply dispute[d] that overtime was worked," there is ample evidence here that ICs work overtime. *Swamy v. Title Source, Inc.*, 2018 WL 1586139, at \*6 (N.D. Cal. Apr. 2, 2018). Here, Tyler's corporate witness agreed that ICs are the best people to say how many hours they typically worked, that Tyler cannot identify any ICs who never worked more than 40 hours in a week, and does not dispute that ICs sometimes work overtime. (Webster Dep. at 140:17-141:22, ECF No. 78-2 at 106-107.) Testimony from ICs confirms that they regularly worked overtime. (*E.g.,* Kudatsky Dep. at 178:11-19, ECF No. 78-2 at 132; Sinclair Dep. at 63:14-21, ECF No. 78-2 at 187.) Even the IC declarations submitted by Tyler do not state that ICs do not work overtime. (Opp. Exs. A, B, E, F, G, ECF No. 85 at 34 – 40, 53-63.) Even the ICs who traveled to California on rare occasions still have claims for daily overtime. (*See* Opp. at 15 (minimum time in California was "less than two days.").) The travel records that will be used to determine class membership reflect these individual's work days in California. (Brome Reply Dec. ¶ 2.)

Accordingly, the questions of (1) whether California's overtime laws protect ICs who travel to California, and (2) whether ICs who worked overtime in California can be ascertained from Tyler's records, can both be answered in the affirmative for the class as a whole. These common questions predominate over any individual inquiries about how many hours of overtime a given IC worked in California.

Likewise, whether ICs who travel to California are entitled to waiting time penalties under Labor Code § 203 will be answered for the entire nonresident class. An individual's entitlement to waiting time penalties flows directly from an employer failing to pay all earned wages at or before termination. If Plaintiff ICs establish their eligibility for overtime, "it won't require anything other than basic computation to determine if they're entitled to damages for not being paid on time once their employment ended. This issue is therefore appropriate for class treatment." *Norris-Wilson*, 270 F.R.D. at 611. ICs who have separated from employment and are owed overtime under California law have claims, regardless of where they reside. Unlike the wage statement claims in

1   *Ward*, which covered time worked in various jurisdictions, waiting time claims under Section 203

2   operate on a single-event basis. *See Ward*, 9 Cal. 5th at 753. Those claims require payment of final

3   wages at the end of employment—a one-time claim that can and should be covered by California

4   law as to pay earned in the state. Tyler's arguments to the contrary are purely legal, merits

5   questions that can be answered for the entire group. (Opp. at 27-28.) At class certification, the

6   Court need not (and should not) rule on the merits, but need only determine that the question is

7   susceptible to common resolution.

8          The Court should certify the class of ICs who traveled to and worked in California for

9   overtime, unfair competition, and waiting time penalty claims. *See Bisaccia v. Revel Sys. Inc.*,

10  2019 WL 861425, at *1 (N.D. Cal. Feb 22, 2019) (certifying, for settlement purposes, a class of

11  "All [Inside Sales Representative] employed by Defendant who worked for Revel outside of

12  California but who traveled to, and performed work in, California").

13  **IV.   Individual Damages are Expected in Wage and Hour Cases, and do not Defeat**

14         **Certification**

15         Tyler argues certification should be denied because damages depend on individual hours

16  worked. (Opp. at 29.) This is wrong. Any individualized issues concerning hours worked cannot

17  defeat predominance. The controlling law in the Ninth Circuit is that "damages determinations are

18  individual in nearly all wage-and-hour class actions," but this does not stand as a bar to class

19  certification. *Jimenez*, 765 F.3d at 1167 (quoting *Leyva v. Medline Industries, Inc.*, 716 F.3d 510

20  (9th Cir.2013)). A trial plan is not required at this time, but damages can be easily shown here,

21  since they depend on ICs' wages, which can be determined from the common evidence of Tyler's

22  pay records, and hours, which can be established through representative testimony. *Tyson Foods,*

23  *Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1046 (2016) (explicitly affirming the use of representative

24  proof and reaffirming the extrapolated estimated average methodology used to prove class-wide

25  damages in *Anderson v. Mount Clemens Pottery Co.*, 328 U.S. 680 (1946).) Tyler admits it does

26  not have accurate records of ICs' hours, and given the consistent nature of the work, representative

27  proof of hours will be appropriate and will make trial manageable. *See Monroe v. FTS USA, LLC*,

28  860 F.3d 389, 407–413 (6th Cir. 2017).

1    **V.      The Other Rule 23 Factors are Satisfied.**

2           Tyler's arguments on the other Rule 23 factors likewise fall short. The Court should

3    conclude that numerosity, typicality, adequacy, and superiority all support class certification.

4           Tyler does not contest that there are a sufficient number of ICs who worked in California to

5    justify certification. (Opp. at 14-15 (40 California resident ICs, 252 non-residents who traveled to

6    California).) Instead, Tyler suggests—with no evidence—that ICs may not have worked overtime.

7    Tyler focuses on <u>weekly</u> overtime, while ignoring <u>daily</u> overtime. (Opp. at 15 (difficult to

8    determine if ICs worked "more than 40 hours in California").) Even Tyler's hand-picked

9    declarants do not testify that they didn't work overtime in California. (Irish Dec. ¶ 3, ECF No. 85

10   at 35 (explaining that she "often worked more than 40 hours a week," but that "it would be

11   unusual for me to have worked more than 40 hours in California during any one work week.").)

12   Left unsaid in Tyler's argument and evidence is the fact that ICs routinely, and by design, work

13   more than 8 hours per day. (Brome Dec. Ex. 5 (sealed) at Tyler007387.) The class is sufficiently

14   numerous, and Tyler's common policies lead to ICs regularly performing unpaid overtime work in

15   California.

16          The Named Plaintiff is an adequate representative, and asserts claims that are typical of the

17   classes' claims. Tyler states Mr. Kudatsky is not adequate (Opp. at 29), but does not assert that he

18   has not or will not diligently represent the classes' interests, or that his interests are in conflict with

19   the classes interests.[9] Instead, Tyler appears to be arguing that the Plaintiff's claims are not typical,

20   because he resided in Nevada and traveled to California (like the proposed nonresident class), but

21   also occasionally worked from his parents' home in California for extended periods (like the

22   proposed resident class). (Opp. at 30). Plaintiff's experience make him ideally suited to represent

23   the class – he performed implementation work for Tyler in California, worked overtime for which

24   he was not paid; he received wage statements that did not reflect all his hours worked, and he did

25   not receive his overtime wages at the time of separation from employment. Mr. Kudatsky

26   experienced these violations both when he traveled from out of state, and when he stayed in state.

27   These are exactly the same claims as those of the proposed classes, so typicality is satisfied.

28
     _____
     [9] Tyler also does not dispute that Plaintiff's Counsel is adequate.

1    *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992) (citation and internal quotation

2    marks omitted). The factual circumstances of the proposed class representative need not be

3    identical to the claims of other class members, so long as the class representative "must be part of

4    the class and possess the same interest and suffer the same injury as the class members." *General*

5    *Tel. Co. of Southwest v. Falcon,* 457 U.S. 147, 156 (1982).

6         Finally, Tyler's argument that the claims a class action is not a superior method of

7    resolving this case because of the value of the claims rings hollow. First, Plaintiff addressed the

8    superiority factors of Rule 23(b)(3), and did not simply contend, as Tyler asserts, that damages

9    "are minimal." (Pl. Br. at 30-31; Opp. at 30.) Tyler does not respond, other than to assert that

10   potential damages could be considerable. But damages here are typical of a misclassification case,

11   and courts in this district recognize that "given the range of potential damages, it is unlikely that

12   the individual Plaintiffs would be adequately incentivized to pursue their own separate litigation."

13   *Deluca*, 2018 WL 1981393, at *12. Second, Tyler's argument that the claims are so valuable as to

14   defeat class treatment is contracted by its own suggestion that the rate of participation in the FLSA

15   portion of the case indicates ICs do not wish to participate as Opt-in Plaintiffs. (Opp. at 6.) These

16   considerations illustrate why "[l]itigation by class action has long been recognized as a superior

17   method of resolving wage and hour claims in California." *Deluca*, 2018 WL 1981393, at *12

18   (quotations omitted). Superiority is satisfied.

19   **VI.   Conclusion**

20        Plaintiff has provided sufficient evidence showing that the issues can be decided on a

21   classwide basis and have satisfied the Rule 23 criteria. Plaintiff respectfully requests that the Court

22   grant this motion certifying a class of California implementation consultants, appointing Plaintiffs'

23   counsel as Class Counsel and Named Plaintiff Aaron Kudatsky as the Class Representative.

24   Dated: December 21, 2020              **NICHOLS KASTER, LLP**

25

26                                         By:    s/Daniel S. Brome
                                           Daniel S. Brome
27                                         Matthew C. Helland
                                           Rachhana T. Srey
28

                                           Attorneys for Plaintiff and Others Similarly Situated