1  Brian K. Morris (SBN 281409)
   BMorris@reedsmith.com
2  REED SMITH LLP
3  101 Second Street
   Suite 1800
4  San Francisco, CA 94105-3659
   Telephone: 469.680.4200
5  Facsimile:  469.680.4299

6  Paulo B. McKeeby (Admitted *Pro Hac Vice*)
7  PMcKeeby@reedsmith.com
   Michael A. Correll (Admitted *Pro Hac Vice*)
8  MCorrell@reedsmith.com
   REED SMITH LLP
9  2501 N. Harwood St, Suite 1700
   Dallas, TX 75201
10 Telephone: 469.680.4200
11 Facsimile:  469.680.4299

12 ATTORNEYS FOR DEFENDANT

13               UNITED STATES DISTRICT COURT
14               NORTHERN DISTRICT OF CALIFORNIA

15 AARON KUDATSKY, Individually and on    )  Case No.:      3:19-CV-07647
16 behalf of all others similarly situated,  )
                                           )  **DEFENDANT'S NOTICE OF MOTION**
17                      Plaintiffs         )  **FOR SUMMARY JUDGMENT AND/OR**
                                           )  **PARTIAL SUMMARY JUDGMENT;**
18 vs.                                     )  **MEMORANDUM OF POINTS AND**
                                           )  **AUTHORITIES IN SUPPORT**
19 TYLER TECHNOLOGIES,                     )
                                           )  **Date: May 27, 2021**
20                      Defendant.         )  **Time: 8:00 a.m.**
                                           )  **Courtroom: 12- 19th Floor**
21                                         )  **Judge: Hon. William Alsup**
                                           )
22 _____

23

24

25

26

27

28

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

---

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT AND/OR PARTIAL SUMMARY JUDGMENT – 3:19-cv-07647-WHA**

# TABLE OF CONTENTS

**PAGE NO.**

I.  Introduction .................................................................................................................. 1

II.  Statement of Facts ....................................................................................................... 1

   A.  Tyler and its Product Offerings Generally ............................................................ 1

   B.  The Implementation Process Generally ................................................................. 2

   C.  Training Received by ICs ...................................................................................... 4

   D.  The Phases of an ERP Implementation ................................................................. 4

      1.  Fundamentals Review ...................................................................................... 5

      2.  The Analysis Phase .......................................................................................... 5

      3.  The Configuration Phase .................................................................................. 7

      4.  The Training Phase ........................................................................................... 8

      5.  The Go Live Phase ........................................................................................... 9

      6.  Additional Discretionary Functions ................................................................. 9

      7.  The Named Plaintiff's Description of His Former Job .................................... 10

   E.  The Utilization of Guidelines and Templates by ICs ............................................ 11

III.  The Court's Certification Order .................................................................................. 12

IV.  Legal Standard ........................................................................................................... 13

V.  Argument .................................................................................................................... 13

   A.  Plaintiff's First and Second Causes of Action Fail Because ERP ICs Are Properly Classified as Exempt Under the Administrative Exemption. ................................... 13

      1.  ERP ICs Perform Work Directly Related to the General Business Operations of Defendant's Clients. ....................................................................................... 14

         a.  The Qualitative Nature of ERP ICs' Work Satisfies the General Business Operations Requirement. ........................................................................ 15

         b.  The Quantitative Nature of ERP ICs' Work Satisfies The General Business Operations Requirement. ........................................................................ 16

      2.  ERP ICs Customarily and Regularly Exercise Discretion and Independent Judgment. .. 17

      3.  ERP ICs Execute Assignments and Tasks Under Only General Supervision ................. 21

      4.  ERP ICs Engage in Qualifying Work At Least 50 Percent of The Time ....................... 22

      5.  ERP ICs Earn Twice The State's Minimum Wage ...................................................... 23

   B.  Summary Judgment Is Proper On Plaintiff's FLSA-Related Claims ..................... 23

   C.  The *Greene* Decision Does Support Plaintiff's Position in This Case. .................. 24

   D.  Plaintiff's Third and Fourth Causes of Action Are Derivative and Likewise Fail ................. 25

   E.  Plaintiff's Derivative UCL Claim Likewise Fails ................................................. 25

VI.  Conclusion ................................................................................................................. 25

Left margin (vertical text): REED SMITH LLP — A limited liability partnership formed in the State of Delaware

- i –

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT AND/OR PARTIAL SUMMARY JUDGMENT – 3:19-cv-07647-WHA**

US_ACTIVE-159596863.8

1

## TABLE OF AUTHORITIES

2
**Page(s)**

3
**Cases**

4
*Anderson v. Liberty Lobby, Inc.*,
5    477 U.S. 242 (1986)........................................................................................................13

6
*Bucklin v. Zurich Am. Ins. Co.*,
   619 F. App'x 574 (9th Cir. 2015) ........................................................................17, 18, 21
7

8
*Campbell v. PricewaterhouseCoopers, LLP*,
   642 F.3d 820 (9th Cir. 2011) ..........................................................................................18

9
*Celotex Corp. v. Catrett*,
10    477 U.S. 317 (1986)........................................................................................................13

11
*Dobrosky v. Arthur J. Gallagher Serv. Co., LLC*,
   2015 U.S. Dist. LEXIS 68252 (C.D. Cal. May 18, 2015) ..............................................18
12

13
*Eicher v. Advanced Bus. Integrators, Inc.*,
   151 Cal. App. 4th 1363 (2007) .......................................................................................14

14
*Greene v. Tyler Techs.*,
15    2021 U.S. Dist. LEXIS 48775 (N.D. Ga. Mar. 16, 2021)..........................................24, 25

16
*Hall v. Time Inc.*,
   158 Cal. App. 4th 847 (2008) .........................................................................................25
17

18
*Harris v. Superior Court*,
   53 Cal.4th 170 (2011) .........................................................................................14, 15, 16

19
*Heffelfinger v. Elec. Data Sys. Corp.*,
20    2013 U.S. Dist. LEXIS 201979 (C.D. Cal. Feb. 26, 2013)............................................14

21
*Korea Supply Co. v. Lockheed Martin Corp.*,
   29 Cal.4th 1134 (2003) ...................................................................................................25
22

23
*Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*,
   475 U.S. 574 (1986)........................................................................................................13

24
*Morales v. Compass Grp., PLC*,
25    2014 U.S. Dist. LEXIS 150114 (C.D. Cal. Oct. 16, 2014).............................................18

26
*Moua v. IBM*,
   2017 U.S. Dist. LEXIS 162948 (N.D. Cal. Sept. 29, 2017) .....................................20, 21

27

28

- ii –

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR SUMMARY
JUDGMENT AND/OR PARTIAL SUMMARY JUDGMENT – 3:19-cv-07647-WHA**

US_ACTIVE-159596863.8

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

*Taylor v. Waddell & Reed, Inc.*,
2012 U.S. Dist. LEXIS 212 (S.D. Cal. Jan. 3, 2012) .................................................................18

*United Postal Serv. Wage & Hour Cases*,
190 Cal. App. 4th 1001 (2010) ..............................................................................................18, 21

*Valles v. IBM Corp.*,
2010 U.S. Dist. LEXIS 145344 (C.D. Cal. May 6, 2010) ...............................................16, 18, 19

*Villiarimo v. Aloha Island Air, Inc.*,
281 F.3d 1054 (9th Cir. 2002) ..................................................................................................13

**Statutes**

Cal. Lab. Code § 515(e) ...........................................................................................................22

Cal. Lab. Code § 1182.12 .........................................................................................................23

**Rules**

Fed. R. Civ. P. 56(a) .................................................................................................................13

**Regulations**

8 C.C.R. § 11040 ................................................................................................................18, 22

29 C.F.R. § 541.202(a) .............................................................................................................18

29 C.F.R. § 541.205(a) .......................................................................................................15, 16

29 C.F.R. § 541.207(a) .............................................................................................................18

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR SUMMARY
JUDGMENT AND/OR PARTIAL SUMMARY JUDGMENT – 3:19-cv-07647-WHA**

US_ACTIVE-159596863.8

TO THE HONORABLE COURT, ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that Defendant Tyler Technologies ("Defendant" or "Tyler"), moves this Court for summary judgment on all claims asserted by Plaintiff Aaron Kudatsky in the above-referenced matter.  The motion will be heard on **May 27, 2021, at 8:00 a.m.**, **in Courtroom 12**, or as soon thereafter as the matter may be heard, in the above-captioned Court.

Defendant makes this motion on the grounds that the common proof before the Court establishes that the certified class of ERP Implementation Consultants are not entitled to overtime compensation under California or federal law because they are properly classified as exempt under applicable California and federal law.  Further, the failure of Plaintiff's overtime claims on these grounds entitles Defendant to judgment as a matter of law on Plaintiff's derivative wage statement, waiting time, and UCL claims.

This motion is based on this Notice, the Memorandum of Points and Authorities, the supporting Compendium of Evidence filed herewith, a Proposed Order, any opposition or reply papers thereto, and all papers, records, and files in this matter, and on such other arguments and evidence as may be presented at the hearing on the motion.

DATED:  April 19, 2021                    REED SMITH LLP


By:   _/s/ Paulo B. McKeeby_____
      Brian K. Morris
      Paulo B. McKeeby
      Michael A. Correll

      *Attorneys for Defendant*

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

## I.   INTRODUCTION

Defendant Tyler Technologies' ("Defendant" or "Tyler") common proof—including Tyler documents and related policy materials governing ERP Implementation Consultants ("ERP ICs"); Tyler's corporate representative and managerial testimony; and ERP IC testimony confirming that Tyler's policies and documentation align with reality—establishes that ERP ICs qualify as exempt under both the California and the Fair Labor Standards Act ("FLSA") administrative exemptions. This common proof demonstrates that the fundamental role of an ERP IC is to interface with clients without direct supervision while relying on their own judgment and discretion to accomplish a sophisticated, consultative series of tasks. Yet, while ERP ICs all share this responsibility, the way in which they go about accomplishing those tasks varies widely from ERP IC to ERP IC based on their individualized choices, experience, and personal styles.

Specifically, ERP ICs serve as a trusted advisor helping each client shape their general business operations in a unique and tailored way through their independent introduction, analysis, configuration, testing, training, and launch of Tyler's ERP software. Despite this fact, Plaintiff Aaron Kudatsky ("Plaintiff") contends that he and other ERP ICs are nonexempt. However, Plaintiff has not and cannot show by common proof that *all* ERP ICs were misclassified. Instead, Plaintiff's case depends upon evidence of ERP ICs whose jobs allegedly do not align with Tyler's stated ERP IC expectations. But, even taken as true, Plaintiff's individualized experience and Plaintiff's selective presentation of other purportedly unique ERP IC experiences are not demonstrable by common proof. Meanwhile, Plaintiff's various derivative claims fall as a matter of law with his unmeritorious overtime claim.

Accordingly, as set forth in more detail below, the Court should grant Tyler's motion, hold that the class and collective are exempt as a matter of law, and enter judgment in favor of Tyler on all claims.

## II.   STATEMENT OF FACTS

### A.   Tyler and its Product Offerings Generally

Tyler provides transformative integrated software and technology services to public sector clients throughout the country. *See* Deposition of Christopher Webster ("Webster Dep.") 15:24–16:7,

-1-

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT AND/OR PARTIAL SUMMARY JUDGMENT – 3:19-cv-07647-WHA**

US_ACTIVE-159596863.8

Ex. 5.[1] In connection with providing its software to clients, Tyler's ERP Division works closely with clients to update and optimize clients' existing "back-office" processes to more efficiently and effectively perform core functions such as financial management, revenue management, human capital management, and human resources functions in connection with the use of Tyler's software. *See* Declaration of Chris Webster ("Webster Decl.") at ¶ 5, Ex. A; Deposition of Cindy Choquette ("Choquette Dep.") 60:25–7, 62:8–15, Ex. 4. The flagship product of the ERP Division is known as "Munis." Webster Decl. ¶ 4, Ex. A.

**B.      The Implementation Process Generally**

Tyler's ERP Division employs ERP ICs to provide direct, specialized guidance and consulting services to Tyler clients through a lengthy, complicated, and, ultimately, transformational process called "implementation." Webster Decl. at ¶ 5, Ex. A. ERP implementations are typically staffed by ERP ICs and a project manager. Declaration of Erin Becker ("Becker Decl.") ¶ 3, Ex. B. Project managers are in charge of preparing the high-level project plan, conducting initial post-contract meetings with the client, setting up an initial project schedule, and tracking the progress against that schedule. *Id*. All other responsibility for achieving a successful implementation is turned over to the ERP ICs, who use their knowledge, experience, and client-facing soft skills to execute on the project plan, absorb information from the client and transfer knowledge back to them, and bring the client live on the Tyler software in the most effective, considered way possible. *Id*.

Once implemented, Tyler's software is used to run one or more of the core functions of the client's essential general business operations. *See, e.g.*, Becker Decl. ¶ 4, Ex. B; Webster Decl. ¶ 5, Ex. A. For example, clients utilize Tyler's Munis financials module to perform a variety of finance-related functions, such as purchases, requisitions, and payment of bills.  Becker Decl. ¶ 4, Ex. B. To make the transition from a client's legacy system to the new Munis system, ERP ICs consult with clients to help them understand Munis's capabilities and make decisions about how the software and the business processes the software facilitates will meet the client's needs, preferences, and

---

[1] All deposition transcripts are attached as exhibits to the Declaration of Michael A. Correll ("Correll Decl."), Ex. J, and referenced by their individual exhibit numbers (e.g., Exhibit 1 – Deposition of Pamela Costner).

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT AND/OR PARTIAL SUMMARY JUDGMENT – 3:19-cv-07647-WHA**

2                                                    US_ACTIVE-159596863.8

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

requirements. *Id.* Along the way, ERP ICs provide recurring opportunities to confirm that the software and the clients' often-new processes are properly established to allow for a seamless transition and much improved post-implementation operating environment. *Id.*

Clients typically implement Tyler software after years of using third-party systems or customized home-grown systems. Webster Decl. ¶ 6, Ex. A. In some cases, Tyler clients license ERP software to move beyond decades of paper-driven operations in favor of Tyler's state-of-the-art digital solutions that improve efficiency and reduce costs. *See, e.g.*, Deposition of Pamela Costner ("Costner Dep.") 47:5–23 (describing transitioning client from paper to digital), Ex 1. Thus, transitioning from a legacy software system to Tyler's ERP system is not just about uploading new software—it is as a transformational experience for Tyler's clients seeking to modernize their operations. Webster Decl. ¶ 6, Ex. A.

The implementation process challenges long-established client habits and requires careful consideration of both client needs and client feelings about their existing systems. As a result, a successful implementation requires not just an understanding of Tyler software and the client's requirements, it also requires the ERP IC to build a rapport with the client. Becker Dec. ¶ 6, Ex. B. How the ERP IC goes about developing a sense of trust and credibility with the client to facilitate consultation depends on the particular style of each ERP IC, their understanding of the software, how they manage the information they receive from the client, how they are most comfortable presenting guidance and recommendations, and their past experience. *Id.*; *see also* Deposition of Ian Roth ("Roth Dep.") 79:1–5 (describing "go live" role as providing client "moral support"), Ex. 2; Deposition of Aaron Kudatsky ("Kudatsky Dep.") 74:15–76:8, Ex. 3; Costner Dep. 41:8–42:4 (explaining the importance of in-person personal engagement and frequently addressing client questions), Ex. 1.

These core functions are codified in the job description for ERP ICs. The job description provides that an ERP IC ". . . consults and partners with clients to gain a comprehensive understanding of workflow, business/technical requirements and needs to ensure that the knowledge transfer addresses client needs." *See* Declaration of Jennifer Turgeon ("Turgeon Decl."), Ex. C-1. The description identifies principal duties as follows:

- Design and conduct knowledge transfer sessions on site or through webinars;

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

- Perform consultation/analysis of client business model to identify and document client requirements;

- Recommend options for new approaches in client work processes as appropriate to ensure efficient software solutions for the client's needs;

- Identify and document business/technical requirement specifications for specific software design/development;

- Create custom reports or customize existing reports to satisfy client requirements.

*Id*. The available summary judgment evidence confirms that these activities are routinely performed by Tyler's ERP ICs. Choquette Dep. 60:25–7, 62:8–15 (stating she would meet with a client's various departments to identify the client's processes), Ex. 4; Roth Dep. 46:14–25 (stating he would suggest efficient ways to configure Tyler's software after hearing a client's needs), Ex. 2; Costner Dep. 105:10–19 (stating she would help the client evaluate software to determine whether an enhancement would need to be made in order to meet the client's requirements), Ex. 1.

### C.   Training Received by ICs

From the first day they begin providing client services, ERP ICs work alone with the client without direct supervision. Declaration of Martha Nelson ("Nelson Decl.") ¶ 8, Ex. F. As a result, before they begin such radically independent work, ERP ICs go through extensive in-house training. For example, ERP ICs hired to implement Munis spend a week in Tyler's offices in Maine attending a training that teaches the fundamentals of that product and the ERP IC position. Kudatsky Dep. 46:20–47:2, Ex. 3. Next, they complete thirty days of remote instruction conducted by Tyler trainers. *Id.* 47:6–8. As part of that training, ERP ICs must demonstrate the trained skills in a mock environment to ensure they can independently provide the required services to clients in a way that is appropriately consultative and engaged. *Id.* 47:15–20. Tyler requires this demonstration prior to deploying ERP ICs because, as unsupervised consultants, no one from Tyler is at the client location to provide direct, much less real-time, feedback. *Id.* 58:5–13. These ERP ICs finish their training by shadowing more experienced IC for four to six weeks. *Id.* 59:10–20.

### D.   The Phases of an ERP Implementation

The implementation process generally is divided into overlapping phases, such as the typical five-phase Munis implementation. *See* Tyler's Opposition to Plaintiff's Motion to Certify, ECF No. 85

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT AND/OR PARTIAL SUMMARY JUDGMENT – 3:19-cv-07647-WHA**

4

US_ACTIVE-159596863.8

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

at 3–4; *see also* Declaration of Steve Bertolini ("Bertolini Decl.") ¶ 3, Ex. D.  Those phrases are: (1) a Fundamentals Review process; (2) an analysis phase, also referred to as "current state/future state"; (3) configuration and testing; (4) training; and (5) "go live" support.   Tyler's Opposition to Plaintiff's Motion to Certify, ECF No. 85 at 3–4. At the same time, implementations always are unique based on a variety of factors, such as the client's needs and issues that come up during the course of an implementation, and the phases of an implementation do not always proceed in a distinct or chronological order. Declaration of MJ Place ("Place Decl.") ¶¶ 3, 4, Ex. G.

### 1.   Fundamentals Review

The Fundamentals Review is an introductory stage in which the ERP IC explains how the licensed Tyler software modules works and answers client questions about the modules.  Declaration of Jim Rasmussen ("Rasmussen Decl.") ¶ 3, Ex. E. While Tyler provides a "fundamentals review script" to assist ICs during this process, that document is simply a starting point because clients typically ask questions during the process that require the ERP IC to rely on their experience and judgment to meet the client's needs. Nelson Decl. ¶ 3, Ex. F;  Rasmussen Decl. ¶ 3, Ex. E; Costner Dep. 42:16–43:3, 44:21–45:3 (stating that Fundamentals Review process is not based on a script that can be used directly with clients as each client is unique), Ex. 1; Choquette Dep. 61:22–62:2 (stating she did not just follow a script when conducting fundamental reviews), Ex. 4. The questions a particular client might pose are impossible to predict and the question-and-answer dialogue is not a scripted process. Nelson Decl. ¶ 3, Ex. F; Turgeon Decl. ¶ 9, Ex. C. As a result, the "fundamentals review script" operates as an outline and general guidance document that ERP ICs must adjust, deviate from, and supplement while actively providing Fundamentals Review-related services.  Nelson Decl. ¶ 3, Ex. F; Turgeon Decl. ¶ 9, Ex. C; Rasmussen Decl. ¶ 3, Ex. E.

### 2.   The Analysis Phase

During the analysis, or "current state/future state," phase of the Munis implementation process, the ERP IC meets with client representatives to discuss and assess how the software can best meet the client's goals within the framework of its unique business operations. Nelson Decl. at ¶ 5, Ex. F. The ERP IC helps guide clients through critical decisions about how their organization, and their operational

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT AND/OR PARTIAL SUMMARY JUDGMENT – 3:19-cv-07647-WHA**

5                                                US_ACTIVE-159596863.8

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

processes, will leverage the new software. Roth Dep. 112:25–113:17, Ex. 2; Costner Dep. 25:14–26:2, Ex. 1; *see also* Roth Dep. 45:24–47:18, Ex. 2; Kudatsky Dep. 52:3–9, Ex. 3. To perform this function, an ERP IC must gather information to understand, and then must actually understand, the client's current processes; how those processes can be performed within Munis; and, if there is not a process readily available in Munis, whether enhancement might be possible to achieve the client's goals. Rasmussen Dec. ¶ 4, Ex. E; Costner Dep. 48:1–4 (stating that information gathering is completed "zero percent" of the time before she arrived), Ex. 1. During the analysis phase, an ERP IC regularly makes recommendations about how the Tyler software should be configured based on the inputs received from the client, weighs and discusses the pros and cons of different software options with the client, and ultimately advises the client on selecting the best method of setting up the software to meet the client's needs. Rasmussen Decl. ¶ 4, Ex. E; Nelson Decl. ¶ 5, Ex. F; Bertolini Decl. ¶ 5, Ex. D; Place Decl. ¶ 10, Ex. G; Declaration of Cam Miles ("Miles Decl.") ¶ 4, Ex. H; Declaration of Cindy Williams ("Williams Decl.") ¶ 4, Ex. I. Because there are so many configuration options within Tyler's software modules, the ERP IC's objective is to configure the client's system in the most efficient and effective manner possible based on direct consultation with the client. Nelson Decl. at ¶ 4, Ex. F.  Clients also rely on the ERP IC to identify best practices, and the ERP IC is often required to coach, and sometimes coax, the client through evaluations, decision making, and accepting changes to their current practices and processes, and to supplementing those operations to address a gap, as dictated by a best practice independently identified and explained by the ERP IC. *Id.* at ¶ 4.

In many respects, this phase of implementation is the most important part of the entire deployment process. During this phase, the ERP ICs serve as a bridge between the client's practical knowledge of its legacy system and the sophistication of the newly licensed software's capabilities. *See* Costner Dep. 67:15–68:7, Ex. 1; Roth Dep. 28:4–9, 48:8–49:22, Ex. 2; Kudatsky Dep. 110:5–111:5, 152:7–153:4, Ex. 3. Through this effort, Tyler makes sure that clients get the product configured and deployed in a way that best meets their preferences, expectations, and requirements. Roth Dep. 44:22–46:17, Ex. 2. In fact, this phase is so important that it continues throughout every phase of a given implementation. Nelson Decl. ¶ 5, Ex. F. That is, as an implementation proceeds, ERP ICs are charged

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT AND/OR PARTIAL SUMMARY JUDGMENT – 3:19-cv-07647-WHA**

6                                                                                    US_ACTIVE-159596863.8

with issue-spotting points at which the client's prior decisions may not meet their needs; revisiting the analysis of different options with the client; and helping the client reach revised, improved conclusions. Bertolini Decl. ¶ 5, Ex. D; Nelson Decl. ¶ 5, Ex. F.; Place Decl. ¶ 13, Ex. G. No one else in the implementation process and no document provided by Tyler controls this ongoing responsibility. *See* Bertolini Decl. ¶ 5, Ex. D. Instead, as even the opt-in class members have acknowledged, ERP ICs must use their own knowledge and skills to spot opportunities to improve the client's "future state" conclusions and make best practice recommendations to clients regarding the utilization of Tyler's software. Choquette Dep. 58:8–13, Ex. 4.

3. <u>The Configuration Phase</u>

Armed with the resulting "future state" data, Tyler next works alongside the client to test and conform the numerous settings and options within Tyler's product with the agreed-upon future-state workflows. *See* Webster Dep. 105:6–25, Ex. 5; Roth Dep. 50:16–22, Ex. 2. Importantly, configuration *does not* mean merely setting up tables and forms. Rather, an ERP IC actively and independently consults with the client to recommend additional processes and engages with the client to ensure that the software-as-configured will meet the client's operational objectives. Place Decl. at ¶¶ 9–10, Ex. G.

Thus, in many respects, the configuration phase operates as a rolling proof-of-concept opportunity to allow the client to see the impact of its "current state/future state" choices and, with guidance from the ERP IC, make any necessary adjustments. Rasmussen Decl. ¶¶ 4, 6, Ex. E.  For example, ERP ICs might discuss the pros and cons of different methods to convert and configure data and make best practice recommendations regarding how client data is set up in their Tyler system on a regular basis. Rasmussen Decl. at ¶ 4, Ex. E. Likewise, ERP ICs might discuss different billing cycle options available within the software and assist the client in coming up with the best cycle that would meet its particular needs. Rasmussen Decl. at ¶ 5, Ex. E; Miles Decl. at ¶ 4, Ex. H ("I would be regularly required to analyze how to best set up the particular function within the system [and] advise the client on different software configuration choices . . . ."). Again, the word "might" in the preceding two examples is critical. ERP ICs are not told when or how to have these discussions. Instead, these discussions occur if and when an ERP IC determines, in direct consultation with the client, that an issue

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT AND/OR PARTIAL SUMMARY JUDGMENT – 3:19-cv-07647-WHA**

7      US_ACTIVE-159596863.8

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

1  needs to be addressed. *See* Costner Dep. 55:6–23, Ex. 1; Roth Dep. 51:10–23, Ex. 2.

2          4.          The Training Phase

3          ERP ICs are *not*, by definition, simply trainers. However, ERP ICs do perform training as *one*

4  *part* of the implementation process. Nelson Decl. ¶ 6, Ex. F. Tyler begins formal training once the

5  software has been configured and then confirmed via testing. Training takes a variety of forms and can

6  look very different from client to client. Among the variations, sometimes Tyler trains the client's own

7  trainers, who will in turn train the client's end users, and other times Tyler directly trains the end users.

8  Still other times, Tyler trains both. Additionally, the pace and approach to training often varies based on

9  the skill set, mood and receptiveness of the client's employees. *See* Webster Dep. 109:23–110:11, Ex.

10  5; Roth Dep. 63:14–23, Ex. 2; Costner Dep. 71:13–23, 72:18–22, 84:13–20, 85:4–17, Ex. 1.

11          The training function looks very different as delivered by each ERP IC based on the needs of

12  each implementation and the style of each ERP IC. For instance, some ERP ICs develop training agendas

13  for clients through a careful analysis of the "current state/future state" process and preceding client

14  communications. Rasmussen Decl. ¶ 7, Ex. E; Nelson Decl. ¶ 5, Ex. F. Even where the project manager

15  prepares the training agenda, ERP ICs may deviate from or modify the agenda based on particular client

16  needs or appetites. Bertolini Decl. ¶ 6, Ex. D. As such, the training provided by ERP ICs is not "cookie

17  cutter" but rather is interactive, client-specific, and dependent on the ERP IC's perception of the client's

18  particular training needs. Rasmussen Decl. ¶ 7, Ex. E; Nelson Decl. ¶ 3, Ex. F. Moreover, ERP trainings

19  are not based on preset lesson plans or curriculum, but, rather, vary from client to client because trainings

20  are conducted on the client's system using the client's data.  *See* Costner Dep. 88:4–9, 89:5–90:8, Ex. 1.

21          Beyond providing and creating the training, ERP ICs are also tasked with assessing the

22  effectiveness of the training. Bertolini Decl. ¶ 7, Ex. D. If an ERP IC perceives, based on their assessment

23  of the training and experience working with client learners, that the client representatives are not

24  understanding the software, then the ERP IC is expected to address the problem. Bertolini Decl. ¶ 7, Ex.

25  D; Nelson Decl. ¶ 6, Ex. F. In addressing such a challenge, ERP ICs use their experience and discretion

26  to make recommendations as to how to ensure a proper training outcome, such as recommending that

27  the client purchase additional training time, refocusing the training on a particular subject matter or

28

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR SUMMARY
JUDGMENT AND/OR PARTIAL SUMMARY JUDGMENT – 3:19-cv-07647-WHA**

8                                                                                    US_ACTIVE-159596863.8

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

business process, or adjusting project deadlines. Rasmussen Decl. ¶ 8, Ex. E; Nelson Decl. ¶ 6, Ex. F; Bertolini Decl. ¶ 7, Ex. D. No document or other policy provided to Tyler dictates when or how such recommendations should be made.

### 5.   The Go Live Phase

After months (and sometimes years) of work, "go live" is the big day when the client fully and finally makes the switch to Tyler's software for operational purposes. But the client does not go it alone—again, Tyler works hand-in-hand with the client to make sure go live is successful. *See* Webster Dep. 111:6–112:6, Ex. 5; Roth Dep. 78:2–6, Ex. 2; Costner Dep. 95:10–20, Ex. 1. During the "go-live" phase, ERP ICs become on-the-spot problem-solvers to address additional client questions, resolve unexpected issues, and provide any final training that they determine to be necessary based on immediate, on-the-ground feedback. Rasmussen Decl. ¶ 9, Ex. E. As in earlier phases, ERP ICs perform these functions by using their own experience and judgment to make recommendations as to how to handle problems or, alternatively, make timely and effective decisions to route issues that they cannot resolve to appropriate Tyler support personnel. *Id.*

### 6.   Additional Discretionary Functions

In addition to the tasks described above, ERP ICs use their independent discretion and judgment to assist with client and Tyler management decision-making on several other matters. For example, ERP ICs exercise judgment in helping clients and project managers decide how implementation services should be allocated. Bertolini Decl. ¶ 8, Ex. D. Using their own experience and on-the-ground observations, ERP ICs assess whether a sufficient amount of time has been purchased to accomplish particular tasks during the implementation process. *Id.* When an ERP IC perceives the client may need additional service days beyond those purchased in the original contract, they are expected to make recommendations to either the client or project manager regarding the need for additional time. *Id*. In other instances, an ERP IC might make suggestions to reallocate previously scheduled days to focus on a particular phase of the implementation process that the IC believes requires priority. *Id.*

Further, ERP ICs are instructed to use their own discretion and judgment to provide premier client service. One of the most notable examples of this guidance comes in the form of the "Life As An

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT AND/OR PARTIAL SUMMARY JUDGMENT – 3:19-cv-07647-WHA**

9                                                              US_ACTIVE-159596863.8

IC" document that Tyler provides to new ERP ICs during their on-boarding. Webster Dep. 156:19–21, Ex. 5; Ex. J at Ex. 10.  Most of the "Life As An IC" document concerns typical new employee items, such as dress code, how to submit expense reports, how to use Tyler resources, and other miscellany. *See generally* Correll Decl., Ex. J at Ex. 10. However, the document also provides several other critical pieces of instruction. For instance, it reminds ERP ICs that they must conduct their own independent preparation, craft an introduction to each session that fits their style, formulate a way to communicate expectations to the client, "build confidence" in the product, "maintain control over clients," provide direct support to the client, follow up and resolve all client questions or assign someone else to respond, "know your audience," and provide a daily conclusion created by the ERP IC to help the client appreciate what they accomplished. *Id.* at 25. None of these actions are provided or scripted in the available documents. Further, the "Life As An IC" document instructs ERP ICs to use their knowledge and experience to identify, categorize, and report "incidents" for each and every client problem that they encounter. *Id.* at 38. In short, ERP ICs are trained from Day 1 that they will have enormous responsibility to shape the format, delivery, and style of each phase of implementation that they execute and that they will carry a personal obligation to help the client spot, assess, and overcome every obstacle in the implementation process without the benefit of step-by-step instructions.

Finally, ERP ICs are responsible for assessing the overall progress of the implementation, ensuring that it remains on schedule, that deadlines are achievable, and, most importantly, reporting those observations and the need for contract-level adjustments to the client or project manager. Williams Decl. ¶ 5, Ex. I; Bertolini Decl. ¶ 9, Ex. D. To do so, ERP ICs provide constant, extremely detailed feedback to project managers. *See* Kudatsky Dep. 157:2–158:10, 160:2–24, Ex. 3. If an ERP IC judges that existing deadlines cannot be met, it is the ERP IC's responsibility to make a recommendation to either the project manager or the client to adjust those deadlines or take other action. *Id.*

7.   The Named Plaintiff's Description of His Former Job

The responsibilities of the ERP IC role outlined above are expressly asserted by Plaintiff in his LinkedIn profile, which describes his work for Tyler as an ERP IC implementation the financial module of Munis:

REED SMITH LLP
A limited liability partnership formed in the State of Delaware





**Financial Implementation Consultant**
Tyler Technologies
Jul 2016 – Mar 2019 · 2 yrs 9 mos
Western Region

• Provide professional and thorough training and consultation to public sector/local government clients on Tyler software products.
• Perform consultation/analysis sessions on applicable Tyler products to determine the existing business model and create a new model to use in the deployment of the project.
• Consult with users to identify the proper data mapping process for data conversion.
• Provide instruction on proofing and analyzing data conversions from existing software to Tyler applications.
• Assist project managers on project planning.
• Play an active role in troubleshooting client issues, or working with the support and development departments to resolve issues and propose enhancements to product stakeholders.

The responsibilities of the ERP IC role outlined above are echoed by Plaintiff in his LinkedIn profile, which describes his work for Tyler as an ERP IC implementation the financial module of Munis: Correll Decl., Ex. J at Ex. 9[2]; *see also* Webster Dep. 92:21–94:3, Ex. 5; Kudatsky Dep. 144:7–145:4, Ex. 3. Plaintiff's own description of his former job—even if Plaintiff's self-serving rejection of his *still* public LinkedIn statements are taken as true concerning his own experience—confirms that, as a matter policy, ERP ICs are expected to perform an incredibly complex, professional role that requires them to be consultative, flexible, use good and independent judgment, and apply critical thinking skills as they navigate the implementation process.

### E.   The Utilization of Guidelines and Templates by ICs

In its Order on Plaintiff's Rule 23 Certification Motion, the Court placed emphasis on training modules, templates, and so-called "scripts" to conclude that the primary duty element of the administrative exemption could be determined by common proof. *See* February 25, 2021 Order, ECF No. 98 at 10, 12. The notion that these documents create a role or routine processing of an implementation, or the job functions of an IC, is not correct.

The evidence shows that these materials are not mandatory scripts and do not otherwise dictate or control the ERP ICs' day to day job functions or their interactions with Tyler's clients. Turgeon Decl.

---

[2] Plaintiff attempted to assert at his September 11, 2020, deposition that some of the statements he included on his own LinkedIn profile were false and misleading. Nonetheless, the attached screenshot reflects Plaintiff's public LinkedIn profile as of April 17, 2021. Plaintiff has made other changes to his LinkedIn profile since his deposition, including adding a new job. Yet, he has not withdrawn the public profile excerpted above.

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

at ¶ 4, Ex. C. Rather, these materials operate reference materials that must be modified and adapted by ERP ICs based on the needs of each and every particular project and based on the experience, style, and knowledge of a given ERP IC. *Id.*; Rasmussen Decl. ¶ 3, Ex. E; Nelson Decl. ¶ 3, Ex. F; Place Decl. ¶ 4 (describing all implementations as "unique"), Ex. G. Moreover, the expectation at Tyler—and reality of working as an ERP IC—is that ERP ICs rely less and less on these materials and more on their experience and the ability to make judgment calls based on that experience. Turgeon Decl. ¶ 4, Ex. C.[3]

For example, the "current state/future state" agenda within the SharePoint library where these materials are stored identifies high-level topics that might typically be covered during analysis meetings, but it is up to the IC to determine how and in what order those topics are to be covered. Turgeon Decl. ¶ 5, Ex. C.  Other templates and agendas within SharePoint similarly must be adapted and customized to meet the needs of a particular client. *Id.* ¶¶ 6–7. Again, it is the ERP IC's responsibility to determine how to adapt those agendas to meet client needs. *Id.* ¶ 7.

Indeed, the only document in the SharePoint site that has the word "script" in its title is the "Fundamentals Review Script." Turgeon Decl. ¶ 9, Ex. C.  As noted above, though, that script is only a starting point to the Fundamentals Review process. Not only is the ERP IC expected to adapt it to their particular approach, style, and client needs, but the client representatives typically will ask questions of the ERP IC during this process. *Id.* Those questions cannot be predicted in advance, and the ERP IC is required to field those in real time, without supervision or oversight, to help guide future decisions during the implementation process and to begin to establish a rapport with the client. *Id.*[4]

## III.   THE COURT'S CERTIFICATION ORDER

On February 25, 2021, the Court issued a limited Rule 23 certification order. The Court certified a class of ERP ICs who worked in California during the class period solely on the question of whether Tyler properly classified them as exempt. *See* February 25, 2021 Order, ECF No. 98 at 14.

---

[3] To be clear, this fairly rapid movement away from reliance on templates applies to ERP ICs—not just those ERP ICs promoted to Senior ERP IC. Turgeon Decl. ¶ 4, Ex. C.

[4] In its Rule 23 order, the Court specifically referenced a document entitled "Life as an IC."  *See* February 25, 2021 Order, ECF No. 98 at 12.  That document is not a guide or template, but rather a document provided to new ERP ICs during the new hire onboarding process which generally describes the ERP IC role. Turgeon Decl. ¶ 10, Ex. C; *see also* Exhibit. 10.

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT AND/OR PARTIAL SUMMARY JUDGMENT – 3:19-cv-07647-WHA**

12

US_ACTIVE-159596863.8

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

1   The Court further noted that, aside from the issue of misclassification if provable by common

2   evidence, addressing class-wide liability or damages would involve a "multitudinous and bone-

3   crushing" detailed assessment. *Id.* at 3. The Court held in abeyance and declined to immediately

4   address the import of the choice-of-law and related issues arising from certifying a multi-state transient

5   class that includes numerous non-residents.

6   **IV.**   **LEGAL STANDARD**

7        Summary judgment is proper when the pleadings, discovery, and affidavits show that there is

8   no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law.

9   FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). To defeat summary

10   judgment, the non-moving party cannot rely solely on the allegations in the complaint, self-serving

11   testimony, or "some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v.*

12   *Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S.

13   242, 252 (1986) (the "mere existence of a scintilla of evidence in support of the [non-movant's]

14   position [is] insufficient" to avoid summary judgment); *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d

15   1054, 1061 (9th Cir. 2002) (court will not find genuine dispute of fact based on "uncorroborated and

16   self-serving" testimony). Rather, the nonmoving party must produce probative evidence

17   demonstrating the existence of a disputed question of material fact. *See Anderson*, 477 U.S. at 256–

18   57.

19   **V.**   **ARGUMENT**

20        **A.**   **Plaintiff's First and Second Causes of Action Fail Because ERP ICs Are**

21           **Properly Classified as Exempt Under the Administrative Exemption.**

22        ERP ICs—as a class—fall within California's administrative exemption, and, as a result, they

23   are not entitled to overtime payments.

24        To qualify for administrative exemption under California law, an employee must: "(1) perform

25   office or non-manual work directly related to management policies or general business operations of

26   the employer or its customers; (2) customarily and regularly exercise discretion and independent

27   judgment; (3) perform under only general supervision work along specialized or technical lines

28

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR SUMMARY
JUDGMENT AND/OR PARTIAL SUMMARY JUDGMENT – 3:19-cv-07647-WHA**

13               US_ACTIVE-159596863.8

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

requiring special training, or, execute under only general supervision special assignments and tasks; (4) be engaged in the activities meeting the test for exemption at least 50 percent of the time; (5) earn twice the state's minimum wage." *Eicher v. Advanced Bus. Integrators, Inc.*, 151 Cal. App. 4th 1363, 1371 (2007).

Further, the question before the Court is whether common proof establishes that all ERP ICs are either exempt or non-exempt. *See* February 25, 2021 Order, ECF No. 98 at 4. Idiosyncratic experiences of specific ERP ICs, such as Plaintiff, that may not qualify for exemption if taken as true do not defeat exemption. *See, e.g., Heffelfinger v. Elec. Data Sys. Corp.*, 2013 U.S. Dist. LEXIS 201979, at *16 (C.D. Cal. Feb. 26, 2013) ("In an effort to defeat summary judgment, plaintiffs argued that class members performed individualized tasks and that not all performed exempt work. The court noted that this assertion was at odds with the arguments plaintiffs had advanced in support of certification of a class. It observed that plaintiffs' new argument 'support[ed] decertification because it undermine[d] the court's earlier conclusion that common issues of law predominate[d], and suggest[ed] that an individual, fact-intensive inquiry [would] be required to determine the exempt or non-exempt status of each member of the class.'"). Instead, Plaintiff must rely on common proof applicable to *all* ERP ICs to controvert Defendant's evidence and establish that *all* ERP ICs are categorically misclassified. Put differently, unless *all* ERP ICs are misclassified, Plaintiff cannot prevail on his class-wide claim and Defendant is entitled to judgment as a matter of law on the class-wide issue certified by the Court. *See id.* at *15–16.

Here, the work of Defendant's ERP ICs satisfies all five required elements.

1.   ERP ICs Perform Work Directly Related to the General Business Operations of Defendant's Clients.

Defendant's summary judgment evidence establishes the ERP ICs perform work directly related to the general business operations of Defendant's clients. For an employee's primary duties to qualify as "directly related" to a customer's general business operations under the administrative exemption, two components must be satisfied. *See Harris v. Superior Court*, 53 Cal.4th 170, 181 (2011). First, an employee's primary duties must be qualitatively administrative. *Id.* Second, under

the so-called "quantitative" analysis, an employee's primary duties must be of substantial importance to the management or operations of the customer's business. *Id.* Here, Defendant's ERP ICs' primary job duty is to support and advise each client's subject-matter experts on the implementation of new software-based means of conducting their core, "back-office" functions.  His work goes to the very engine of Defendant's clients' operations—shaping at a basic level how they perform non-production operational tasks such as proper tracking of accounts payable and receivable; payroll processing; revenue accounting; procurement activity; recruiting; employee time tracking; and tax and utilities billing, for example. Accordingly, the work of ERP ICs categorically satisfies the first element of California's administrative exemption.

a.   <u>The Qualitative Nature of ERP ICs' Work Satisfies the General</u>
<u>Business Operations Requirement.</u>

ERP ICs perform qualitatively administrative work for Defendant's clients. The qualitative prong asks whether an employee's duties constitute "those types of activities relating to the administrative operations of a business as distinguished from 'production' or, in a retail or service establishment, 'sales' work." *Harris*, 53 Cal.4th at 180 n.6 (emphasis added) (citing 29 C.F.R. § 541.205(a)). The "administrative operations [of a business] include work done by 'white collar employees *engaged in servicing a business*.'" *Id.* at 182 (emphasis added). "Servicing" a business includes, but is not limited to, advising management, planning, . . . representing the company, . . . and business research control." *Id.* at 180 n.6. Here, the undisputed evidence shows that ERP ICs provide Defendant's clients with management advice and process planning while representing Defendant with its clients. *See, e.g.*, Roth Dep. 113:3–17 (stating clients rely on the ERP ICs' advice on how to best configure their software to meet their organization's processing and operational needs), Ex. 2; *see also* Williams Decl. ¶ 4 (stating she regularly provides recommendations based on her work with each client and advises them on how to best achieve their organization's desired results within Munis), Ex. I; Place Decl. ¶ 8 (stating that she spends an overwhelmingly majority of her time communicating with clients regarding their needs and making recommendations to address those needs), Ex. G; Rasmussen Decl. ¶ 4 (stating he would identify and recommend configuration options, including new processes

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT AND/OR PARTIAL SUMMARY JUDGMENT – 3:19-cv-07647-WHA**

15                                                                US_ACTIVE-159596863.8

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

1  clients did not already have in place, based on his discussions and understanding of clients' business

2  needs), Ex. E; Turgeon Decl. ¶ 2 (stating ERP ICs engage directly with Tyler's clients to identify

3  business needs, gain trust and commitment into the implementation process, and make regular

4  assessments of the progress of the project), Ex. C.

5          b.    The Quantitative Nature of ERP ICs' Work Satisfies The General

6              Business Operations Requirement.

7        The role of ERP ICs in helping recraft client general business operations satisfies the

8  quantitative prong of the General Business Operations element. The quantitative component requires

9  that an administrative employee's duties be "directly related" to general business operations such that

10  they are of "substantial importance to the management or operation of the business of his employer or

11  his employer's customers." *Harris*, 53 Cal.4th at 180 n.6 (citing 29 C.F.R. § 541.205(a)). To satisfy

12  this test, an employee need not "participate in the formulation of management policies or in the

13  operation of the business as a whole." *Id.* (stating that section 541.205(c) governs the quantitative

14  component). Rather, administrative employees need only perform "work [that] affects policy" or

15  "whose responsibility it is to execute or carry [policy] out." *Id*. The "substantial importance"

16  requirement "includes a wide variety of persons who either carry out major assignments in conducting

17  the operations of the business, or whose work affects business operations to a substantial degree, even

18  though their assignments are tasks related to the operation of a particular segment of the business." *Id.*

19        The decision in *Valles v. IBM Corp.*, 2010 U.S. Dist. LEXIS 145344 (C.D. Cal. May 6, 2010)

20  confirms that ERP ICs satisfy the quantitative requirement. In *Valles*, the court found that the

21  plaintiff's primary job duties were "driving problem determination, enforcing process compliance and

22  recommending process improvements . . . ." *Id.* at *18. Further, the court noted that the plaintiff's job

23  responsibilities included "post-mortem" reports on customer problems after they were resolved. *Id.* at

24  *7–8. These reports "describe[e] for the customer and the team what happened to cause the outage,

25  how the outage was fixed, and what can be done to prevent the problem in the future." *Id.* Based on

26  these factors, the court found that the plaintiff's work for customers satisfied the qualitative prong as

27  a matter of law.

28

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

Here, ERP ICs provide services that are directly analogous to those provided by the *Valles* plaintiff. For example, ERP ICs engage directly with Tyler's clients to understand their business and process needs, make recommendations on the best software configuration options for each client to achieve their unique needs, and assist those clients in resolving technical or process-related problems, among other things. Turgeon Decl. ¶ 2, Ex. C; *see also, e.g.*, Choquette Dep. 58:3–59:1 (stating that after discussions with various client department leads, she would recommend the best way to configure Tyler's software to efficiently handle the client's business processes), Ex. 4. To the extent ICs utilize guidelines and templates during implementation, such policies are executed and carried out by ICs in a unique manner based on the needs of each and every particular project and based on the ICs' experience, style, and knowledge.  Turgeon Decl., at ¶ 4, Ex. C; Rasmussen Decl., ¶ 3, Ex. E; Nelson Decl. ¶ 3, Ex. F; Place Decl. ¶ 4, Ex. G. ERP ICs also create site reports that detail project progress as well as errors that occurred or issues that were spotted, which other project resources can review to determine what had been resolved and what issues were still outstanding. *See* Kudatsky Dep. 162:7–13, 166:19–167:2, Ex. 3.[5]

Accordingly, Defendant's summary judgment evidence satisfies the quantitative prong of the General Business Operations element as to the class.

2.    ERP ICs Customarily and Regularly Exercise Discretion and Independent Judgment.

ERP ICs satisfy the "discretion and independent judgment" prong of the California administrative exemption test. The common evidence demonstrates that ERP ICs are entrusted with unsupervised, day-to-day responsibility for guiding and advising clients in different ways throughout the overlapping phases of an implementation. Each phase draws upon the ERP ICs knowledge, experience, and decision-making ability with an ultimate goal of providing a uniquely tailored,

---

[5] To the extent that Plaintiff argues that implementation consultants perform some clerical duties, such arguments do not create a triable issue on the quantitative component of the directly-related requirement. *See Bucklin v. Zurich Am. Ins. Co.*, 619 F. App'x 574, 576 (9th Cir. 2015).  Instead, the performance of clerical duties will only overcome the performance of exempt duties where such clerical work is not closely related to exempt duties *and* the employee spends less than 50% of compensable time on administrative tasks as discussed *infra*.  Neither of those points applies here.

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT AND/OR PARTIAL SUMMARY JUDGMENT – 3:19-cv-07647-WHA**

17                                                                    US_ACTIVE-159596863.8

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

1  optimized outcome for each client. Accordingly, Defendant has demonstrated the ERP ICs regularly

2  exercise discretion and independent judgment.

3  Under California law, ERP ICs must customarily and regularly exercise discretion and

4  independent judgment to qualify for the administrative exemption. *See* 8 C.C.R. § 11040(1)(A)(2)(b).

5  The "exercise of discretion and independent judgment" is defined as "the comparison and evaluation

6  of possible courses of conduct, and acting or making a decision after the various possibilities have

7  been considered." 29 C.F.R. § 541.202(a). Thus, to be exempt, an employee must have "the authority

8  or power to make an independent choice, free from immediate direction or supervision, and with

9  respect to matters of significance." *United Postal Serv. Wage & Hour Cases*, 190 Cal. App. 4th 1001,

10  1024 (2010); *see also Valles*, 2010 U.S. Dist. LEXIS 145344, *13 (C.D. Cal. May 6, 2010) (*quoting*

11  former 29 C.F.R. § 541.207(a)). However, "discretion and independent judgment does not necessarily

12  imply that the decisions made by the employee have a finality that goes with unlimited authority and

13  a complete absence of review." *Id.* at 1027; *see also Bucklin*, 619 F. App'x. at 577 (the mere fact that

14  supervisors "review [an employee's] . . . discretionary decisions does not change the fact that

15  [employees] exercised independent judgment"). To rebut this element, Plaintiff must show that

16  defendant "constrained an [employee's discretion] such that it became largely inconsequential."

17  *Dobrosky v. Arthur J. Gallagher Serv. Co., LLC*, 2015 U.S. Dist. LEXIS 68252, at *57 (C.D. Cal. May

18  18, 2015).

19  Meanwhile, the phrase "customarily and regularly" is defined under federal regulation to mean

20  "a frequency which must be greater than occasional but which, of course, may be less than constant."

21  *Morales v. Compass Grp., PLC*, 2014 U.S. Dist. LEXIS 150114, at *20 (C.D. Cal. Oct. 16, 2014).

22  California law depends upon the federal construction of this term in applying the California Labor

23  Code. *See Campbell v. PricewaterhouseCoopers, LLP*, 642 F.3d 820, 832 (9th Cir. 2011). "Courts

24  have declined to set bright-line rules regarding what constitutes customary and regularly."  *Morales*,

25  2014 U.S. Dist. LEXIS 150114 at *19–20. Critically, the phrase "customarily and regularly does not

26  imply a 'majority of the time' test." *Taylor v. Waddell & Reed, Inc.*, 2012 U.S. Dist. LEXIS 212, at

27  *11 (S.D. Cal. Jan. 3, 2012).

28

---

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT AND/OR PARTIAL SUMMARY JUDGMENT – 3:19-cv-07647-WHA**

US_ACTIVE-159596863.8

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

ERP ICs meet the discretion and independent judgment prong because the common proof demonstrates that ERP ICs do, in fact, retain decision-making authority on matters of consequences, and Plaintiff cannot show that Defendant constrained ERP ICs' discretion such that it became "largely inconsequential." Defendant's undisputed satisfaction of this prong is demonstrated most clearly by the decision in *Valles v. IBM*, 2010 U.S. Dist. LEXIS 145344 (C.D. Cal. May 6, 2010). In *Valles*, defendant's customers were other large companies that had entered into outsourcing agreements whereby the defendant agreed to maintain the customer's computer infrastructure. *Id.* at *3. The plaintiff's primary job duty consisted of "managing problems" associated with customer systems by monitoring the process of correcting mainframe and network outages using a set of flowcharts and predetermined escalation intervals. *Id.* at *4–5. Further, the plaintiff used his knowledge and experience to analyze and evaluate the source of any problems that arose and make recommendations to avoid recurrence. *Id.* at *16. The court held that—notwithstanding the existence of controlling flow charts and a predetermined escalation system—the plaintiff was properly classified as exempt under the administrative exemption. *Id.* at *23. The court held that the exemption applied because the plaintiff used discretion and judgment by making customer-specific decisions that were not strictly controlled by guidance documents. *Id.* at *15. Further, the court found that defendant's role making recommendations concerning how to improve the repair process and avoid future outages supported exemption. *Id.* at *15–16.

Here, ERP ICs also exercise judgment and discretion in helping clients "manage problems" associated with implementing new software that fundamentally reshapes and refines their business processes while also routinely reporting back their observations and suggestions for next steps in the larger implementation process. For example, ERP ICs use their independent judgment and discretion to shape how they teach clients the ways in which their organization will operate within the new software, aid clients in modifying processes to make optimal use of the software, and recommend to clients more efficient and effective use of the software. *See* Roth Dep. 46:3–13, Ex. 2; *see also, e.g.*, Rasmussen Decl. ¶ 4, Ex. E (stating he would weigh the pros and cons of different software functions and make recommendations to the client). Similarly, ERP ICs also use their judgment and discretion

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR SUMMARY
JUDGMENT AND/OR PARTIAL SUMMARY JUDGMENT – 3:19-cv-07647-WHA

19                                                                          US_ACTIVE-159596863.8

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

analyze client needs, compare those to the available software features and functionality, and recommend software configuration choices to best meet clients' needs. *See* Miles Decl. at ¶ 5, Ex. H ("I would be regularly required to analyze how to best set up the particular function within the system [and] advise the client on different software configuration choices . . . ."); *see also* Nelson Decl. ¶ 4, Ex. F ("Clients also rely on me to identify best practices, because their current routines are based on habits and not an understanding of the most appropriate ways to process their financial needs and obligations."). Moreover, the IC is expected to develop a rapport and sense of trust with the client, not simply implement the software from a technical perspective. Becker Decl. ¶ 6, Ex. B.

The court's decision in *Moua v. IBM*, 2017 U.S. Dist. LEXIS 162948 (N.D. Cal. Sept. 29, 2017) is similarly instructive. In *Moua*, the court walked through the application of various California overtime exemptions as applied to sixteen different Private Attorney General Act claimants asserting California Labor Code violations. *Id.* at *5–9. The court addressed fifteen of those claimants under the administrative exemption and granted summary judgement as to all but two plaintiffs:

- One plaintiff was deemed administrative exempt because his job involved "assess[ing] customer needs, recommend[ing] upgrades, assess[ing] the propriety of system changes, manag[ing] installations and upgrade projects, and ma[king] recommendations based on the unique needs of particular customers." *Id.* at *25.

- Another plaintiff deemed covered by the administrative exemption was a systems administrator who spent 40% of his time on systems analysis, 25% of his time preparing and delivering recommendations to client systems, and 30% of his time executing changes, attending internal meetings, and resolving system problems. *Id.* at 18

- The court deemed another plaintiff properly classified as administratively exempt merely by virtue of her work "advis[ing] customers as to their training and educational needs related to software products." *Id* .at *11.

- The court deemed five plaintiffs exempt whose who recommended software system improvements, planned maintenance projects, and "resolved problems." *Id.* at 15–16.

In each instance, the court held that these facts—on their face—satisfied the discretion and independent judgment prong. Moreover, even the denied portion of the motion in *Moua* is instructive here. The court excluded two plaintiffs from its otherwise complete grant of summary judgment because the record did not show they had client interaction. *Id.* at *20–21. The court emphasized that client interaction distinguished exempt employees from non-exempt clerical employees. *Id.* at *21.

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT AND/OR PARTIAL SUMMARY JUDGMENT – 3:19-cv-07647-WHA**

20                                                                    US_ACTIVE-159596863.8

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

1    Here, it is undisputed that ERP ICs' exempt work required the near constant exercise of

2    discretion and independent judgment far in excess of the job duties deemed sufficient in *Moua* as

3    described above.  Further, unlike the two plaintiffs who survived summary judgment in *Moua*, ERP

4    ICs spend the vast majority of their time in a client-facing posture, providing direct feedback and

5    guidance. *See* Turgeon Decl. ¶ 2, Ex. C; *see also* Ex. 11 at 7 (stating ERP ICs are on site without direct

6    supervision with clients at least 3 days a week). Thus, even the limited trial issue held over in *Moua*

7    provides further affirmation that no reasonable juror could find Defendant's client-facing, on-the-

8    ground consultants were non-exempt clerical employees.

9    Finally, Defendant's policies, guidelines, and manuals do not defeat exemption in this case. In

10   *United Postal Service Wage & Hour Cases*, the court held that, "merely because an employer requires

11   adherence to regulations, guidelines or procedures does not mean an [employee] does not exercise

12   discretion or judgment." 190 Cal. App. 4th 1001, 1026 (2010).  Rather, where "internal employer

13   policies and procedures simply *channel* the exercise of discretion and judgment, as opposed

14   to *eliminating* it entirely or otherwise constraining it to a degree where any discretion is largely

15   inconsequential, the [] exemption may still apply." *Id.*  The Ninth Circuit reached the same conclusion

16   in *Bucklin v. Zurich American Insurance Company*, expressly holding that an employer's restriction

17   of employee control through reference manuals and guidelines does not—as a matter of law—prevent

18   an employee from exercising independent discretion or judgment. 619 F. App'x 574, 576-77 ("That

19   appellants' discretion was restricted to Zurich's best practices manual does not negate the undisputed

20   fact that appellants regularly exercised discretion and independent judgment."). Thus, the broad

21   authority exercised by ERP ICs described above is not defeated by the mere existence of a SharePoint

22   library making available guides, reference materials, and training tools the assist the ERP ICs

23   (especially those just out of training) in performing their consultative work.

24   Accordingly, Defendant has demonstrated that the common proof demonstrates that ERP

25   ICs, as a group, exercise discretion and independent judgment.

26          3.    ERP ICs Execute Assignments and Tasks Under Only General Supervision

27   Plaintiff does not and cannot dispute that ERP ICs work under general supervision. Under

28

---

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT AND/OR PARTIAL SUMMARY JUDGMENT – 3:19-cv-07647-WHA**

US_ACTIVE-159596863.8

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

California Code of Regulations §§ 11040(1)(A)(2)(d) and (e), employees must either perform work under only general supervision along specialized or technical lines, or execute special assignments and tasks under only general supervision.  Here, ERP ICs meet with clients without direct supervision each week of a project. Turgeon Decl. ¶ 2, Ex. C; *see also* Rasmussen Decl. ¶ 4 (stating he would be the only Tyler representative at the client location), Ex. E; Kudatsky Dep. 58:11–13 (stating if another ERP IC was at the client's site with him, they would be working on a separate agenda with different tasks), Ex. 3. To prepare for working with clients under no direct supervision, ERP ICs go through a rigorous, in-depth training. *See, e.g.*, Choquette Dep. 20:12–22, Ex. 4. In training, ERP ICs receive technical training on Tyler's software, but also learn how to engage with clients to receive information *from* them and transfer knowledge and recommendations back *to* them. *Id.* 21:7–11. Once training is complete, ERP ICs can, and do, conduct all phases of the implementation process without direct supervision. *See* Nelson Decl. ¶ 7, Ex. F.

4. ERP ICs Engage in Qualifying Work At Least 50 Percent of The Time

ERP ICs perform administrative functions more than fifty percent of their compensable hours, as demonstrated by common policy documents and confirmed by testimonial evidence. Under California Code of Regulations § 11040(1)(A)(2)(f), to meet the administrative exemption, employees must be "primarily engaged in duties that meet the test of the exemption," which means more than one-half of their work time. *See* CAL. LAB. CODE § 515(e). For purposes of this calculation, exempt work includes "all work that is directly or closely related to exempt work and work which is properly viewed as a means for carrying out exempt functions." 8 C.C.R.  § 11040(1)(A)(2)(f). Importantly, § 11040(1)(A)(2)(f) also provides that the court should consider both the "work actually performed" *and* "the employer's realistic expectations and the realistic requirements of job . . . ."

Here, Defendant's "Life As An IC" onboarding document makes clear that ERP ICs are engaged in exempt activity the vast majority of the time. Per that document, ERP ICs spend Mondays doing administrative tasks such as reviewing materials to prepare for client engagement and following up on client emails and questions. Ex. 10 at 7. The testimonial evidence from Plaintiff and others confirms that these tasks are performed for on Mondays, including while travelling. *See, e.g.*,

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR SUMMARY
JUDGMENT AND/OR PARTIAL SUMMARY JUDGMENT – 3:19-cv-07647-WHA

22

US_ACTIVE-159596863.8

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

Kudatsky Dep. 158;16–159:3, Ex. 3; Roth Dep. 93:15–23, Ex. 2. Tuesday through Thursday—the majority of hours each week—are spent refining and conducting on-site client implementation activities that, as discussed above, require the exercise of judgment and discretion in supporting the client's general business operations. Ex. 10 at 8. Again, Plaintiff and other witnesses provided ample testimony that these tasks and the "closely related" activity of preparing for such tasks make up the majority of their weekly work. *See generally* Kudatsky Dep. 158:15–159:4, 173:13–174:10, Ex. 3; Roth Dep. 93:15–23, 99:18–100:3, 100:19–101:2, Ex. 2. Finally, on Friday, ERP ICs either provide more in-person client service or report back on the implementation activities for the week and handle follow-up with the client and prepare for the upcoming week. *See* Ex. 10 at 8.  Again, testimonial evidence confirms that this experience is common to the class.  *See, e.g.*, Costner Dep. 106:7–13, Ex. 1; Kudatsky Dep. 179:20–180:4, Ex. 3.  Thus, Defendant's policy statements and the testimony gathered to date confirm that ERP ICs engage in administrative activity for the majority of their time.

5.      ERP ICs Earn Twice The State's Minimum Wage

Plaintiff does not contend that ERP ICs fail the required minimum wage requirement to qualify for exemption on a class-wide basis. Under California Code of Regulations § 11040(1)(A)(2)(g), an employee must also earn a monthly salary equivalent to no less than two times the state minimum wage for full-time employment. For example, in 2020 California's minimum wage was $13.00 per hour making the required salary level $54,080. *See* Cal. Lab. Code § 1182.12. The evidence establishes that, by way of example, Plaintiff's salary when he ended his employment with Tyler, which was prior to 2020, was between $55,000 and $60,000 per year. *See* Kudatsky Dep. 183:5–8, Ex. 3.  Plaintiff has presented no evidence that Tyler has failed to pay its ERP ICs less than two times California's minimum wage, much less evidence to establish such a failure on a class wide basis.

**B.      Summary Judgment Is Proper On Plaintiff's FLSA-Related Claims**

As the Court previously noted in its Certification Order, "California's [administrative exemption] requirement differs [from the FLSA] only in that employees must show they spent *more than 50%* of their time on exempt tasks; the federal definition contains no 50% requirement." February 25, 2021 Order, ECF No. 98 at 4. Consequently, even if the Court finds that implementation

1   consultants did not spend more than 50% of their time on exempt tasks, the Court should still grant

2   partial summary judgment on Plaintiff's FLSA-related claims.

3   **C.    The *Greene* Decision Does Support Plaintiff's Position in This Case.**

4   Plaintiff likely will direct the Court to the recent decision in *Greene v. Tyler Techs.*, 2021 U.S.

5   Dist. LEXIS 48775 (N.D. Ga. Mar. 16, 2021), in which the Georgia district court granted summary

6   judgment to an implementation consultant in an FLSA overtime case. The ruling in *Greene*, however,

7   actually affirmatively demonstrates Plaintiff cannot defeat Defendant's demonstration of

8   administrative exemption through Plaintiff's presentation of common proof.  Instead, the available

9   common proof shows that ERP ICs are exempt and, as demonstrated in *Greene*, alleged incidents of

10  misclassification are necessarily driven by individual evidence derogating that common proof.

11  *Greene* involved a former employee of a company called ExecuTime that Defendant acquired

12  in June of 2016.  *Id.* at *2.  At ExecuTime, Greene did not have the title of "Implementation

13  Consultant," but rather was a "project manager." *Id*. While she did perform some functions that

14  overlapped with the Defendant's ERP IC role, her job was not the same given the

15  scheduling/calendaring responsibilities ExecuTime gave to its "project managers." *Id.* at *5;

16  Declaration of Kathy Thomas ("Thomas Decl.") ¶ 3, Ex. Q.

17  The court's decision, moreover, depended on accepting a testimonial description of Greene's

18  role that was both different from and narrower than the role of ERP ICs. Greene was focused on

19  "building schedules" and ensuring that "the correct schedules would populate in the software for the

20  local departments." *Id.* at *7. The ERP ICs in this case—though sharing the same title—have not

21  described and do not have similar job duties. The court also focused on Greene's testimony that 60 to

22  80 percent of her job consisted of "conducting ExecuTime training" and "preparing for ExecuTime

23  training sessions." *Id.* at *13. The court determined that the remainder of her post-acquisition

24  responsibilities consisted of assisting with troubleshooting and conducting check in telephone calls

25  with clients. *Id.* None of the employees or former employees in this case have testified to a similar job

26  experience as an ERP IC. Moreover, and perhaps most significantly, nowhere in the *Greene* order is

27  there a mention of the analytical, current state/future state work, or the consulting duties and best

28

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT AND/OR PARTIAL SUMMARY JUDGMENT – 3:19-cv-07647-WHA**

24

US_ACTIVE-159596863.8

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

1  practices recommendations that are central to the role of an ERP IC as described in the applicable job

2  description and supporting documents as well as the testimony of other witnesses in this case.

3      In short, the court accepted, and relied on, Greene's testimony about her *individual* experience

4  as an implementation consultant that deviates materially—if not entirely—from the common proof

5  regarding the ERP IC role in this case.  The *Greene* court's decision confirms that the only way to

6  determine whether Greene was properly classified was to engage in an individualized analysis.  Thus,

7  at most, *Greene* demonstrates that Plaintiff can only demonstrate misclassification by controverting

8  common proof with individualized experiences that are not common to the class.

9      **D.      Plaintiff's Third and Fourth Causes of Action Are Derivative and Likewise Fail**

10     Plaintiff's waiting time penalties claim under California Labor Code sections 201, 202, and

11 203 are premised on the erroneous belief that implementation consultants are non-exempt employees

12 entitled to overtime under California and federal law.  As set forth above, class members are exempt

13 from overtime penalties under the California administrative exemption.  As a result, Plaintiff's third

14 cause of action for waiting time penalties, as well as Plaintiff's fourth cause of action for inaccurate

15 wage statements under Labor Code section 226, fail.

16     **E.      Plaintiff's Derivative UCL Claim Likewise Fails**

17     Class members may assert a UCL claim only if they have (1) "suffered injury in fact," and (2)

18 have "lost money or property as a result of the unfair competition."  *Hall v. Time Inc.*, 158 Cal. App.

19 4th 847, 852 (2008).  It is axiomatic that UCL claims are generally derivative in nature; that is, they

20 "borrow[] violations from other laws . . . ."  *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal.4th

21 1134, 1143 (2003).  Here, the allegations upon which Plaintiff purports to assert a UCL claim are the

22 same as those set forth in support of the other causes of action. Thus, if Plaintiff's California Labor

23 Code and FLSA claims fail (as they do), then Plaintiff's derivative UCL claim also fails (as it should).

24 **VI.    CONCLUSION**

25     For the reasons set forth above, the undisputed facts demonstrate that ERP ICs were and are

26 exempt under California and federal. Thus, the Court should grant Defendant summary judgment.

27

28

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT AND/OR PARTIAL SUMMARY JUDGMENT – 3:19-cv-07647-WHA**

25                                                                US_ACTIVE-159596863.8

DATED:  April 19, 2021

REED SMITH LLP


By:   /s/ Paulo B. McKeeby
Brian K. Morris
Paulo B. McKeeby
Michael A. Correll

*Attorneys for Defendant*

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT AND/OR PARTIAL SUMMARY JUDGMENT – 3:19-cv-07647-WHA**
26
US_ACTIVE-159596863.8