Matthew C. Helland, CA State Bar No. 250451
helland@nka.com
Daniel S. Brome, CA State Bar No. 278915
dbrome@nka.com
NICHOLS KASTER, LLP
235 Montgomery St., Suite 810
San Francisco, CA 94104
Telephone: (415) 277-7235
Facsimile: (415) 277-7238

Rachhana T. Srey, MN State Bar No. 340133*
srey@nka.com
NICHOLS KASTER, PLLP
4700 IDS Center
80 South 8th Street
Minneapolis, MN 55402
Telephone: (612) 256-3200
Facsimile: (612) 338-4878
*Admitted pro hac vice

Benjamin L. Davis, MD Bar No. 29774*
bdavis@nicholllaw.com
The Law Offices of Peter T. Nicholl
36 Charles Street, Suite 1700
Baltimore, MD 21201
*Pro hac vice application forthcoming

Attorneys for Plaintiff and those similarly situated

**IN THE UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| Aaron Kudatsky, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>Tyler Technologies,<br><br>Defendant. | Case No.   3:19-CV-07647-WHA<br><br>**DECLARATION OF DANIEL S. BROME**<br><br>**Date: June 17, 2021**<br>**Time: 8:00 am**<br>**Courtroom: 12 – 19th Floor**<br><br>**Judge: Hon. William Alsup** |

DECLARATION OF DANIEL S. BROME                                                              3:19-cv-07647-WHA

1

I, Daniel S. Brome, declare as follows:

1. I am an attorney with the law firm of Nichols Kaster, counsel of record for the named Plaintiff and opt-in Plaintiffs and the Class in this matter. I make this declaration based upon my personal knowledge, and could so testify if called to do so.

2. Attached hereto are true and correct copies of the following exhibits:

**Exhibit A:** The Parties' Settlement Agreement;

**Exhibit B:** Settlement Notice Form – FLSA Only;

**Exhibit C:** Settlement Notice Form – Rule 23 Class Member Only;

**Exhibit D:** Settlement Notice Form – Hybrid FLSA and Rule 23.

3. The parties participated in two settlement conferences with Magistrate Judge Donna M. Ryu. After the second settlement conference, Judge Ryu made a mediator's proposal, which the Parties accepted. The Parties then negotiated a Memorandum of Understanding based on the mediator's proposal, and then negotiated the long-form Settlement Agreement.

4. The Parties conducted substantial discovery in this case. Plaintiffs responded to Defendant's written requests for production of documents for 31 Opt-in Plaintiffs (including producing hundreds of pages of documents), requests for admission for 12 Opt-in Plaintiffs, and interrogatories for the Named Plaintiff. Defendant responded to Plaintiff's written discovery requests, and produced more than one million pages of documents. Defendant produced policy documents, template documents, class member travel data, compensation records, personnel files, and complete email archives for a sample group of ten Opt-in Plaintiffs, among other things. Defendant deposed 7 Opt-in Plaintiffs and the Named Plaintiff. Plaintiff deposed two individuals designated as Rule 30(b)(6) corporate representatives and a senior manager.

## Damages and Allocation Calculations

5. In consultation with Defendant's Counsel, Class Counsel calculated a reasonable allocation of the settlement amounts for all Class and Collective Members. This allocation was calculated using data obtained from Tyler in conjunction with information provide by Plaintiffs. The damages model uses dates of employment, by position, for all FLSA Opt-in Plaintiffs and California Rule 23 Class Members from Defendant's records. The damages model uses

1  Defendant's travel records for the California Rule 23 Class Members who were not California
2  residents, but instead traveled to California during their work. For those individuals, damages
3  were calculated for weekdays in California, exclusive of the date of travel to California. For
4  example, if someone flew to California on Monday and left on Friday, her damages were
5  calculated for Tuesday through Friday. The damages model uses Defendant's individual payroll
6  records for Settlement Class Members. The damages model assumes that all ICs worked ten hours
7  per day (or 50 hours per week) prior to March 12, 2020, when the global COVID-19 pandemic
8  effectively ended travel for ICs, and nine hours per day (or 45 hours per week) thereafter.

9      6.    Class Counsel calculates that, if Plaintiffs prevailed on all of their claims, the
10 maximum recovery would be $7,653,620.09. This maximum amount, however, assumes complete
11 success on a number of disputed issues, and does not reflect the risk associated with these claims.
12 When applying reasonable reductions for the likelihood of success on different components of the
13 claims, Class Counsel calculates that a realistic value of the claims here is $2,940,736.01. This
14 value is determined by assuming that Plaintiffs have a 60% chance of success on 1) FLSA
15 liability; 2) establishing a willful violation and therefore a three-year statute of limitations under
16 the FLSA; 3) defeating Defendant's good faith defense and obtaining liquidated damages under
17 the FLSA; 4) maintaining class certification and obtaining class-wide liability on the California
18 claims; 5) obtaining wage statement and waiting time penalties for California residents; and 6)
19 obtaining waiting time penalties for the non-California residents. Additionally, that value assigns
20 a 60% chance of success for Opt-in Plaintiffs as to time worked either a) outside of the ERP
21 division or b) as a senior IC. While those claims were the subject of Defendant's motion to
22 decertify, they were part of the case at the time the settlement was reached (and are part of the
23 case now); assuming the Court would have decertified those claims, those individuals intended to
24 re-file their claims in separate actions. However, bringing new cases entails additional work and
25 delay, and those claims face different challenges. As such, it is appropriate to include these claims
26 within this settlement, and to discount them accordingly.

27     7.    There are a range of possible outcomes in a case such as this. If Plaintiffs prevailed
28 and recovered their unpaid overtime wages under state and federal law – defeating Tyler's

exemption defense, maintaining class certification, and establishing the hours worked explained above, but not without liquidated damages or wage statement or waiting time penalties – Class Counsel calculates the total wage loss as $3,857,415.50. If Plaintiffs were not able to establish ten hours of overtime per week, the damages could be significantly lower. For example, if Plaintiffs prevailed, but only established five hours of overtime per week (or nine hours worked per day) for the entire time period, the total wage loss amounts to $1,979,880.58.

8. The allocation is based on the realistic value of the claims described in paragraph 6 above ($2,940,736.01). The settlement was then allocated pro rata (after deductions for requested attorneys' fees and costs and service awards, and setting aside a $20,000 contingency fund to address any discrepancies that arise during the notice process) based on each individual's claim. Additionally, the allocation assumes a $200 minimum allocation (this applies to members of the California Rule 23 Class who only traveled to California for a small number of days within the statutory period).

9. Based on this allocation formula, Individual Settlement Amounts average $7,844.07, and range from $200 (for 35 individuals who are only receiving payment for a limited number of days in California) up to $61,442.50. The settlement covers 295 individuals. Of those, 75 would receive $200 - $1,000, 151 individuals would receive $1,000 - $10,000, and 69 individuals will receive over $10,000. The allocation is reflected in Exhibit A to the Parties' settlement agreement.

10. The individuals receiving less than $1,000 are all California Rule 23 Class Members who were not California residents, but instead traveled to California to perform work. According to Tyler's travel records, these individuals worked an average of 9.67 days in California.

### The Plaintiff's and Class Counsel's Work on the Case

11. Plaintiffs' counsel handled this case on a contingency basis. Plaintiffs' Counsel did not receive any payment for their time spent litigating the case, nor did they receive reimbursement for their out of pocket costs during the litigation. Plaintiffs' Counsel alone undertook the financial risk of unsuccessful litigation. Plaintiffs' Counsel's private agreements

with their clients (the Opt-in Plaintiffs) provide for reimbursements of litigation costs in addition to payment of attorneys' fees.

12. To date, Plaintiffs' Counsel has already incurred $15,221.94 in unreimbursed costs during this litigation, which it advanced on behalf of Plaintiffs. Plaintiffs' Counsel's private agreements with their clients (the Opt-in Plaintiffs) provide for reimbursements of litigation costs in addition to payment of attorneys' fees. Counsel will likely incur additional costs finalizing and implementing the settlement and obtaining approval. Counsel will provide a detailed explanation of costs in conjunction with the motion for attorneys' fees.

13. The Named Plaintiff, Aaron Kudatsky, brought this action on behalf of a group of workers so that all of Tyler's ERP ICs could benefit. He was actively involved in the litigation from its inception. He met with counsel in-person to discuss the case, then reviewed and provided written comments on the initial complaint. He responded to written discovery requests Defendant propounded, sat for a full day deposition, and attended two settlement conferences. Additionally, Mr. Kudatsky remained responsive throughout the litigation and provided assistance and answers to questions when needed.

### **Northern District's Procedural Guidance**

14. The Northern District of California's Procedural Guidance for Class Action Settlements sets forth multiple factors for consideration in approving class settlements. Those factors are addressed below:

    a. <u>Information about the settlement</u> – the scope of the settlement class is the same as the scope of the class that was certified during litigation. The settlement release is limited to the claims that are currently part of the case. The anticipated recovery through the settlement and proposed allocation were addressed above. The settlement does not require a claim form for class members (although FLSA Opt-in Plaintiffs will sign individual FLSA release forms). No money that is allocated to the Class Members can revert to Defendant; if an FLSA Opt-in Plaintiff fails to respond to their settlement notice, Defendant will not be required to pay her or his allocation and any associated attorneys' fees, but that individual would not release FLSA claims.

    b. <u>Settlement administration</u> – the Parties and their counsel are jointly

responsible for administering the settlement. Class Counsel is responsible for distributing settlement notice by mail and email, and following up with class members and Opt-in Plaintiffs regarding notice. Defendant will issue settlement checks and tax reporting information, to be delivered to Class Counsel and then mailed to all individuals covered by the settlement. Administering the settlement in-house saves money that would otherwise go to a third-party administrator.

      c. Notice – The proposed notices here contain the recommended language, and will be distributed by mail and email.

      d. Opt-outs – The settlement reflects recommended procedure for class members to opt-out.

      e. Objections – The settlement reflects recommended procedure and language for class members to object.

      f. Attorneys' Fees – Class Counsel intends to seek fees as a portion of the total settlement amount, measured as 25% of the common fund, the Ninth Circuit's benchmark percentage. Plaintiff's motion explains why this percentage is preliminarily reasonable in this case.

      g. Incentive Awards – Plaintiff and Class Counsel are mindful of this Court's views on incentive awards, and will submit evidence and argument in support of the requested awards in conjunction with the upcoming motion for attorneys' fees and costs. Plaintiff and Class Counsel intend to request a service award of $5,000 for the Named Plaintiff, and awards of $500 for each of seven Opt-in Plaintiffs who was deposed in this action. These awards are small compared to the total value (0.27% of the total) and to the average individual award ($7,844.07). As explained in Plaintiff's motion, these awards are justified by the deponents' and the Named Plaintiff's contributions to this case, and will not dilute the amount available for Class Members.

      h. *Cy pres* awardees – The Settlement designates Legal Aid at Work as a *cy pres* beneficiary if there are funds remaining from uncashed checks or from FLSA Opt-in Plaintiffs rejecting the settlement.

      i. Timeline – Notice will be distributed within 7 days of preliminary

approval. California Rule 23 Class Members will have 45 days to respond to notice. Plaintiff will file a motion for attorneys' fees and costs within 30 days of mailing notice, and file a motion for final approval within 60 days of mailing notice. Defendant will deliver settlement checks within 30 days of final approval, and Class Counsel will mail those checks within 7 days of receipt.

    j. <u>Class Action Fairness Act</u> – Defendant will mail CAFA notices within ten days of this filing.

    k. <u>Past Distributions</u> – Class Counsel directs the Court to the case of *Bisaccia v. Revel Systems*, a class and collective action settlement that was approved by Judge Gilliam in 2019, in which I represented the Plaintiffs and the Class. No. 17-CV-02533-HSG, 2019 WL 3220275 (N.D. Cal. July 17, 2019).

|  | *Revel* | *Tyler* |
|---|---|---|
| Case overview | Misclassification-based claim for overtime for inside sales representatives, asserting FLSA and California claims. | Misclassification-based claim for overtime for implementation consultants, asserting FLSA and California claims. |
| Value and group size | Total settlement of $2,750,000 covering approximately 258 individuals. | Total settlement of $3,150,000 covering 295 individuals. |
| Notable similarities | Included a California Travel Class of individuals who did not reside in California but traveled to California to perform work. | Includes, within the California Class, individuals who did not reside in California but traveled to California to perform work. |
| Litigation posture | Discovery started, no class certification motion, no summary judgment motions. | Discovery complete, class certification granted in part, cross-motions for summary judgment filed. |
| Average recovery | "The parties have estimated that the recovery of each individual member will range from $250.71 to $56,496.54. … The average settlement payment, after deducting the requested attorneys' fees, costs, and incentive awards, is approximately $7,818.58. . . . This factor therefore weighs in | Individual recoveries, after deducting for fees, costs, and service awards, will range from $200 to $61,442.50, and will average $7,844.07. |

| | | |
|---|---|---|
| | favor of approval." *Bisaccia*, 2019 WL 3220275, at *5. | |

l. <u>Electronic Versions</u> – In addition to the proposed order, I will submit electronic versions of the three proposed notices in conjunction with this filing.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Date: April 19, 2021                                                      s/ *Daniel S. Brome*
                                                                           Daniel S. Brome

DECLARATION OF DANIEL S. BROME                    8                    3:19-cv-07647-WHA