UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AARON KUDATSKY, on behalf of himself, and on behalf of those similarly-situated,<br><br>　　　　　Plaintiffs,<br><br>　v.<br><br>TYLER TECHNOLOGIES,<br><br>　　　　　Defendant. | No.  C 19-07647 WHA<br><br>**ORDER RE PRELIMINARY SETTLEMENT APPROVAL** |

## INTRODUCTION

In this class action under the Federal Labor Standards Act and California wage and hour law, parties seek preliminary approval of a class and collective action settlement worth $3.15 million, to benefit a total of 295 individual employees. The suit concerns overtime and other compensation related to employees' purported misclassification as exempt from overtime and itemized wage statement requirements. Because the proposal would award adequate relief, preliminary approval is **GRANTED**.

## STATEMENT

A prior order summarized the facts of this case (Dkt. No. 98).

In brief, defendant Tyler Technologies sells business and public sector operations software. Tyler utilizes Enterprise Resource Planning (ERP) Implementation Consultants

(ICs) to customize software and train clients to use its products.  The ERP division's "flagship" product, Munis, offers finance, payroll, utility billing, tax billing, and community development services.  The division also sells other products.  Tyler employs a team, including ICs, "senior ICs," and "project managers" to customize the software and train clients to use it.  ICs and senior ICs in this putative class largely implemented Munis, not other Tyler products.  Senior ICs' responsibilities differed substantially from those of standard ICs (Webster Dep. at 68–69).

Plaintiff Aaron Kudatsky worked for Tyler as an IC from July 2016 to March 2019.  He worked in California often, and while there, frequently worked more than eight hours per day.  He contends that Tyler considered him exempt and therefore did not pay overtime.

In May 2020, parties stipulated to a conditional class of 60 opt-in FLSA plaintiffs.  In November 2020, plaintiff moved for class certification on the California law claims and a February 2021 order herein certified a class of Munis ERP ICs (excluding senior ICs).  The class was certified on the sole issue for trial of whether, or not, Tyler appropriately classified ERP ICs as exempt from overtime and other California labor laws.  *See* 29 U.S.C. § 201, *et seq.*; Cal. Lab. Code §§ 510, 1194, and 1198, and IWC Wage Order(s); and Cal. Lab. Code §§ 201–203.  The class certification order held (Dkt. No. 39; 98):

> For now, certification applies solely to this issue:  whether Tyler properly classified ERP ICs as administratively exempt from overtime and other California labor laws (or not).  We will revisit possible certification of the other claims after we hold a trial on the certified issue.  At that point, the Court will be better-informed to process the multitudinous and bone-crushing details of how plaintiff might establish class-wide overtime liability

The parties resumed settlement discussions before Magistrate Judge Donna M. Ryu.  Plaintiff moved for summary judgment almost simultaneously with Tyler, which moved for partial summary judgment and decertification of the FLSA class.  No responses have been filed. Following three mediation sessions in March and April the parties now present their proposed settlement for preliminary approval.  Both sides have withdrawn their motions for summary judgment and Tyler has withdrawn its decertification motion.  Parties have requested, and received, a stay of pre-trial and trial dates (Dkt. Nos. 120, 121, 122).

2

Parties agreed on a total settlement of $3.15 million. The proposed settlement uses the "damages model" and relies on Tyler's payroll records to calculate the claims' maximum value at $7,653,620.09. It assumed that all ICs worked ten hours per day prior to March 12, 2020, and nine hours per day thereafter. This change accounts for travel restrictions and reduced work due to the pandemic. Class Counsel estimates the total wage loss at $3,857,415.50. The settlement amount, however, is based on Class Counsel's estimate of the "realistic" value of the claims, $2,940,736.01.

The settlement would allocate the $2.9 million on a *pro-rata* basis after deducting administrative costs of up to $20,000 and attorneys' fees of 25%. Therefore, the settlement would distribute $2,342,500 among 295 individuals. Individual settlement payments would average $7,844.07 and range from $200 (for 35 individuals who worked an average of ten days in California during the class period), to $61,442.50. Moreover, 151 individuals would receive between $1,000 and $10,000; 69 would receive over $10,000 (Dkt. No. 123 at 13, quoting Brome Decl. ¶ 9).

All in all, this rates as an estimated 41 to 80% of the value of class claims, Class Counsel estimated. Class Counsel arrived at the $2.9 million figure by assuming a "60% chance of success on FLSA liability, FLSA third-year claims; FLSA liquidated damages; California class liability; California penalty claims; and FLSA Opt-ins Plaintiffs' claims while working as senior ICs or outside the ERP division" and adding the resulting products (*ibid*., quoting Brome Decl. ¶¶ 5, 6). Class Counsel also assumes a 60% likelihood of success on the task of establishing that Tyler willfully violated, and therefore a three-year statute of limitations; a favorable finding there would entitle the class to redress for a third year (*ibid*. at 15). Finally, the same 60% chance factors into the likelihood of defeating Tyler's good faith defense, which would entitle a district court to reduce or eliminate liquidated damages.

This order follows briefing, a hearing, telephonic due to COVID-19, and supplemental briefing.

## ANALYSIS

"The class action device, while capable of the fair and efficient adjudication of a large number of claims, is also susceptible to abuse and carries with it certain inherent structural risks." *Officers for Just. v. Civ. Serv. Comm'n of City & Cty. of San Francisco*, 688 F.2d 615, 623 (9th Cir. 1982). A settlement purporting to bind absent class members must be fair, reasonable, and adequate. *See* FRCP 23(e). A district court may consider and weigh a variety of factors as the particular facts of the case demand, including: the amount offered in settlement; the strength of plaintiff's case; the stage of the proceedings; the expense and complexity of further litigation; and other relevant considerations. Above all, the "primary concern" must be the "protection of those class members . . . whose rights may not have been given due regard by the negotiating parties." *Officers for Just.*, 688 F.2d at 624–25.

This proposed settlement measures up.

*First*, the total settlement figure, $3.15 million, with $2.9 million going to the class of 295, appears adequate.

*Second,* the settlement agreement does not reclassify employees. While not required, reclassification would be an important remedy not captured by the common fund. Parties address this problem by explicitly *not* releasing any claims that accrued after April 19, 2021.

*Third*, attorney's fees are slated for 27%, despite a 25% benchmark in our circuit. *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1029 (9th Cir. 1998), *overruled on other grounds by Wal-Mart v. Dukes*, 564 U.S. 338 (2011). This must be warranted if, in fact, the settlement represents 40 to 80% of the realistic value of the claims as Class Counsel estimates (after accounting for administration costs and fees). Since attorneys earn extraordinary fees by accomplishing extraordinary work for a class, a 27% return for 40 to 80% of claim value might be fair (Dkt. No. 123 at 7). *See Monplaisir v. Integrated Tech Grp., LLC*, No. C 19-01484 WHA, 2020 WL 8642155, at *2 (N.D. Cal. Nov. 7, 2020).

*Fourth*, the agreement contemplates extra advantages for named plaintiff and deponents. Under the agreement, plaintiffs can request a $5,000 "enhancement award" to named plaintiff, to be paid out of the settlement award *and* $500 to each plaintiff who was deposed. These are red flags.

4

*Sixth*, the proposal suggests serious, non-collusive negotiation. Parties conducted eleven depositions and defendant produced over one million pages of discovery, which gave both sides the chance to evaluate the strength of plaintiffs' case. The proposed scope of waiver is adequately narrow. It would not, for example, waive claims accruing after April 19, 2021.

*Seventh*, this case remains reasonably complex, since only some of the claims (for only some class members) were certified for class resolution in plaintiffs' first attempt at class certification.

*Eighth*, notice to the class must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Central Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950) (citations omitted). The parties' proposed notice and form of notice appear adequate: three forms of notice (one for FLSA class members, one for California members, and one for a "hybrid class" of those with both claims) would be distributed via email and via mail to borrowers. To be clear, Class Counsel must send notice by *first-class mail*, which is not currently specified. If mail is returned undeliverable, Class Counsel will perform a "skip trace" to identify forwarding address(es). The exterior of the envelope for the mailing notice shall state "Important Class Action Notice" and shall state that it is "From the United States District Court, Northern District of California, Honorable William Alsup, 450 Golden Gate Avenue, San Francisco, CA 94102," with the return address directing service to Class Counsel. (Please note that the absence of middle initial.)

Parties revised the notices, at the Court's direction, to indicate that no claims post-dating April 19, 2021, will be waived and that the company is not agreeing to reclassify the IC role. Upon revision, notice satisfies our court of appeals' standards.

On balance, the factors listed above weigh in favor of the settlement. The Court will only retain jurisdiction, however, for a period of six-months following entry of judgment (Dkt. No. 128-1 at 20).

**CONCLUSION**

The proposed settlement adequate at this stage, preliminary approval is **GRANTED** subject to final approval.  In the interim:

1. Class counsel will send the approved class notice via email (for class members whose email address are known) and via first-class mail (for all) to the class by **AUGUST 10, 2021.** Both Tyler and Class Counsel shall also post such notice to their websites by this date.

2. Class members' objections to the proposed settlement shall be due **SEPTEMBER 23, 2021.**

3. The parties' replies to the objections shall be due **OCTOBER 7, 2021.**

4. The parties shall move for final approval by **OCTOBER 19, 2021.**

**5.** The parties' declarations attesting to the provision of class service is due **NOVEMBER 1, 2021.**

6. The final approval fairness hearing shall take place at **8:00 A.M.** on **NOVEMBER 4, 2021**.

**IT IS SO ORDERED.**

Dated: July 26, 2021.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE