Matthew C. Helland, CA State Bar No. 250451
helland@nka.com
Daniel S. Brome, CA State Bar No. 278915
dbrome@nka.com
NICHOLS KASTER, LLP
235 Montgomery St., Suite 810
San Francisco, CA 94104
Telephone: (415) 277-7235
Facsimile: (415) 277-7238

Rachhana T. Srey, MN State Bar No. 340133*
srey@nka.com
NICHOLS KASTER, PLLP
4700 IDS Center
80 South 8th Street
Minneapolis, MN 55402
Telephone: (612) 256-3200
Facsimile: (612) 338-4878
*Admitted pro hac vice

Benjamin L. Davis, MD Bar No. 29774*
bdavis@nicholllaw.com
The Law Offices of Peter T. Nicholl
36 Charles Street, Suite 1700
Baltimore, MD 21201
*Pro hac vice application forthcoming

Attorneys for Plaintiff and those similarly situated

# IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Aaron Kudatsky, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>Tyler Technologies,<br><br>Defendant. | Case No. 3:19-CV-07647-WHA<br><br>**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR ATTORNEYS' FEES AND COSTS**<br><br>**Date: November 4, 2021, 8:00 a.m.**<br>**Courtroom: 12 – 19th Floor**<br><br>**Judge: Hon. William Alsup** |

# **TABLE OF CONTENTS**

NOTICE OF MOTION AND MOTION FOR ATTORNEYS' FEES AND COSTS, AND
SERVICE PAYMENTS ................................................................................................. v

MEMORANDUM OF POINTS AND AUTHORITIES ............................................... 1

I.     INTRODUCTION ................................................................................. 1

II.    RELEVANT PROCEDURAL HISTORY............................................................ 2

III.    THE COURT SHOULD APPROVE THE REQUESTED ATTORNEYS' FEES AND
COSTS ....................................................................................................... 3

A.   The Court should award attorneys' fees from the common fund..................................... 4

B.   The Court should approve the request of 25% in attorneys' fees ................................... 6

    i.    Result obtained.................................................................................. 7

    ii.   Quality of counsel ............................................................................. 10

    iii.  Complexity of the issues ................................................................ 10

    iv.  Risk of Nonpayment ..................................................................... 11

    v.   Reaction of the Class........................................................................ 12

    vi.  Lodestar Cross-Check ................................................................... 12

C.   The Court should approve the request of $20,000 in litigation costs........................... 16

IV.    THE COURT SHOULD APPROVE THE REQUESTED SERVICE PAYMENTS.... 17

V.    CONCLUSION ................................................................................................ 19

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Aguilar v. Wawona Frozen Foods*, 2017 WL 2214936, (E.D. Cal. May 19, 2017) ...... 8, 11, 12, 15

*Alvarez v. Farmers Ins. Exch.*, 2017 WL 2214585 (N.D. Cal. Jan. 18, 2017)............................ 7, 9

*Barbosa v. Cargill Meat Solutions Corp.*, 297 F.R.D. 431 (E.D. Cal. 2013) ........................ passim

*Batiz v. American Commercial Sec. Services*, 2010 WL 11556683 (C.D. Cal. May 11, 2010) .... 19

*Bautista v. Harvest Management Sub LLC*, 2014 WL 12579822 (C.D. Cal. Jul. 14, 2014) ..... 9, 11

*Behrens v. Wometco Enters., Inc.*, 118 F.R.D. 534 (S.D. Fla. 1988)............................................ 15

*Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245 (N.D. Cal. 2015).................................. 7, 16

*Bisaccia v. Revel Sys. Inc.*, 2019 WL 3220275 (N.D. Cal. July 17, 2019) ................................... 14

*Blum v. Stenson*, 465 U.S. 886 (1984) .......................................................................................... 4

*Boeing Co. v. Van Gemert*, 444 U.S. 472 (1980)........................................................................... 4

*Bower v. Cycle Gear, Inc.*, 2016 WL 4439875 (N.D. Cal. Aug. 23, 2016).............................. 7, 16

*Boyd v. Bank of America,* 2014 WL 6473804 (C.D. Cal. Nov. 18, 2014).................................... 18

*Burden v. SelectQuote Ins. Services*, 2013 WL 3988771 (N.D. Cal. Aug. 2, 2013)...................... 6

*Carter v. XPO Logistics, Inc.*, 2019 WL 5295125 (N.D. Cal. Oct. 18, 2019).............................. 18

*Ching v. Siemens Industry, Inc.*, 2014 WL 2926210 (N.D. Cal. June 27, 2014) ....................... 7, 9

*Craft v. Cty. of San Bernardino*, 624 F. Supp. 2d 1113 (C.D. Cal. 2008) .................................... 15

*Deluca v. Farmers Ins. Exch.*, 2020 WL 5071700 (N.D. Cal. Aug. 24, 2020)........................ 8, 19

*Di Giacomo v. Plains All Am. Pipeline*, 2001 WL 34633373 (S.D. Fla. Dec. 19, 2001) ............. 15

*Dixon v. Cushman & Wakefield Western, Inc.*, 2021 WL 3861465 (N.D. Cal. Aug. 30, 2021)...... 8

*Franco v. E-3 Sys.*, 2021 WL 2333851 (N.D. Cal. June 8, 2021) ................................................. 17

*Franco v. Ruiz Food Products, Inc.*, 2012 WL 5941801 (E.D. Cal. Nov. 27, 2012) ................... 13

*Fronda v. Staffmark Holdings, Inc.*, 2018 WL 2463101 (N.D. Cal. June 1, 2018) ........................ 6

*Galeener v. Source Refrigeration & HVAC, Inc.*, 2015 WL 12977077
   (N.D. Cal. Aug. 21, 2015)........................................................................................................ 18

*Gee v. Suntrust Mortg., Inc.*, 2011 WL 5597124 (C.D. Cal. Nov. 15, 2011) ............................... 19

*Graham v. Daimler Chrysler Corp.*, 34 Cal. 4th 553 (2004) .......................................................... 11

*Hefler v. Wells Fargo & Co.*, 2018 WL 6619983 (N.D. Cal. Dec. 18, 2018) .............................. 14

*Hightower v. JPMorgan Chase Bank, N.A.*, 2015 WL 9664959 (C.D. Cal. Aug. 4, 2015) .... 13, 19

*Hoffmann-Laroche Inc. v. Sperling*, 493 U.S. 165 (1989) ........................................................... 19

*In re Pep Boys Overtime Actions*, 2008 WL 11343369 (C.D. Cal. Nov. 12, 2008) ..................... 18

*In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294 (3d Cir. 2005) ...................................................... 12

*In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prod. Liab. Litig.*, No. 2672 CRB
 (JSC), 2017 WL 1047834 (N.D. Cal. Mar. 17, 2017) ............................................................... 14

*In re Walgreen Co. Wage & Hour Litigation*, 2014 WL 12853547 (C.D. Cal. Oct. 3, 2014) ....... 13

*Kakani v. Oracle Corp.*, No. 06-CV-06493-WHA, 2007 WL 1793774
 (N.D. Cal. June 19, 2007) ............................................................................................................ 9

*Knight v. Red Door Salons, Inc.*, 2009 WL 248367 (N.D. Cal. Feb. 2, 2009) ............................... 6

*Laffitte v. Robert Half Int'l Inc.*, 1 Cal. 5th 480 (2016) ........................................................... 4, 12

*Lazarin v. Pro Unlimited, Inc.*, 2013 WL 3541217 (N.D. Cal. July 11, 2013) ............................. 16

*Lealao v. Beneficial California, Inc.*, 82 Cal. App. 4th 19 (2000) ................................................ 12

*Lusby v. GameStop, Inc.*, 2015 WL 1501095 (N.D. Cal. Mar. 31, 2015) ...................................... 6

*Monplaisir v. Integrated Tech Grp., LLC*, No. 19-CV-01484 WHA, 2020 WL 8642155
 (N.D. Cal. Nov. 7, 2020) .............................................................................................................. 9

*Nelson v. Avon Prod., Inc.*, 2017 WL 733145 (N.D. Cal. Feb. 24, 2017) ............................. passim

*Noroma v. Home Point Financial Corp.*, 2019 WL 5788658 (N.D. Cal. Nov. 6, 2019) .............. 18

*Pointer v. Bank of Am., N.A.*, 2016 WL 7404759 (E.D. Cal. Dec. 21, 2016) .......................... 9, 11

*Powers v. Eichen*, 229 F.3d 1249 (9th Cir. 2000) .......................................................................... 6

*Rabin v. PricewaterhouseCoopers LLP*, 2021 WL 837626 (N.D. Cal. Feb. 4, 2021) .................. 19

*Roberts v. Texaco*, 979 F.Supp. 185 (S.D.N.Y.1997) ................................................................... 15

*Rodriguez v. West Publishing Corp.*, 563 F.3d 948 (9th Cir. 2009) ............................................ 17

*Roe v. Jose Torres L.D. Latin Club Bar, Inc.*, 2020 WL 5074392 (N.D. Cal. Aug. 27, 2020) ....... 8

*Ross v. Bar None Enterprises, Inc.*, 2015 WL 1046117 (E.D. Cal. Mar. 10, 2015) ..................... 10

*Staton v. Boeing Co.*, 327 F.3d 938 (9th Cir. 2003)...................................................... 4, 6

*Stonehocker v. Kindred Healthcare Operating LLC*, 2021 WL 1643226

   (N.D. Cal. Apr. 27, 2021) ..................................................................................... 12, 15

*Swedish Hosp. Corp. v. Shalala*, 1 F.3d 1261 (D.C. Cir. 1993) .................................. 5, 6

*Taylor v. FedEx Freight, Inc.,* 2016 WL 6038949 (E.D. Cal. Oct. 13, 2016) ........................ 16, 18

*Torchia v. W.W. Grainger, Inc.*, 2014 WL 7399230 (E.D. Cal. 2014)......................................... 12

*Van Vranken v. Atlantic Richfield Co.*, 901 F. Supp. 294 (N.D. Cal. 1995)........................... 15, 16

*Vasquez v. Coast Valley Roofing, Inc.*, 266 F.R.D. 482 (E.D. Cal. 2010) ...................................... 4

*Vizcaino v. Microsoft Corp.*, 290 F.3d 1043 (9th Cir. 2002) ...................................... 4, 5

*Weiss v. Mercedez–Benz,* 899 F.Supp. 1297 (D.N.J.1995) *aff'd*, 66 F.3d 314 (3d Cir.1995) ....... 15

*Wilcox v. city of Reno*, 42 F.3d 550 (9th Cir. 1994)........................................................ 7

*Willner v. Manpower Inc.*, 2015 WL 3863625 (N.D. Cal. June 22, 2015) .................................... 6

**Treatises**

4 Newberg on Class Actions ................................................................................. 13, 15

Eisenberg & Miller, *Incentive Awards to Class Action Plaintiffs: An Empirical Study*, 53 UCLA

   L.Rev. 1303 (2006) ........................................................................................... 15

1

2

### NOTICE OF MOTION AND MOTION FOR ATTORNEYS' FEES AND COSTS, AND
### SERVICE PAYMENTS

3

4

5

     PLEASE TAKE NOTICE that on November 4, 2021 at 8:00 a.m., or as soon thereafter as the matter may be heard, in Courtroom B, 15th Floor, of the above-captioned Court, Plaintiffs will and hereby do move this Court for an order approving Plaintiffs' attorneys' fees and costs.

6

7

8

9

     Plaintiffs request that the Court approve fees of 25% ($787,500.00) of the total settlement amount ($3,150,000), as well as costs of $20,000.00. Plaintiffs also request a service payment of $5,000.00 to the named plaintiff, and a payment of $500 to each of the seven (7) Opt-in Plaintiffs who sat for a deposition.

10

11

12

     This motion is based upon the notice of motion and motion, the accompanying memorandum of points and authorities, all accompanying declarations and exhibits, and the papers, records, and pleadings on file in this action.

13

14

Dated: September 14, 2021         NICHOLS KASTER, LLP

15

16

17

                         By: s/ Daniel S. Brome
                         Daniel S. Brome
                         Attorneys for Plaintiff and those similarly situated

18

19

20

21

22

23

24

25

26

27

28

1

## MEMORANDUM OF POINTS AND AUTHORITIES

2

### I.      INTRODUCTION

3       This class and collective settlement provides a very substantial benefit to a group of
4   approximately 295 individuals—after deductions, the settlement will distribute over $7,800.00 on
5   average. The settlement compares favorably with the value of the claims: the gross settlement
6   amount represents 41% of the maximum value of the claims, and exceeds the realistic value as
7   calculated by Plaintiffs' Counsel; the net settlement amount (assuming deductions for attorneys'
8   fees and costs and enhancement awards) represents 30.5% of the maximum value, or 80% of the
9   realistic value of the claims. The Court granted preliminary settlement approval, finding that the
10   agreement appeared to be fair, reasonable and adequate. (ECF No. 130.) Plaintiffs now submit this
11   motion for attorneys' fees and costs and service awards, to be heard in conjunction with Plaintiffs'
12   motion for final settlement approval. Because of the results obtained and the complexity of the
13   case, Plaintiffs respectfully requests that the Court approve attorneys' fees at the Ninth Circuit
14   benchmark rate of 25% ($787,500.00), plus costs of $20,000.00.

15       The Court granted preliminary settlement approval in this case on July 26, 2021. (ECF No.
16   130.) Since then, Plaintiffs' Counsel distributed the court-approved notices of settlement to all
17   Fair Labor Standards Act ("FLSA") Opt-in Plaintiffs and Rule 23 Class Members. Objections
18   from Rule 23 Class Members, and responses from FLSA Opt-in Plaintiffs, are due by September
19   23, 2021. As of this filing, all but two FLSA Opt-in Plaintiffs have affirmatively signed their
20   release forms to participate in the settlement, no Rule 23 Class Members have filed objections,
21   and only two Rule 23 Class Members have requested exclusion. The final approval hearing is set
22   for November 4, 2021. In connection with final approval, Plaintiffs respectfully request the Court
23   approve payment of attorneys' fees and costs, and service awards.

24       The settlement calls for Defendant, Tyler Technologies, Inc. ("Tyler") to pay a total of
25   $3,150,000.00; Plaintiffs request that the Court award reasonable fees from the common fund at
26   25% ($787,500.00). Fees at the percentage are warranted based on the results obtained, the
27   complexity of the issues and skill of counsel, the risk of nonpayment, and a lodestar crosscheck.
28   The requested fees are lower than the percentage included in Plaintiffs' retainer agreements.

-1-

Further, the requested costs are reasonable and were incurred diligently litigating this case to benefit the group.

The Court should also approve the requested service awards. The Named Plaintiff, Aaron Kudatsky, spent significant time on this case, and was actively involved in all phases of litigation, from assisting with the initial drafting of the complaint, participating throughout discovery, and attending two settlement conferences. Moreover, Mr. Kudatsky's willingness to bring this class and collective action provided a very substantial benefit to the group; but for his willingness to come forward and bring this case, there would not have been any class-wide recovery. The Mr. Kudatsky accepted a substantial risk of reputational harm, as described in his accompanying declaration. Further, the $500.00 service award for the seven deponents is reasonable. That deposition testimony was necessary for the successful class certification motion, for the parties' summary judgment motions filed (but not argued or decided) at the time of settlement, and for preparing for and negotiating the settlement. Therefore, each FLSA Opt-in Plaintiff and Rule 23 class member benefited from the time and effort of these individuals—some of whom are current employees—preparing for and testifying in their depositions. The requested awards are appropriate considering their contributions.

## II.   RELEVANT PROCEDURAL HISTORY

As described in the preliminary approval motion, this case was filed roughly two years ago, and has been heavily litigated since, with contested motions and substantial discovery. (ECF No. 123 at 1–4.) Plaintiff Aaron Kudatsky filed this lawsuit on November 20, 2019 seeking unpaid overtime, alleging that Tyler misclassified implementation consultants ("ICs") as overtime exempt in violation of the FLSA and California law. (ECF No. 1, Compl.) Defendant denies that it misclassified Plaintiffs and other ICs as exempt, and denies that that it owes these employees unpaid overtime compensation or penalties. (ECF No. 17, Answer at ¶¶ 39–46.)

The Parties stipulated to conditional certification under the FLSA on May 13, 2020, and notice was distributed accordingly. (ECF No. 39.) On November 16, 2020, Plaintiff filed a motion for class certification (ECF No. 78), which the Court granted in large part on February 25, 2021. (ECF No. 98.)

The parties participated in a settlement conference with Judge Ryu on March 23, 2021, which did not result in a settlement. (ECF No. 103.) The parties returned to Judge Ryu on April 19, 2021 for continued negotiations. (ECF No. 106.) At the conclusion of the second settlement conference, Judge Ryu made a mediator's proposal (*see* ECF No. 113), which the Parties accepted the next day. (ECF No. 118.)

During the time between the settlement conference and the Parties' acceptance of the mediator's proposal, the Parties filed cross-motions for summary judgment (ECF Nos. 115, 116) and Defendant filed a motion for decertification (ECF No. 117.) Those motions were set to be heard on May 26, 2021, in conjunction with the pre-trial conference. The case was set for a bench trial beginning on June 1, 2021, on the misclassification issue.

Once the mediator's proposal was accepted, the Parties withdrew their dispositive motions (ECF Nos. 121, 122), and requested that the Court stay the trial and pretrial dates (ECF No. 120). The Court granted the Parties' request on April 27, 2021. (ECF No. 122.) The Parties negotiated and executed a Memorandum of Understanding, and a long-form settlement agreement that is the subject of this motion. The preliminary approval motion was filed on May 7, 2021. (ECF No. 123.) Following the preliminary approval hearing, the Parties agreed to minor modifications to the settlement agreement and the notice forms. (ECF No. 128.) The Court granted preliminary approval on July 26, 2021. (ECF No. 130.) The settlement covers 295 individuals: 34 with FLSA claims only, 234 with California claims only, and 27 with hybrid FLSA and California claims. (ECF No. 128–5.)

Plaintiffs' Counsel distributed the notices by first class mail and email (when available). (Brome Decl. ¶ 13.) Importantly, all of the Notices explicitly informed FLSA Opt-in Plaintiffs and Rule 23 class members about the amount of attorneys' fees and costs, and service payments requested. The deadline for Rule 23 Class Members to file objections is September 23, 2021; none have been received as of the filing of this motion. (*Id.*) All of the FLSA Opt-ins have returned their release forms. (*Id.*) Plaintiffs will update the Court on the response in conjunction with their Motion for Final Settlement Approval, which will be filed after the notice period is closed.

**III.   THE COURT SHOULD APPROVE THE REQUESTED ATTORNEYS'**

-3-

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**FEES AND COSTS**

**A.      The Court should award attorneys' fees from the common fund**

For well over a century, federal and state courts have recognized that when counsel's efforts result in the creation of a common fund that benefits plaintiffs and unnamed class members, counsel have an equitable right to be compensated from that fund as a whole for their successful efforts in creating it. *See Laffitte v. Robert Half Int'l Inc.*, 1 Cal. 5th 480, 503 (2016); *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980) (Supreme Court "has recognized consistently that a litigant or a lawyer who recovers a common fund . . . is entitled to a reasonable attorney's fee from the fund as a whole"); *Staton v. Boeing Co.*, 327 F.3d 938, 967 (9th Cir. 2003) (recognizing common fund doctrine).

In group litigation, many class members benefit from the ultimate settlement, but they may not have played a large role in the litigation that led to the payment. *Boeing*, 444 U.S. at 478. The common fund approach "thus spread[s] fees proportionately among those benefited by the suit." *Id*. Awarding a percentage of the total fund is routinely approved as a fair way to calculate a reasonable fee when contingency fee litigation has produced a common fund. *See, e.g., Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1050 (9th Cir. 2002) ("We conclude that the district court considered the relevant circumstances and did not abuse its discretion in finding a 28% fee award to be reasonable under the percentage method."); *Paul, Johnson, Alston & Hunt*, 886 F.2d at 272; *Blum v. Stenson*, 465 U.S. 886, 900, n.16 (1984).

Fees from a common fund are particularly appropriate where, as here, "each member of a certified class has an undisputed and mathematically ascertainable claim to part of a lump-sum judgment recovered on his behalf." *Staton*, 327 F.3d at 972 (quoting *Boeing*, 444 U.S. at 479); *accord Barbosa v. Cargill Meat Solutions Corp.*, 297 F.R.D. 431, 448 (E.D. Cal. 2013) ("Here, the Settlement Agreement applies a formula pursuant to which each Class Member will receive a mathematically ascertainable payment; application of the percentage of the common fund doctrine is appropriate."); *Vasquez v. Coast Valley Roofing, Inc.*, 266 F.R.D. 482, 491 (E.D. Cal. 2010) (where settlement agreement "applies distribution formulas pursuant to which each Class Member who submits a valid claim will receive a mathematically ascertainable payment, application of the

-4-

percentage of common fund doctrine appropriate"). Here, the Settlement allocation is based on Class Counsel's global damage calculation.[1] (Brome Decl. ¶ 4.) The total settlement value ($3,150,000) is greater than several plausible outcomes for in which Plaintiffs obtain partial success. Assuming the Court approves the requested fees, costs, and service awards, the settlement will distribute $2,342,500—30.5% of the maximum value of the claims. (Brome Decl. ¶ 5.) Of course, the maximum value is exactly that—the best possible outcome, assuming complete success on all claims, a finding of willfulness, awarding liquidated damages, and overtime based on all claimed hours, including for FLSA Opt-ins and Class Members who have not been deposed. There are many realistic outcomes where Plaintiffs could achieve partial success at trial, but come away with less than the settlement value.

The percentage of the fund method is also appropriate to spread fees in a manner that comports with the legal marketplace, where counsel's success is frequently measured in terms of the results counsel has achieved. *See Swedish Hosp. Corp. v. Shalala*, 1 F.3d 1261, 1269 (D.C. Cir. 1993) (in common fund cases "the monetary amount of the victory is often the true measure of [counsel's] success"); *Vizcaino*, 290 F.3d at 1047 (recognizing that "the size of the recovery constitutes a suitable measure of the attorneys' performance") (internal quotations omitted). By assessing the amount of the fee in terms of the amount of the benefit conferred on the class, the percentage method "more accurately reflects the economics of litigation practice" which, "given

---

[1] Class Counsel reviewed and analyzed earnings and hours worked data for Rule 23 Class Members and FLSA Opt-ins prior to mediation. With this data, Class Counsel was able to calculate potential damages in conjunction with the risk of loss to Class Members. The damages were calculated using individual payroll data, and uniform hours assumptions. Under these calculations, the maximum damages as calculated at the settlement conference were $7,653,620.09. This total value assumes complete success, including on: (1) defeating decertification as to the FLSA collective and California Class, (2) recovering damages based on Plaintiffs' maximum claimed overtime hours, (3) establishing liability under the FLSA and California law, (4) establishing a willful violation, and (5) recovering liquidated damages. Of course, given the number of variables, it would be possible for Plaintiffs to recover less than the maximum amount. By way of example, if Plaintiffs prevailed, on a two-year (non-willful) statute of limitations, without liquidated damages, but only established five hours of overtime per week (or nine hours worked per day) for the entire time period, the total wage loss amounts to $1,979,880.58 – well below the settlement amount here. When applying reasonable reductions for the likelihood of success on different components of the claims, Class Counsel calculates that a realistic value of the claims here is $2,940,736.01. (Brome Decl. ¶¶ 5, 6.)

the uncertainties and hazards of litigation, must necessarily be result-oriented." *Swedish Hosp. Corp.*, 1 F.3d at 1269 (internal quotation marks and citation omitted).

Further, when clients do not pay an ongoing hourly fee to their counsel, they typically negotiate an agreement in which counsel's fee is based upon a percentage of any recovery. The percentage of the fund approach mirrors this aspect of the market and, accordingly, reflects the fee that would have been negotiated by the class members in advance, had such negotiations been feasible given the prospective uncertainties and anticipated risks and burdens of the litigation. *See, e.g., Paul, Johnson, Alston & Hunt*, 886 F.2d at 271 ("[I]t is well settled that the lawyer who creates a common fund is allowed an extra reward, beyond that which he has arranged with his client, so that he might share the wealth of those upon whom he has conferred a benefit.").

Here, the common fund method is appropriate because Class Counsel has secured a settlement with a common fund of $3,150,000 which will be shared by approximately 295 individuals, and it is appropriate for attorneys' fees to likewise be shared among this group. The settlement agreement provides a mathematical distribution based on Class Counsel's calculations, awarding each member of the group an ascertainable amount, making a common fund fee award particularly appropriate. *Staton*, 327 F.3d at 972.

**B.      The Court should approve the request of 25% in attorneys' fees**

The Ninth Circuit's typical range of common fund attorneys' fee awards is 20% to 33 1/3% of the total settlement value, with 25% "considered the benchmark." *Powers v. Eichen*, 229 F.3d 1249, 1256 (9th Cir. 2000). However, in "most common fund cases, the award exceeds that benchmark." *Knight v. Red Door Salons, Inc.*, 2009 WL 248367, at *3 (N.D. Cal. Feb. 2, 2009); s*ee also Fronda v. Staffmark Holdings, Inc.*, 2018 WL 2463101, at *9 (N.D. Cal. June 1, 2018) (approving 1/3 of the settlement fund, or $1,866,666.67 in fees); *Willner v. Manpower Inc.*, 2015 WL 3863625, *7 (N.D. Cal. June 22, 2015) (awarding 30 percent of the common fund wage and hour settlement); *Burden v. SelectQuote Ins. Services*, 2013 WL 3988771, at **4–5 (N.D. Cal. Aug. 2, 2013) (awarding 33% of common fund in attorneys' fees in an overtime misclassification case); *Lusby v. GameStop, Inc.*, 2015 WL 1501095, at *4 (N.D. Cal. Mar. 31, 2015) (awarding 33 percent of a common fund wage and hour settlement); *Ching v. Siemens Industry, Inc.*, 2014 WL

-6-

2926210, *8 (N.D. Cal. June 27, 2014) (awarding 30 percent of the common fund wage and hour settlement); *Barbosa*, 297 F.R.D. at 450 (33% fee award; collecting list of attorneys' fees awards between 30% and 33.3%). The size of the common fund is relevant when determining the fee award; "[f]ee award percentages generally are higher in cases where the common fund is below $10 million." *Alvarez v. Farmers Ins. Exch.*, 2017 WL 2214585 (N.D. Cal. Jan. 18, 2017).

Awards departing from the benchmark must be supported by an adequate explanation of special circumstances in the record justifying departure. *Bower v. Cycle Gear, Inc.*, 2016 WL 4439875, at *6 (N.D. Cal. Aug. 23, 2016). Factors taken into consideration include the result obtained for plaintiffs, quality of representation, complexity of the issues, risk of nonpayment assumed by counsel, reaction of the class to the settlement, and lodestar comparison. *Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 260 (N.D. Cal. Mar. 20, 2015). Even though Plaintiffs do not seek attorneys' fees above the benchmark, these factors support the requested attorneys' fees.

### i.      Result obtained

The result obtained for the class is a primary consideration when evaluating awards of attorneys' fees. *Wilcox v. City of Reno*, 42 F.3d 550, 554 (9th Cir. 1994). Here, the gross settlement amount represents approximately 41% of the total damages; assuming the Court approves the requested fees, costs, and service payments, the settlement will distribute $2,334,000—30.5% of the maximum value of the claims, or 79% of the realistic value. (Brome Decl. ¶ 5.) Amounts average $7,844.07, and range from $200 (for 35 individuals who are only receiving payment for a small number of days in California) up to $61,442.50. (Brome Decl. ¶ 8.) The settlement covers 295 individuals. Of those, 75 would receive $200 to $1,000, 151 individuals would receive $1,000 to $10,000, and 69 individuals will receive over $10,000. (*Id.*)

Even after deducting the requested fees and costs, and service payments, FLSA Opt-in Plaintiffs and Rule 23 class members will receive substantial payments, representing 30.5% of their maximum damages as calculated by Class Counsel. (*Id.* ¶ 5.) The settlement payments are substantial and compensate FLSA Opt-in Plaintiffs and Rule 23 class members appropriately.

The settlement represents a significant monetary award for the group, which weighs

-7-

heavily in favor of approval of the requested "benchmark" 25% attorneys' fees award. Indeed, courts in this circuit regularly approve fee awards <u>above</u> the benchmark based on similar or lower recovery. *See Deluca v. Farmers Ins. Exch.*, 2020 WL 5071700, at *4 (N.D. Cal. Aug. 24, 2020) (approving fees of 30%, finding that a gross settlement amount worth 46.6% of estimated total recovery reached after summary judgment ruling for plaintiffs constituted "a very good result"); *Nelson v. Avon Prod., Inc.*, 2017 WL 733145, at **4-6 (N.D. Cal. Feb. 24, 2017) (approving fees of one-third of the total settlement in a wage and hour settlement, finding that gross settlement amount worth 12 to 24% of the alleged overtime damages was "a substantial benefit for the Class"); *Aguilar v. Wawona Frozen Foods*, 2017 WL 2214936, at *5 (E.D. Cal. May 19, 2017) (finding the value of the recovery worth between 47% and 75% of the total possible recovery was a very favorable result, "far greater" than the percentage recovered in other wage and hour cases, and supported fee award above the benchmark). In *Nelson*, the plaintiffs were former District Sales Managers who alleged their employer misclassified them as exempt from overtime. *Id.* at *2. The settlement covered 289 class members (*id.* at *5) with a total value of $1,800,000 (*id.* at *2); after deductions ($600,000 for attorneys' fees; $70,000 for costs; $10,000 for PAGA payment; and $100,000 in enhancement awards), the settlement would allocate $1,020,000 to the class members. *See id.* at *2-6. The case here covers almost the same number of workers, but will distribute more than twice as much money to class members. The *Nelson* settlement represented "more than 12 to 24 percent of the alleged overtime damages" <u>before</u> deductions. *Id.* at *4. Before deductions, the settlement value here represents 41% of the maximum value of all of Plaintiffs' claims. (Brome Decl. ¶ 6.) The monetary value of this settlement strongly supports the requested attorneys' fees.

Indeed, other recent wage and hour cases have approved settlements that distribute considerably lower percentages of the potential recovery. *Dixon v. Cushman & Wakefield Western, Inc.*, 2021 WL 3861465, at *14 (N.D. Cal. Aug. 30, 2021) (granting preliminary approval where maximum settlement value represented 8% of the maximum total exposure); *Roe v. Jose Torres L.D. Latin Club Bar, Inc.*, 2020 WL 5074392, at *6 (N.D. Cal. Aug. 27, 2020) (gross settlement amount representing 7.07% of maximum potential value provided "good value."). The total value of the settlement here, representing 41% of the maximum value of the claims, strongly supports

-8-

awarding fees at the benchmark percentage.

Fee awards ranging from 25-33% are routinely awarded in wage and hour cases by district courts across California. *See, e.g.*, *Alvarez*, 2017 WL 2214585, at *3 (approving 25% of a $4,900,000 settlement as reasonable fee award); *Pointer v. Bank of Am., N.A.*, 2016 WL 7404759, at *11, *18 (E.D. Cal. Dec. 21, 2016) (approving 25% attorneys' fees award for settlement with net settlement amount of $1,253,500 and average award of $1,000); *Bautista v. Harvest Management Sub LLC*, 2014 WL 12579822, at *12 (C.D. Cal. Jul. 14, 2014) ("In light of the substantial result achieved by Plaintiffs' Counsel for the Settlement Classes, the court finds that the requested fee award of 30% is fair and reasonable."); *Ching*, 2014 WL 2926210, at *7 (approving 30% attorneys' fees award for settlement with net settlement amount of $249,100 and average award of $2,672.56 per class member); *Barbosa*, 297 F.R.D. at 454 (approving 33% fee award for settlement with net settlement amount of $785,347.26 and average award of $601.91 for each timely class member).

Against this backdrop, awarding fees at the Ninth Circuit's benchmark rate is imminently reasonable. *C.f., Monplaisir v. Integrated Tech Grp., LLC*, No. 19-CV-01484 WHA, 2020 WL 8642155, at *2 (N.D. Cal. Nov. 7, 2020) (fee request that could be up to 45% of the gross payment was "an extraordinary fee"). More importantly, the settlement represents an excellent result for the class members. The value compares favorably to the value of the claims, and the dollar value is high, with an average post fees and costs payment of nearly $8,000.00 per person. (Brome Decl. ¶ 5.) Importantly, the fee request was explicitly stated as a percentage and dollar amount in the notices approved by this Court and provided to class members. The parties have not received an objection to Plaintiffs' Counsel's fees. The results obtained strongly support approval of the requested attorneys' fees.[2]

---

[2] Additionally, this is not a "claims made," or reversionary settlement. Each dollar that is allocated to be distributed to class members will end up either in class members' hands or in a *cy pres* fund. The fees are based on a percentage of actual payout, not some fictitious amount that will never actually reach class members. *See Kakani v. Oracle Corp.*, No. 06-CV-06493-WHA, 2007 WL 1793774, at *5–6 (N.D. Cal. June 19, 2007) (denying preliminary approval of reversionary, claims-made settlement, in which attorneys' fees were based on "the theoretical maximum payout rather than the actual benefit conferred.").

1

ii.     **Quality of counsel**

2          Class Counsel's experience in vigorously litigating class/collective wage and hour actions,

3   plus their experience with similar administrative exemption cases was essential in obtaining this

4   favorable result: Nichols Kaster represented special investigators for their overtime claims in

5   *Deluca v. Farmers Ins. Exch.*, a recent case from this district that similarly involved contested

6   class certification and cross-motions for summary judgment. Nichols Kaster also represented the

7   plaintiffs in *McKeen-Chaplin v. Provident Savings Bank*, a recent Ninth Circuit decision analyzing

8   the administrative exemption that was central to the summary judgment motions here. (Brome

9   Decl. ¶ 22.) Nichols Kaster's experience in this area contributed to the favorable outcome, and

10  supports approval of the requested fees. In addition, Plaintiffs and their counsel vigorously

11  litigated this case, participating in extensive discovery, and litigating multiple contested motions

12  before reaching the settlement. Counsel's experience and skill contributed to the case and support

13  approval of the requested fees and costs. *See Barbosa*, 297 F.R.D. at 449 ("Overall the specialized

14  skill of Plaintiffs' Counsel in this area of the law was generally an asset to the Class Members and

15  the quality of work performed was good. This factor cuts in favor of approving the fee request.").

16

iii.     **Complexity of the issues**

17          Courts consider "the novelty, difficulty and complexity of the issues involved" when

18  determining a fee award. *Ross v. Bar None Enterprises, Inc.*, 2015 WL 1046117, at *9 (E.D. Cal.

19  Mar. 10, 2015). This case involved overlapping issues of overtime exemptions under state and

20  federal law, and facts particular to the software industry. This case was not simple or easy, and

21  attorneys' fees should reflect the efforts and expertise required.

22          This case involved numerous contested issues. Procedurally, Defendant argued the case

23  was unsuitable for class and collective treatment because of highly individualized duties. (ECF

24  Nos. 85, 117.) On the substance of the claims, Plaintiffs asserted Defendant had misclassified all

25  ICs as exempt from overtime and had thereby failed to pay overtime wages, which Defendant

26  vigorously disputed. The parties filed cross-motions for summary judgment focused on the

27  exemption issue, which were pending when the Parties reached this settlement. (*See* ECF Nos.

28  115, 116.) The case also involved application of California law to workers who are not based in

-10-

1   the state but travel into California to perform services. Because the Parties' summary judgment
2   motions focused on the core issue of the applicability of the administrative exemption, a favorable
3   ruling on summary judgment would likely have left several important issues for trial, including the
4   determination of whether the violation was willful (and therefore the applicable statute of
5   limitations), the potential recovery of liquidated damages, and the number of unpaid overtime
6   hours worked. Further litigation would have been contentious, challenging, and slow; these facts
7   support approval of the requested fees.

8       "Employment law class actions are, by their nature, time-consuming and expensive to
9   litigate." *Aguilar*, 2017 WL 2214936, at *3. This case illustrates that point. To recover absent
10  settlement, Plaintiffs would have needed to prevail on their summary judgment motion, defeat
11  Defendant's decertification motion, and then prove their damages through trial, likely with
12  disputes about the use of representative sampling to determine liability and damages. If Plaintiffs
13  prevailed at trial, Defendant would likely appeal. The issues here are complex, so this factor
14  strongly supports approval of the requested attorneys' fees.

15                          **iv.      Risk of Nonpayment**

16       "Courts consistently recognize that the risk of non-payment or reimbursement of expenses
17  is a factor in determining the appropriateness of counsel's fee award." *Bautista*, 2014 WL
18  12579822, at *13. The contingent nature of the work performed also weighs in favor of
19  determining a higher percentage fee. *See Graham v. Daimler Chrysler Corp.*, 34 Cal. 4th 553, 580
20  (2004) ("A contingent fee must be higher than a fee for the same legal services paid as they are
21  performed. The contingent fee compensates the lawyer not only for the legal services he renders
22  but for the loan of those services.").

23       Class Counsel handled this case on a pure contingency basis: they have not received any
24  payment for the 984.2 hours spent litigating the case in the last two years, nor have they received
25  reimbursement for out-of-pocket costs. (Brome Decl. ¶¶ 11, 26–31.) Class Counsel alone bore the
26  financial risk of unsuccessful litigation. Class Counsel should be compensated for shouldering the
27  risk of nonpayment in this case. *See Pointer*, 2016 WL 7404759, at *15 ("[C]ourts have long
28  recognized the public policy of rewarding attorneys for accepting contingent representation in

-11-

appropriate cases."). This factor favors approval.

### v.     Reaction of the Class

No objections have been received thus far, and only two or requests for exclusion. (Brome Decl. ¶ 28.) All of the 61 Opt-ins have returned their forms. (*Id.*) This factor is best addressed following the distribution of the Notice, once the class members have had a full opportunity to review the settlement, but the initial response is strongly favorable, supporting approval. *See Stonehocker v. Kindred Healthcare Operating LLC*, 2021 WL 1643226, at *8 (N.D. Cal. Apr. 27, 2021) (describing a settlement with "only three opt-outs and no objections" as an "overwhelmingly positive" response).

### vi.     Lodestar Cross-Check

District courts awarding fees based on percentage of the fund method often cross-check the appropriateness of the amount by applying the lodestar method. *E.g.*, *Nelson*, 2017 WL 733145, at *6. A "lodestar cross-check calculation need entail neither mathematical precision nor bean-counting." *Torchia v. W.W. Grainger, Inc.*, 2014 WL 7399230, at *25 (E.D. Cal. 2014) (quoting *In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 306 (3d Cir. 2005)). Indeed, trial courts have the discretion to forego a lodestar cross-check and use other means to evaluate the reasonableness of a requested percentage fee. *Laffitte*, 1 Cal. 5th at 506; *see also Lealao v. Beneficial California, Inc.*, 82 Cal. App. 4th 19, 30 (2000). "Where a lodestar is merely being used as a cross-check, the court may use a rough calculation of the lodestar." *Aguilar*, 2017 WL 2214936, at *5 (quotations omitted). A lodestar crosscheck in this case confirms the reasonableness of a 25% attorneys' fees award.

Here, Class' Counsel's fees under the lodestar method are currently $323,385.00. This amount is represents 984.2 hours of billable work at hourly rates of $175 for paralegals and other support staff, $450 for an associate attorney, and $500 - $600 for partners. (Brome Decl. ¶¶ 15–25.)

Reasonable Hours

Class Counsel has worked 984.2 hours on litigating this matter.[3] (Brome Decl. ¶¶ 15–25.) Specifically, the hours reflect Class Counsel's work investigating the claims pre-suit; interviewing potential clients and Opt-in Plaintiffs; preparing discovery responses for Opt-in Plaintiffs; reviewing over one million pages of documents; preparing plaintiff documents to be produced; briefing and arguing a class certification motion and preparing Plaintiffs' motion for partial summary judgment; preparing for and taking depositions of Defendant's witnesses; defending Plaintiff depositions; calculating and revising a detailed damages model; conducting and preparing for two settlement conferences; negotiating the settlement terms; and briefing Plaintiffs' motion for preliminary approval. (*Id.* ¶ 15.)

These efforts amount to 512.3 hours of attorney time, and 471.9 hours of staff time. (*Id.* ¶¶ 17, 23.) Class Counsel relies on non-attorneys to perform crucial case work to promote efficient use of attorney time. Significantly, class action clerks spent about 280.7 hours on this case, performing essential work interviewing Plaintiffs and class members, obtaining documents, and gathering detailed information for Plaintiffs' damages analysis. (*Id.* ¶¶ 23–25.) If this work was not performed by staff, an attorney would have to do the same work, billed at a much higher rate.

These hours are reasonable in light of the complexity of this case. Wage and hour cases can entail significant discovery, motion practice, and damages analysis, leading courts to find that higher hours than requested here. *See In re Walgreen Co. Wage & Hour Litigation*, 2014 WL 12853547, at *10 (C.D. Cal. Oct. 3, 2014) (9,441 hours requested were reasonable where case had "been litigated for more than three years," included multiple motions and preparation for trial); *Hightower v. JPMorgan Chase Bank, N.A.*, 2015 WL 9664959, at *12 (C.D. Cal. Aug. 4, 2015) (6,636 hours reasonable where case was ongoing for more than four years, entailed considerable discovery and a motion for class certification). Even cases without substantial motion practice may reasonably require significant attorney time. *E.g.*, *Franco v. Ruiz Food Products, Inc.*, 2012 WL 5941801, at *19 (E.D. Cal. Nov. 27, 2012) (1,345.7 hours "reasonable in light of the legal issues and the amount of discovery conducted, the number of Defendant's employees included in the

---

[3] Class Counsel provides a description of these hours in the accompanying declaration and can provide a full report for *in camera* review if needed by the Court.

1    Settlement Classes, the mediation preparation required, and motion practice with respect to the

2    Settlement Agreement").

3        The hours expended here were necessary to effectively litigate this case, and are in line

4    with those approved in similar cases. The Court should find that Class Counsel's hours are

5    reasonable for purposes of a lodestar crosscheck. Additionally, Plaintiffs' Counsel expects that

6    securing final approval and distribution of the settlement will entail approximately 20 additional

7    hours of attorney work time and 20 hours of staff time. (Brome Decl. ¶ 16.) Because the total

8    hours expended and anticipated are well below those approved in similar cases, the Court should

9    find that Plaintiffs' Counsel's hours are reasonable, and use the total anticipated amount, 1,024.2

10   hours, for purposes of a lodestar crosscheck.

11       <u>Reasonable Rates</u>

12       Class Counsel's rates have recently been approved in this district and align with those

13   previously approved. The primary attorneys litigating this case at Nichols Kaster, LLP (Class

14   Counsel) are Rachhana T. Srey and Daniel Brome, both of whom have substantial wage and hour

15   experience. (Brome Decl. ¶¶ 17–23.) Class Counsel's time was billed at $575 per hour for partner

16   Rachhana T. Srey (admitted to the Minnesota bar in 2004), $450 for associate attorney Daniel

17   Brome (admitted to California bar in 2011), and $175 per hour for non-lawyer staff time. Time

18   from two other attorneys (Matthew Helland, $650 per hour, and Reena Desai at $500 per hour) is

19   also included in the total. (*Id.*)

20       In *Bisaccia v. Revel Sys. Inc.*, a FLSA and California class and collective overtime case in

21   which Class Counsel here was class counsel, Judge Gilliam conducted a lodestar crosscheck and

22   found that Class Counsel's 2019 rates of $175 for clerks and paralegals, $425 for senior associates,

23   and $625 to $675 for partners "was reasonable and in line with prevailing rates in this district for

24   personnel of comparable experience, skill, and reputation." 2019 WL 3220275, at *8 (N.D. Cal.

25   July 17, 2019) (citing *Hefler v. Wells Fargo & Co.*, 2018 WL 6619983, at *14 (N.D. Cal. Dec. 18,

26   2018) (rates from $650 to $1,250 for partners or senior counsel, $400 to $650 for associates); *In re*

27   *Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prod. Liab. Litig.*, No. 2672 CRB (JSC),

28   2017 WL 1047834, at *5 (N.D. Cal. Mar. 17, 2017) (billing rates ranging from $275 to $1600 for

-14-

partners, $150 to $790 for associates, and $80 to $490 for paralegals reasonable "given the complexities of this case and the extraordinary result achieved for the Class")). Attorney rates have increased slightly in the two years since Judge Gilliam's finding in *Bisaccia*, but are still reasonable in light of counsel's experience.

Notably, the rates here are particularly reasonable in light of Plaintiffs' Counsel's use of non-attorney staff to handle the case efficiently. In *Nelson*, plaintiffs' counsel spent 821 hours for a lodestar value of $459,037 (an average rate of $559/ hour). 2017 WL 733145, at *6. Here, Plaintiffs' Counsel expects to spend 1,024.2 hours for a lodestar value of $335,885.00, for an average rate of $328/hour. The overall rates are very reasonable.

Reasonable Multiplier

"Beyond simply the multiplication of a reasonable hourly rate by the number of hours worked, a lodestar multiplier is typically applied." *Aguilar*, 2017 WL 2214936, at *5. Courts apply lodestar multipliers to attorneys' fee awards to compensate attorneys for the risk of nonpayment associated with contingency cases. *Barbosa*, 296 F.R.D. at 453. Courts typically approve fee awards with lodestar multipliers between 1.9 and 5.1. *See* 4 Newberg on Class Actions § 14.7. Further, "[m]ultipliers in the 3–4 range are common in lodestar awards for lengthy and complex class action litigation." *Van Vranken v. Atlantic Richfield Co.*, 901 F. Supp. 294, 298 (N.D. Cal. 1995) (citing *Behrens v. Wometco Enters., Inc.*, 118 F.R.D. 534, 549 (S.D. Fla. 1988). Courts may approve higher multipliers in common fund cases. *See e.g. Craft v. Cty. of San Bernardino*, 624 F. Supp. 2d 1113, 1125 (C.D. Cal. 2008) (approving a multiplier of 5.2 and collecting cases); *Di Giacomo v. Plains All Am. Pipeline*, 2001 WL 34633373, at *10–11 (S.D. Fla. Dec. 19, 2001) (approving 30% fee, resulting in 5.3 multiplier); *Roberts v. Texaco,* 979 F.Supp. 185, 198 (S.D.N.Y.1997) (approving multiplier of 5.5); *Weiss v. Mercedez–Benz*, 899 F.Supp. 1297 (D.N.J.1995) (approving multiplier of 9.3), *aff'd,* 66 F.3d 314 (3d Cir.1995).

Awarding attorneys' fees at 25% would yield a modest lodestar multiplier (the requested fee award—$787,500—divided by the lodestar value—$335,885.00) of 2.34, based on the total anticipated hours. (*See* Brome Decl. ¶ 16.) This multiplier is in line with commonly accepted lodestar multipliers, and supports approval. *Stonehocker*, 2021 WL 1643226, at *8 (approving fees

-15-

1   at 25% benchmark with 2.04 lodestar multiplier); *Bisaccia*, 2019 WL 3220275, at *8 (holding that

2   a 2.23 lodestar multiplier "supports the reasonableness of the fee request" at the 25% benchmark

3   rate); *Taylor v. FedEx Freight, Inc.,* 2016 WL 6038949, at *7 (E.D. Cal. Oct. 13, 2016) (approving

4   $1,125,000 in fees—30% of settlement amount—in wage and hour case resulting in 2.26

5   multiplier); *Lazarin v. Pro Unlimited, Inc.*, 2013 WL 3541217, at *8 (N.D. Cal. July 11, 2013)

6   (approving 25% benchmark fees in overtime case resulting in a multiplier of 3.36); *Van Vranken*,

7   901 F. Supp. at 298 (multipliers in the 3–4 range are "common"). Because the multiplier is within

8   or below the accepted range, the lodestar crosscheck demonstrates that the Court should approve

9   Class Counsel's fee request of 25%.[4]

10              **C.      The Court should approve the request of $20,000 in litigation costs**

11             "There is no doubt that an attorney who has created a common fund for the benefit of the

12  class is entitled to reimbursement of reasonable litigation expenses from that fund. To that end,

13  courts throughout the Ninth Circuit regularly award litigation costs and expenses—including

14  reasonable travel expenses—in wage-and-hour class actions." *Bellinghausen*, 306 F.R.D. at 265

15  (citations omitted).

16             Here, Class Counsel requests approval of $20,000.00 in litigation costs. The initial

17  allocation already factored in these expenses. Class Counsel's expenses include costs related to

18  filing fees, postage, Westlaw research, PACER, administration costs for the collective, class, and

19  settlement notices, and transcripts for the many depositions. (Brome Decl. ¶ 11.) The most

20  significant expenses were for depositions transcripts (approximately $8,800), storage costs

21  connected to the substantial amount of electronically stored information (approximately $4,300 to

22  date, which will continue to grow), and costs connected to mailing multiple notices (roughly

23  $2,700 so far, with more costs to be accrued in connection with distribution of settlement

24  payments). *Id.* Other costs, such as filing fees, service costs, advertising, PACER fees and legal

25

26

---

27  [4] While Plaintiffs seek fees at the benchmark rate, courts also approve fees above that percentage
    based on similar positive multipliers. *See, e.g., Bower*, 2016 WL 4439875, at *7 (approving 30%
28  fees in wage and hour case resulting in multiplier of 1.37).

research amount to roughly $3,000. *Id.* Plaintiffs anticipate that the total costs including Relativity storage costs and postage to distribute settlement checks will exceed the requested $20,000. *Id.*

Class Counsel's costs were reasonably and necessarily incurred to benefit the FLSA Opt-in Plaintiffs and Rule 23 class members and are reasonable in light of the settlement value and the stage of the proceedings. *See Nelson*, 2017 WL 733145, at *7 (approving $70,000 in costs for a settlement of $1,800,000, settled earlier in litigation). The Court should approve these costs.

## IV. THE COURT SHOULD APPROVE THE REQUESTED SERVICE PAYMENTS

In addition to approving the requested fees and costs, the Court should also approve service payments of $5,000 to the initial Named Plaintiff Aaron Kudatsky and $500 to each of the seven (7) FLSA Opt-In Plaintiffs who were deposed. These payments are reasonable considering the value of the settlement, the average recovery, and the effort and risk of reputational harm the Named Plaintiff faced by bringing this case.

The Ninth Circuit approves of service awards as an appropriate way "to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and sometimes, to recognize their willingness to act as a private attorney general." *Rodriguez v. West Publishing Corp.*, 563 F.3d 948, 958-59 (9th Cir. 2009). Indeed, "[i]ncentive awards are fairly typical in class action cases." *Id.* at 958, citing 4 Newberg on Class Actions (4th ed. 2002) § 11:38, at 81; Eisenberg & Miller, *Incentive Awards to Class Action Plaintiffs: An Empirical Study*, 53 UCLA L.Rev. 1303 (2006). "In wage-and-hour cases, many courts in this district have held that a $5,000 incentive award is 'presumptively reasonable.'" *Franco v. E-3 Sys.*, 2021 WL 2333851, at *8 (N.D. Cal. June 8, 2021).

This Court has previously expressed skepticism towards service awards, finding that they pose a risk that the class representative is blessing an inadequate class settlement.[5] Class Counsel respectfully submits that this approach fails to account for the differences—both qualitative and

---

[5] *See, e.g.,* ECF No. 35, Notice and Order re: Putative Class Actions ("If the proposed settlement by itself is not good enough for the named plaintiff, why should it be good enough for the absent class members similarly situated?").

MOTION FOR ATTORNEYS' FEES AND COSTS, AND SERVICE PAYMENTS Case No. 3:19-CV-07647-WHA

quantitative—between the role played by a named plaintiff and an absent class member in a case like this. Here, as described in his declaration, Named Plaintiff Kudatsky has been actively involved in all phases of this case. (Kudatsky Decl. ¶¶ 3–8.) In addition to assisting Class Counsel in preparing, reviewing and revising the Complaint, responding to written discovery, providing documents, providing deposition testimony, and providing substantial assistance and information to counsel, Mr. Kudatsky participated in two settlement conferences that ultimately led to this settlement. (*Id.*) Absent class members did none of this work, and are benefiting from this settlement because Mr. Kudatsky did it on their behalf. His role entailed active involvement, and considerable time, that led directly to the benefits class members are receiving. Equally important, Mr. Kudatsky took on this responsibility despite the risks of possible stigma and reputational harm. *Deaver*, 2015 WL 8526982, at *15 (a service award "is particularly appropriate in this wage and hour class action, where Plaintiff undertook a significant 'reputational risk' in bringing this action against her former employer"). The case is easily linked to Mr. Kudatsky through internet searches, and there is reason to believe this case impacted his ability to find new employment. (Kudatsky Decl. ¶¶ 9–11.) Unlike absent class members, whose participation in this case is anonymous and unlikely to even register with a prospective employer, Mr. Kudatsky bore substantial risk of reputational harm and loss of employment opportunities. These facts warrant a modest service award of $5,000.00[6]

The $5,000.00 service payment is also appropriate when compared to the total settlement amount. A $5,000.00 service award payment is 0.16% of the $3,150,000.00 settlement, and is less

[6] California courts often approve service awards above this amount. *See Noroma v. Home Point Financial Corp.*, 2019 WL 5788658, *10 (N.D. Cal. Nov. 6, 2019) (awarding $10,000 incentive award where named plaintiff added substantial value to the case, having been actively involved since the case was filed and participating with counsel to prepare the action and discuss settlement documents); *Carter v. XPO Logistics, Inc.*, 2019 WL 5295125, at *4 (N.D. Cal. Oct. 18, 2019) (approving awards of $20,000 each for five named plaintiffs); *Nelson*, 2017 WL 733145, at *7 (approving total of $100,000 in awards, representing 5.6% of the total settlement); *Taylor*, 2016 WL 6038949, at *4 (approving a $15,000 service payment for a $3,750,000 total settlement, with an average award of $2,616); *Galeener v. Source Refrigeration & HVAC, Inc.*, 2015 WL 12977077, at *2 (N.D. Cal., Aug. 21, 2015) ($25,000 service award); *Boyd v. Bank of America*, 2014 WL 6473804, at *7 (C.D. Cal. Nov. 18, 2014) ($15,000 for review appraiser class representative from $5.8 million settlement); *In re Pep Boys Overtime Actions*, 2008 WL 11343369, at *3 (C.D. Cal. Nov. 12, 2008) ($20,000 for each of seven named plaintiffs).

than the average settlement payment of $7,844. All these facts support awarding $5,000.00 service award to Named Plaintiff Kudatsky.

Lastly, the court should approve the $500.00 service payment to each of the seven FLSA Opt-in Plaintiffs who were deposed. These depositions furthered the case in immeasurable ways, and each of the FLSA Opt-in Plaintiffs and Rule 23 Class Members who were not deposed greatly benefited from these depositions. Plaintiffs won class certification and briefed summary judgment partly based on their testimony. The small payment of $500 each recognizes the deponents' contribution to the case, including preparation time and time appearing for their depositions. These payments will not significantly reduce the settlement fund, representing collectively only 0.11% of the total settlement amount. Finally, as to the FLSA Opt-in deponents, an enhancement is appropriate because discovery in collective actions typically proceeds on a representative basis, lowering the burden on individuals. *E.g.*, *Rabin v. PricewaterhouseCoopers LLP*, 2021 WL 837626, at *10 (N.D. Cal. Feb. 4, 2021) (approving $1,000 awards to 24 declarants because they "opened themselves up to some reputational risk and because each declarant will sign a general release"); *Deluca*, 2020 WL 5071700, at *9 ("the $1,000 service payments for plaintiffs who were deposed are reasonable."); *Batiz v. American Commercial Sec. Services*, 2010 WL 11556683, at *2 (C.D. Cal. May 11, 2010); *Gee v. Suntrust Mortg., Inc.*, 2011 WL 5597124 at *2 (C.D. Cal. Nov. 15, 2011) (citing *Hoffmann-Laroche Inc. v. Sperling*, 493 U.S. 165, 170 (1989)). For all these reasons, enhancement payments are appropriate to all FLSA Opt-in Plaintiff and Rule 23 Class members who were deposed. *See, e.g., Hightower*, 2015 WL 9664959, at *12 (approving $1,000 award for each class member who was deposed).

## V.   CONCLUSION

This case achieved an extremely favorable result for the FLSA Opt-in Plaintiffs and Rule 23 Class after hard-fought litigation. The settlement provides excellent value, particularly considering the risk of further litigation. This result is, at least in part, attributable to Class Counsel's skill and experience, and these considerations justify an award of attorneys' fees from the common settlement fund. The 25% fee award proposed as part of this settlement is very reasonable under the circumstances, as are Class Counsel's litigation costs and requested service

1    payments. For these reasons, the Court should grant Plaintiffs' motion.

2    Dated:   September 14, 2021                    **NICHOLS KASTER, LLP**

3                                          By:    s/Daniel Brome
                                                  _____
4                                                 Daniel S. Brome
                                                  Rachhana T. Srey
5
                                          Attorneys for Plaintiffs and the Rule 23 Class
6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28