Matthew C. Helland, CA State Bar No. 250451
helland@nka.com
Daniel S. Brome, CA State Bar No. 278915
dbrome@nka.com
NICHOLS KASTER, LLP
235 Montgomery St., Suite 810
San Francisco, CA  94104
Telephone: (415) 277-7235
Facsimile: (415) 277-7238

Rachhana T. Srey, MN State Bar No. 340133*
srey@nka.com
NICHOLS KASTER, PLLP
4700 IDS Center
80 South 8th Street
Minneapolis, MN  55402
Telephone: (612) 256-3200
Facsimile: (612) 338-4878
*Admitted pro hac vice

Benjamin L. Davis, MD Bar No. 29774*
bdavis@nicholllaw.com
The Law Offices of Peter T. Nicholl
36 Charles Street, Suite 1700
Baltimore, MD 21201
*Pro hac vice application forthcoming

Attorneys for Plaintiff and those similarly situated

**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| Aaron Kudatsky, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>Tyler Technologies,<br><br>Defendant. | Case No. 3:19-CV-07647-WHA<br><br>**DECLARATION OF DANIEL S. BROME IN SUPPORT OF PLAINTIFF'S MOTION FOR ATTORNEYS' FEES AND COSTS**<br><br>**Date: November 4, 2021, 8:00 a.m.**<br>**Courtroom: 12 – 19th Floor**<br><br>**Judge: Hon. William Alsup** |

1. I am an attorney with the law firm of Nichols Kaster, counsel of record for the named Plaintiff, opt-in Plaintiffs, and Rule 23 class in this matter. I make this declaration based upon my personal knowledge, and could so testify if called to do so.

2. The parties participated in two settlement conferences with Magistrate Judge Donna M. Ryu. After the second settlement conference, Judge Ryu made a mediator's proposal, which the Parties accepted. The Parties then negotiated a Memorandum of Understanding based on the mediator's proposal, and then negotiated the long-form Settlement Agreement.

3. The Parties conducted substantial discovery in this case. Plaintiffs responded to Defendant's written requests for production of documents for 31 Opt-in Plaintiffs (including producing hundreds of pages of documents), requests for admission for 12 Opt-in Plaintiffs, and interrogatories for the Named Plaintiff. Defendant responded to Plaintiff's written discovery requests, and produced more than one million pages of documents. Defendant produced policy documents, template documents, class member travel data, compensation records, personnel files, and complete email archives for a sample group of ten Opt-in Plaintiffs, among other things. In total (largely because of the complete email archives), there were over one million pages of documents exchanged in this case. Defendant deposed 7 Opt-in Plaintiffs and the Named Plaintiff. Plaintiff deposed two individuals designated as Rule 30(b)(6) corporate representatives and a senior manager.

4. In consultation with Defendant's Counsel, Class Counsel calculated a reasonable allocation of the settlement amounts for all Class and Collective Members. This allocation was calculated using data obtained from Tyler in conjunction with information provide by Plaintiffs. The damages model uses dates of employment, by position, for all FLSA Opt-in Plaintiffs and California Rule 23 Class Members from Defendant's records. The damages model uses Defendant's travel records for the California Rule 23 Class Members who were not California residents, but instead traveled to California during their work. For those individuals, damages were calculated for weekdays in California, exclusive of the date of travel to California. For example, if someone flew to California on Monday and left on Friday, her damages were calculated for Tuesday through Friday. The damages model uses Defendant's individual payroll

records for Settlement Class Members. The damages model assumes that all ICs worked ten hours per day (or 50 hours per week) prior to March 12, 2020, when the global COVID-19 pandemic effectively ended travel for ICs, and nine hours per day (or 45 hours per week) thereafter.

5. Class Counsel calculates that, if Plaintiffs prevailed on all of their claims, the maximum recovery would be $7,653,620.09. This maximum amount, however, assumes complete success on a number of disputed issues, and does not reflect the risk associated with these claims. When applying reasonable reductions for the likelihood of success on different components of the claims, Class Counsel calculates that a realistic value of the claims here is $2,940,736.01. This value is determined by assuming that Plaintiffs have a 60% chance of success on 1) FLSA liability; 2) establishing a willful violation and therefore a three-year statute of limitations under the FLSA; 3) defeating Defendant's good faith defense and obtaining liquidated damages under the FLSA; 4) maintaining class certification and obtaining class-wide liability on the California claims; 5) obtaining wage statement and waiting time penalties for California residents; and 6) obtaining waiting time penalties for the non-California residents. Additionally, that value assigns a 60% chance of success for Opt-in Plaintiffs as to time worked either a) outside of the ERP division or b) as a senior IC. While those claims were the subject of Defendant's motion to decertify, they were part of the case at the time the settlement was reached (and are part of the case now); assuming the Court would have decertified those claims, those individuals intended to re-file their claims in separate actions. However, bringing new cases entails additional work and delay, and those claims face different challenges. As such, it is appropriate to include these claims within this settlement, and to discount them accordingly. Here, the gross settlement amount represents approximately 41% of the total damages; assuming the Court approves the requested fees, costs, and service payments, the settlement will distribute $2,334,000—30.5% of the maximum value of the claims, or 79% of the realistic value.

6. There are a range of possible outcomes in a case such as this. If Plaintiffs prevailed and recovered their unpaid overtime wages under state and federal law – defeating Tyler's exemption defense, maintaining class certification, and establishing the hours worked explained

above, but not without liquidated damages or wage statement or waiting time penalties – Class Counsel calculates the total wage loss as $3,857,415.50. If Plaintiffs were not able to establish ten hours of overtime per week, the damages could be significantly lower. For example, if Plaintiffs prevailed, but only established five hours of overtime per week (or nine hours worked per day) for the entire time period, the total wage loss amounts to $1,979,880.58.

7. The allocation is based on the realistic value of the claims described in paragraph 6 above ($2,940,736.01). The settlement was then allocated pro rata (after deductions for requested attorneys' fees and costs and service awards, and setting aside a $20,000 contingency fund to address any discrepancies that arise during the notice process) based on each individual's claim. Additionally, the allocation assumes a $200 minimum allocation (this applies to members of the California Rule 23 Class who only traveled to California for a small number of days within the statutory period).

8. Based on this allocation formula, Individual Settlement Amounts average $7,844.07, and range from $200 (for 35 individuals who are only receiving payment for a limited number of days in California) up to $61,442.50. The settlement covers 295 individuals. Of those, 75 would receive $200 - $1,000, 151 individuals would receive $1,000 - $10,000, and 69 individuals will receive over $10,000. The allocation is reflected in Exhibit A to the Parties' settlement agreement.

9. The individuals receiving less than $1,000 are all California Rule 23 Class Members who were not California residents, but instead traveled to California to perform work. According to Tyler's travel records, these individuals worked an average of 9.67 days in California.

10. Plaintiffs' counsel handled this case on a contingency basis. Plaintiffs' Counsel did not receive any payment for their time spent litigating the case, nor did they receive reimbursement for their out of pocket costs during the litigation. Plaintiffs' Counsel alone undertook the financial risk of unsuccessful litigation. Plaintiffs' Counsel's private agreements with their clients (the Opt-in Plaintiffs) provide for reimbursements of litigation costs in addition to payment of attorneys' fees.

11. To date, Plaintiffs' Counsel has already incurred $18,957.28 in unreimbursed costs during this litigation, which it advanced on behalf of Plaintiffs. Nichols Kaster incurred these unreimbursed costs during this litigation, which it advanced on behalf of Plaintiffs. Plaintiffs' Counsel's private agreements with their clients (the Opt-in Plaintiffs) provide for reimbursements of litigation costs in addition to payment of attorneys' fees. A report of our costs to date is attached hereto as **Exhibit A.** Payment of these costs is already factored into the allocation. In addition to the costs incurred to date, Plaintiffs' Counsel will incur additional costs to distribute settlement payments, and to continue storing the substantial amounts of discovery produced by Defendant in this case. Plaintiffs' Counsel therefore requests reimbursement of $20,000.00 in costs. As reflected in Exhibit A, the most significant expenses were for depositions transcripts (approximately $8,800), storage costs connected to the substantial amount of electronically stored information (approximately $4,300 to date, which will continue to grow), and costs connected to mailing multiple notices (roughly $2,700 so far, with more costs to be accrued in connection with distribution of settlement payments). Other costs, such as filing fees, service costs, advertising, PACER fees and legal research amount to roughly $3,000. I anticipate that the total cost to fully implement the settlement agreement, when including Relativity storage costs and postage to distribute settlement checks, will exceed the requested $20,000.

12. The Named Plaintiff, Aaron Kudatsky, brought this action on behalf of a group of workers so that all of Tyler's ERP ICs could benefit. He was actively involved in the litigation from its inception. He met with counsel in-person to discuss the case, then reviewed and provided written comments on the initial complaint. He responded to written discovery requests Defendant propounded, sat for a full day deposition, and attended two settlement conferences. Additionally, Mr. Kudatsky remained responsive throughout the litigation and provided assistance and answers to questions when needed.

13. Following the granting of preliminary approval, Plaintiffs' Counsel distributed the settlement notices to those individuals covered by the settlement by first class mail and email (where available). The notices were substantially identical to the materials provided to the Court

with the preliminary approval motion. To date, we have received release forms from all of the Opt-in Plaintiffs, no objections, and two requests for exclusion. The deadline to return an objection is September 23, 2021.

14. Class members who signed a legal services agreement agreed to a fee award of one-third; the 25% award represents a lower fee than class members originally expected.

15. Work performed by Nichols Kaster attorneys and legal staff is recorded contemporaneously using a timekeeping program called AdvantageLaw. I have reviewed the hours billed to this case. In an exercise of billing judgment, I reduced or removed several entries. After review, I determined that my firm reasonably spent 984.2 hours litigating this matter. At our current rates, the lodestar is $323,385.00. These hours included investigating the claims pre-suit; interviewing potential clients and Opt-in Plaintiffs; preparing discovery responses for Opt-in Plaintiffs; reviewing over one million pages of documents; preparing plaintiff documents to be produced; briefing and arguing a class certification motion and preparing Plaintiffs' motion for partial summary judgment; preparing for and taking depositions of Defendant's witnesses; defending Plaintiff depositions; calculating and revising a detailed damages model; conducting and preparing for two settlement conferences; negotiating the settlement terms; and briefing Plaintiffs' motion for preliminary approval.

16. Plaintiffs' Counsel will spend additional time implementing the settlement agreement and securing final approval. Plaintiffs' Counsel is actively communicating with class members with questions, and will distribute settlement checks following final approval. Additionally, Plaintiffs' Counsel will seek final settlement approval and will prepare for and appear at the fairness hearing. If the Court grants final approval, Plaintiffs' Counsel will spend additional time communicating with class members about their payments. I estimate that this unbilled work will require an additional 20 hours of attorney time and 20 hours of staff time. With these unbilled but expected hours, Nichols Kaster's eventual lodestar will be approximately $335,885.00 based on 1,024.2 hours.

17. Of the 984.2 total hours, 512.3 were billed by attorneys. Most of those were billed by myself (425.3 hours). I have been the primary attorney handling this case. I was involved in

interviewing clients, preparing pleadings, preparing discovery requests, taking and defending depositions, leading the settlement conferences and settling the case, and all briefing. Rachhana T. Srey, a Partner within the firm, also played a significant role in this litigation (73.9 hours). Two other attorneys, Matthew Helland and Reena Desai, also billed time to this case:

| **Attorney** | **Hours** | **Rate** |
|---|---|---|
| Daniel S. Brome | 512.3 | $450 |
| Rachhana T. Srey | 73.9 | $575 |
| Reena I. Desai | 10.6 | $500 |
| Matthew C. Helland | 2.5 | $650 |

18. I joined Nichols Kaster in 2014, and am an associate in the firm's wage and hour practice. I graduated from the University of California Berkeley School of Law in 2011 and was admitted to the California Bar that same year. I have been practicing employment and labor law since then. I have been named to the Rising Stars List, Northern California Super Lawyers, and San Francisco Magazine every year since 2016. In addition to this case, I have significant experience class and collective overtime claims under the FLSA and state law. I was the primary attorney representing the plaintiffs in *Chambers v. Zocdoc*, a collective action brought on behalf of inside sales representatives that was venued in Arizona, *Bisaccia v. Revel*, a class and collective case seeking overtime for inside sales representatives, venued in the Northern District of California, and one of the lead attorneys for the plaintiffs in *Deluca v. Farmers*, a class and collective case seeking overtime for special investigators, venued in the Northern District of California. My time was billed at $450/ hour.

19. Rachhana Srey is a partner in Nichols Kaster's Minneapolis office, where she focuses on class and collective wage and hour cases. She graduated from the University of Minnesota in 2000 and graduated *cum laude* from William Mitchell College of Law in St. Paul, Minnesota in 2004. She has practiced law at Nichols Kaster, PLLP since 2004, primarily handling wage and hour matters. Ms. Srey is a frequent speaker and presenter at national and local continuing legal education programs, and is currently the Co-Chair of the National Employment

Lawyer Association's ("NELA") Wage & Hour Committee and Practice Group and the Co-Chair of the Association of Justice's ("AAJ") Wage & Hour Litigation Group. She is also the Board President of Mid-Minnesota Legal Aid. She is often invited to speak nationally and locally on a wide range of topics, including class and collective action litigation strategies, wage and hour litigation, discovery issues, recent developments in the law, and age and gender discrimination. Her time was billed at $575 per hour.

20. Reena Desai is a partner at Nichols Kaster. She received a B.A. from the George Washington University in 2002 and a J.D. from the University of Minnesota Law School in 2007. She was admitted to the bar of the State of Minnesota in 2007. Ms. Desai has worked at Nichols Kaster since 2009, and before joining Nichols Kaster, she practiced at a large law firm in Minneapolis working on complex litigation. As an attorney at Nichols Kaster, she has represented thousands of employees in dozens of class and collective actions for overtime pay, and has spoken at several national conferences on wage and hour issues. She has been named a Rising Star by Minnesota Super Lawyers every year since 2014. Ms. Desai also serves as an adjunct professor at the University of Minnesota Law School. Her time was billed at $500 per hour.

21. Matthew Helland is the managing partner of Nichols Kaster's San Francisco office, where he focuses his practice on class and collective wage and hour cases filed in California and throughout the country. Mr. Helland was admitted to the Minnesota Bar in 2005 and to the California Bar in 2007. He handles both large class actions and individual matters; throughout his career he has developed a record of success in significant and complex litigation. Mr. Helland has been named to the Rising Stars List, Northern California Super Lawyers, and San Francisco Magazine every year since 2012. In addition to representing workers across the country in wage and hour actions, he has also handled cases involving WARN Act violations, breach of contract, and severance negotiations. His time was billed at $650/ hour.

22. As described in the Nichols Kaster firm resume, previously submitted at ECF No. 78–2, pp. 12–49, Nichols Kaster has extensive experience pursuing wage and hour class and collective actions. Of particular relevance here, Nichols Kaster represented special investigators for their overtime claims in *Deluca v. Farmers Ins. Exch.*, a recent case from this district that

similarly involved contested class certification and cross-motions for summary judgment. Nichols Kaster also represented the plaintiffs in *McKeen-Chaplin v. Provident Savings Bank*, a recent Ninth Circuit decision analyzing the administrative exemption that was central to the summary judgment motions here.

23. My firm also relies extensively on highly-skilled non-attorneys. In this case, non-attorney time accounted for 471.9 hours billed. Most of that time was billed by class action clerks.

| Position | Hours | Rate |
| --- | --- | --- |
| Class action clerks | 280.7 | $175 |
| Paralegals | 73.2 | $175 |
| Electronic discovery support staff | 36.2 | $175 |
| Damages analysts | 78.2 | $175 |
| Law Clerks | 3.6 | $175 |

24. Several members of Nichols Kaster's legal staff performed billable work on this case. The hourly rate for these staff members was $175 throughout the litigation. These employees are integral to the success of a case such as this. The paralegals, law clerks, and class action clerks, damages analysts, and electronic discovery support staff are talented and capable employees who are crucial to our success in prosecuting wage-and-hour actions with multiple plaintiffs.

25. Our class action clerks perform several vital functions. First and foremost, they act as the conduit for information between our attorneys and clients. This responsibility begins prior to the filing of the complaint and continues throughout the litigation and even after settlement. In this role, the class action clerks are responsible for interviewing each client, updating the clients on the status of the case, scheduling and setting up meetings and depositions, and obtaining documents, including declarations, interrogatory responses, responses to document requests, and in the settlement context, releases and claim forms. Class action clerks also assist

attorneys in review of documents, in drafting discovery responses and declarations, and in preparing for depositions and document productions.

26. Plaintiffs' counsel handled this case on a contingency basis. Plaintiffs' Counsel did not receive any payment for their time spent litigating the case, nor did they receive reimbursement for their out of pocket costs during the litigation. Plaintiffs' Counsel alone undertook the financial risk of unsuccessful litigation.

27. Class Counsel entered into a contingency fee agreement with many of the FLSA Opt-ins. This fee agreement entitles Class Counsel to seek attorneys' fees under fee shifting statutes, or to recover one-third of any settlement or judgment. Additionally, Class Counsel was obligated to advance all costs of this proceeding, and agreed to pay any adverse award of costs. The fee agreement in this case is commonly used by Nichols Kaster in similar cases.

28. Because of this contingency fee arrangement, Class Counsel has not received any payment for the time spent litigating this case, nor have they received reimbursement for their out-of-pocket costs during the litigation. Class Counsel alone undertook the financial risk of potentially unsuccessful litigation.

29. As this Court is undoubtedly aware, large-scale wage-and-hour litigation is, by its very nature, complicated and time consuming. Whether handled on a class basis, collective basis, or as a series of individual claims, these actions are difficult and risky. Given the inherent risks, our firm would not have accepted a case such as this on anything other than a contingency fee basis. Likewise, it would have been difficult for Plaintiffs to retain counsel in any other arrangement, particularly considering the amount of damages at stake in relation to the costs of litigating this type of action.

30. Nichols Kaster has litigated numerous wage-and-hour collective actions in which there was little or no recovery. By way of example, in *Epps v. Oak Street Mortgage, LLC*, the initial nationwide collective action was filed in February 2004. After the motion for conditional certification was denied, the plaintiffs filed 24 separate collective actions in district courts across the country. After more than three years of litigation, the defendant filed for Chapter 11

Bankruptcy relief and there was no recovery of attorneys' fees. The firm has handled several other cases with similar results. The firm has a demonstrated track record of taking on cases it believes in despite the risk of recovering nothing.

31. At the time this case was filed, there was no indication that a settlement would be reached or that the outcome of litigation would be successful. Class Counsel has yet to be compensated for any time or expense since the litigation began.

The foregoing statement is made under penalty of perjury and is true and correct to the best of my knowledge and belief.

Dated: September 14, 2021             s/Daniel S. Brome
                                      Daniel S. Brome