Matthew C. Helland, CA State Bar No. 250451
helland@nka.com
Daniel S. Brome, CA State Bar No. 278915
dbrome@nka.com
NICHOLS KASTER, LLP
235 Montgomery St., Suite 810
San Francisco, CA 94104
Telephone: (415) 277-7235
Facsimile: (415) 277-7238

Rachhana T. Srey, MN State Bar No. 340133*
srey@nka.com
NICHOLS KASTER, PLLP
4700 IDS Center
80 South 8th Street
Minneapolis, MN 55402
Telephone: (612) 256-3200
Facsimile: (612) 338-4878
**Admitted pro hac vice*

Benjamin L. Davis, MD Bar No. 29774*
bdavis@nicholllaw.com
The Law Offices of Peter T. Nicholl
36 Charles Street, Suite 1700
Baltimore, MD 21201
**Pro hac vice application forthcoming*

Attorneys for Plaintiff and those similarly situated

**IN THE UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

Aaron Kudatsky, individually and on behalf of all others similarly situated,

Plaintiff,

v.

Tyler Technologies,

Defendant.

**Case No. 3:19-CV-07647-WHA**

**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR FINAL SETTLEMENT APPROVAL; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**

**Date: November 4, 2021, 10:00 a.m.**
**Courtroom: 12 – 19th Floor**

**Judge: Hon. William Alsup**

**TABLE OF CONTENTS**


NOTICE OF MOTION AND MOTION ........ 5

MEMORANDUM OF POINTS AND AUTHORITIES ........ 1

I. INTRODUCTION ........ 1

II. RELEVANT BACKGROUND AND PROCEDURAL HISTORY ........ 1

A. Preliminary approval and distribution of notice ........ 1

B. Allocation ........ 2

C. Objectors ........ 3

III. Argument ........ 3

A. The court should grant final approval of the settlement ........ 3

B. The proposed Settlement is fundamentally fair, adequate, and reasonable ........ 4

i. The strengths of Plaintiffs' case ........ 4

ii. The risk, expense, complexity, and duration of further litigation ........ 6

iii. The risk of maintaining class action status through trial ........ 6

iv. The amount offered in settlement ........ 7

v. The extent of discovery completed and the stage of proceedings ........ 9

vi. The experienced views of counsel ........ 9

vii. Presence of a governmental participant ........ 10

viii. The views of class members ........ 10

C. The FLSA settlement is a reasonable compromise of a bona fide dispute ........ 10

D. The Court should approve the requested attorneys' fees, costs, and service awards ........ 11

E. The Court should approve the *cy pres* recipient ........ 12

IV. CONCLUSION ........ 12

# TABLE OF AUTHORITIES

**Cases**

*Aguilar v. Wawona Frozen Foods*, 2017 WL 2214936 (E.D. Cal. May 19, 2017)....................... 6, 8

*Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245 (N.D. Cal. 2015) .................................. 4, 10

*Bisaccia v. Revel*, 2019 WL 861425 (N.D. Cal. Feb. 22, 2019)..................................................... 7

*Covillo v. Specialtys Café*, 2014 WL 954516 (N.D. Cal. Mar. 6, 2014) ....................................... 10

*Deluca v. Farmers Ins. Exch.*, 2020 WL 5071700 (N.D. Cal. Aug. 24, 2020) ........................ 6, 7, 8

*Dermis v. Kellogg Co.*, 697 F.3d 858 (9th Cir. 2012) ................................................................ 12

*Dixon v. Cushman & Wakefield Western, Inc.*, 2021 WL 3861465 (N.D. Cal. Aug. 30, 2021) ....... 8

*Eddings v. Health Net, Inc.*, 2013 WL 3013867 (C.D. Cal. June 13, 2013) ................................. 12

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998) ............................................................ 4

*Harris v. Vector Marketing Corp.*, 2011 WL 1627973 (N.D. Cal. Apr. 29, 2011).......................... 6

*In re Mercury Interactive Corp. Securities Litigation*, 618 F.3d 988 (9th Cir. 2010)..................... 11

*Jones v. Agilysys, Inc.*, 2014 WL 2090034 (N.D. Cal. May 19, 2014) .......................................... 11

*Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350 (11th Cir. 1982) .............................. 4, 10

*Ma v. Covidien Holding*, 2014 WL 360196 (C.D. Cal. Jan. 31, 2014) ........................................... 9

*McCulloch v. Baker Hughes Inteq Drilling Fluids, Inc.*, 2017 WL 5665848 (E.D. Cal. Nov. 27, 2017) ...................................................................................................................... 12

*Mitchinson v. Love's Travel Stops & Country Stores, Inc.*, 2017 WL 2289342 (E.D. Cal. May 25, 2017) .................................................................................................................. 6, 10

*Moore v. PetSmart, Inc.*, 2015 WL 5439000 (N.D. Cal. Aug. 4, 2015)........................................ 12

*Nat'l Rural Telecommunications Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523 (C.D. Cal. 2004) ........ 9

*Nelson v. Avon Prod., Inc.*, 2017 WL 733145 (N.D. Cal. Feb. 24, 2017)....................................... 8

*Nelson v. Avon Products, Inc.*, 2017 WL 733145 (N.D. Cal. Feb. 24, 2017) ........................ 6, 9, 10

*Officers for Justice v. Civil Service Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982) ........................... 4

*Otey v. Crowdflower, Inc.*, 2016 WL 304747 (N.D. Cal. Jan. 26, 2016) ........................................ 4

*Roe v. Jose Torres L.D. Latin Club Bar, Inc.*, 2020 WL 5074392 (N.D. Cal. Aug. 27, 2020)......... 8

*Stonehocker v. Kindred Healthcare Operating LLC*, 2021 WL 1643226 (N.D. Cal. Apr. 27, 2021) ........ 10

*Stovall-Gusman v. W.W. Granger, Inc.*, 2015 WL 3776765 (N.D. Cal. June 17, 2015) ........ 9

*Ward v. United Airlines, Inc.*, 9 Cal.5th 732 (2020) ........ 5

**Statutes**

Lab. Code § 203 ........ 5

Lab. Code § 226(e)(1) ........ 5

**NOTICE OF MOTION AND MOTION**

Please take notice that on November 4, 2021, at 10:00 a.m., in Courtroom 12 of the above-captioned Court, Plaintiff Aaron Kudatsky, individually and on behalf of the Opt-in Plaintiffs and the California Rule 23 Class (collectively, "Plaintiffs") will, and hereby does, move this Court for final approval of the Parties' settlement. This Motion is based on this Notice, the Memorandum of Points and Authorities and accompanying declaration, the Court's file in this matter, and such other arguments or evidence as may be presented at the hearing on the Motion.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. INTRODUCTION

This case was brought by Implementation Consultants ("ICs") who worked for Tyler Technologies seeking unpaid overtime. This settlement covers a conditionally certified collective of Opt-in Plaintiffs asserting claims under the Fair Labor Standards Act ("FLSA"), as well as a class pursuing California state law claims.

The settlement was worth a total of $3,150,000.00, which represents very good value for the Class Members. After the notice period, every FLSA Opt-in Plaintiff returned the required release form, no Class Members objected, and only two requests for exclusion were received. In light of this favorable response from the Class, and the substantial value the settlement provides for individuals with complex claims, the Court should grant final approval so this matter may be closed and payments distributed.

### II. RELEVANT BACKGROUND AND PROCEDURAL HISTORY

#### A. Preliminary approval and distribution of notice

The Court granted preliminary approval on July, 26, 2021. (ECF No. 130.) Notice was distributed to 295 eligible Class Members and Opt-in Plaintiffs. (Brome Decl. ¶ 2.) Notice was sent by first class mail to all Class Members and Opt-in Plaintiffs; notice was sent by email to 244 of these individuals. (*Id.*) Additionally, both Plaintiffs' Counsel and Defendant posted the Notice to their respective websites (*see* ECF No. 130 at 6). (*Id.*) Ten (10) notices were forwarded to correct addresses, and Plaintiffs' Counsel received fourteen (14) returned mailed notices. (*Id.*) Out of those fourteen, five (5) individuals confirmed receipt of their notice by email. (*Id.*) For the remaining nine (9) individuals, Plaintiffs' Counsel conducted skip traces and remailed notices. (*Id.*) None of those remailed notice were returned. (*Id.*) Plaintiffs' Counsel returned three email bounce-back notifications; Plaintiffs' Counsel was unable to locate alternate email addresses for those class members, but their physically mailed notices were not returned. (*Id.*) Accordingly, the Court can conclude the class received effective notice of the settlement.

Plaintiffs' Counsel did not receive any objections, during the notice period or since (the deadline for objections was September 23, 2021). All of the FLSA Opt-in Plaintiffs affirmatively

signed their release forms to participate in the settlement. Plaintiffs' Counsel received two requests for exclusion from California Rule 23 Class Members. (*Id.* ¶ 3.) In sum, of the 295 Notices of Settlement that were distributed, 293 of those plaintiffs and class members (99.3 percent) are participating in the settlement. (*Id.*)

Plaintiffs' Counsel also received two disputes from participating class members concerning their dates worked and their individual allocation amounts. (*Id.* ¶ 3.) Counsel for the parties met and conferred about these disputes and determined the class members' concerns were valid. (*Id.*) To ensure that all Class Members are treated consistently, Defendant conducted an additional review of the underlying employment data, and determined five other individuals were impacted by incomplete employment data. (*Id.*) Accordingly, Plaintiffs' Counsel recalculated those individuals' allocations based on the updated data provided by Defendant. (*Id.*) As described below, Defendant has agreed to pay the additional amounts associated with this recalculation. (*Id.*)

**B. Allocation**

The Notice of Settlement and Release Forms advised class members of their calculated settlement amount. As explained in the Preliminary Approval Motion, the Settlement Amount of $3,150,000.00 will include settlement payments to all Settlement Class Members, service awards, fees and costs award, and all Individual Settlement Payments, including Employee Taxes, but excluding Employer Taxes.

The Settlement Amount is allocated pro rata, based Plaintiffs' Counsel individual damage calculations of the realistic value of Plaintiffs' claims.[1] Plaintiffs' Counsel calculated the value of

[1] When applying reasonable reductions for the likelihood of success on different components of the claims, Plaintiffs' Counsel calculates that a realistic value of the claims here is $2,940,736.01. (ECF No. 123-1, Brome Prelim. App. Decl. ¶¶ 5–8.) This value was determined by assuming that Plaintiffs have a 60% chance of success on each of the following aspects of the claims: 1) establishing FLSA liability; 2) establishing a willful violation and therefore a three-year statute of limitations under the FLSA; 3) defeating Defendant's good faith defense and obtaining liquidated damages under the FLSA; 4) maintaining class certification and obtaining class-wide liability on the California claims; 5) obtaining wage statement and waiting time penalties for California residents; and 6) obtaining waiting time penalties for the non-California residents. (*Id.*) Additionally, that value assigns a 60% chance of success for FLSA Opt-in Plaintiffs as to time worked either a) outside of the ERP division or b) as a senior IC. (*Id.*) Plaintiffs' Counsel calculates that, if Plaintiffs prevailed on all of their pending claims, the maximum recovery would be $7,653,620.09. (*Id.*)

the claims for all Class and Collective Members using data obtained from Tyler, information provided by Plaintiffs, and reasonable uniform assumptions about hours worked and likelihood of success. Based on those calculations, the Settlement Amount was initially allocated based on each individual's damage amounts, after deducting anticipated attorneys' fees ($787,500.00), costs ($20,000.00), service awards ($5,000.00 to the Named Plaintiff and $500 each to the deponents), and a contingency fund ($20,000). (Brome Decl. ¶ 5.) Following the Notice process, the individual settlement amounts have been recalculated. The reallocation reflects the following updates:

    a) Employment data has been updated for two individuals who submitted valid disputes and for five other individuals identified through the Parties' subsequent meet and confer efforts. This resulted in these individuals' allocations increasing by a total of $128,979.45;

    b) The $20,000.00 contingency fund, as well as $665.84 initially allocated to the two individuals who requested exclusion, have been reallocated to address the increase identified above. Because the $20,000.00 contingency fund did not cover the increases, Defendant has agreed to separately pay the remaining $108,313.61.

Assuming the Court grants final approval, Defendant will deliver settlement checks to Plaintiffs' Counsel within thirty (30) days. Any money that remains after the distribution of checks and the expiration of the time period to cash settlement checks (90 days from issuance) will be donated to Legal Aid at Work as a *cy pres* beneficiary. (Agreement § 10.)

### C. Objectors

Plaintiffs' Counsel has not received any written notice of any objections to the settlement.

## III. ARGUMENT

### A. The court should grant final approval of the settlement

In granting preliminary settlement approval, this Court determined the settlement agreement negotiated by the parties appeared to be fair, reasonable, and adequate. (ECF No. 130.) In the second stage of Rule 23 settlement evaluation, the court "must reach a final determination as to whether the parties should be allowed to settle the class action pursuant to their agreed upon terms," recognizing that "[j]udicial policy strongly favors settlement of class actions. *Bellinghausen v.*

*Tractor Supply Co.*, 306 F.R.D. 245, 252 (N.D. Cal. 2015). Similarly, FLSA collective action settlements require approval from the Department of Labor or a court. *Otey v. Crowdflower, Inc.*, 2016 WL 304747, at *3 (N.D. Cal. Jan. 26, 2016) (citing *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1354–55 (11th Cir. 1982)). Provided the settlement constitutes "a fair and reasonable resolution of a bona fide dispute," the "court may 'approve the settlement in order to promote the policy of encouraging settlement of litigation.'" *Id*. (quoting *Lynn's Food Stores*, 679 F.2d at 1354).

The settlement here is fair, adequate, and reasonable. The Parties reached the settlement as a result of arms-length negotiation during two sessions facilitated by Magistrate Judge Ryu, and the settlement provides substantial value to the class members. The overwhelmingly positive response from class members further supports such a finding. Accordingly, this Court should approve the settlement so that class members may promptly receive their settlement payments.

**B. The proposed Settlement is fundamentally fair, adequate, and reasonable**

The Ninth Circuit's standard of evaluation of the fairness, adequacy, and reasonableness of a settlement asks this Court to balance several factors:

> the strength of plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed, and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement.

*Officers for Justice v. Civil Service Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982). *See also Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998). As outlined below, these factors support final approval of the settlement.

***i. The strengths of Plaintiffs' case***

Plaintiffs contend that Defendant incorrectly classified ICs as exempt from federal and state overtime laws. By incorrectly classifying ICs, Defendant failed to pay appropriate overtime compensation, to pay waiting penalties, and to provide accurate wage statements.

Defendant asserts that its ICs were correctly classified as exempt; Plaintiffs dispute that any exemption applies. The parties filed cross motions for summary judgment focused on the

applicability of the administrative exemption. (*See* ECF Nos. 115, 116.) Plaintiffs maintain that the administrative exemption does not apply, and that a finding of misclassification is more likely than not. Accordingly, in allocating the settlement, Class Counsel calculated the realistic value of the claims by applying a 60% chance of success to the overtime claims under state and federal law. (ECF No. 123-1, Brome Prelim. App. Decl. ¶ 6.). But even if the Court granted Plaintiffs' summary judgment motion, Plaintiffs would still need to prove that they in fact worked over forty hours week; Defendant has challenged whether ICs worked overtime, and whether representative proof can show overtime work *on class and collective basis*. Moreover, even if Plaintiffs established that the class and collective worked overtime, the amount of overtime is hotly contested. Any reduction in the hours worked could dramatically reduce the recovery. Likewise, failing to establish a willful violation (which would eliminate a year of FLSA damages) or to defeat Defendant's good faith defense (which would eliminate liquidated damages and cut FLSA damages in half) would cut Plaintiffs' recovery substantially. By way of example, if Plaintiffs recovered based on a two-year (non-willful) statute of limitations, without liquidated damages, based on an average of 45 hours per week before and after the pandemic, the total recovery would be $1,979,880.58 – significantly less than the value of the settlement here. (*Id.* ¶ 7.) These risks support approval of the settlement.

Liability for the California Rule 23 Class Members who did not reside in California involves additional challenges, including showing that the Labor Code applies to workers based out of state who temporarily work in California. *See Ward v. United Airlines, Inc.*, 9 Cal.5th 732 (2020). The travel group would also face challenges proving damages, because employees worked in California for various amounts of time, and Tyler's travel records show <u>presence</u> in California, but additional evidence might be needed to show <u>work</u> in California.

Plaintiffs' derivative claims also face challenges. For example, Tyler has argued that the wage statement and waiting time penalty claims will fail because any violations were not "knowing and intentional" (Lab. Code § 226(e)(1)) or not willful (Lab. Code § 203). As with establishing a willful violation under the FLSA, Plaintiffs will face complications in proving these violations because Tyler will assert that, based on the advice of counsel, it always believed its classification of ICs was lawful.

While Plaintiffs maintain they have a strong claim, there are clear risks, which favor approval of the Settlement. *See Nelson v. Avon Products, Inc.*, 2017 WL 733145, at **3–4 (N.D. Cal. Feb. 24, 2017) (granting final approval of wage and hour settlement for 289 salespeople and finding that defendant's asserted exemption defenses, difficulty in proving hours, and risk of decertification weigh in favor of settlement). Given the risks inherent in litigation, both on the merits and damages, the Court should approve the settlement.

***ii. The risk, expense, complexity, and duration of further litigation***

Continued litigation of this action would likely be expensive and protracted. This case has already been pending for a year and a half, and has seen numerous contested motions and extensive nationwide discovery. Absent this settlement, the next steps would have been a summary judgment ruling and possibly a bench trial on the misclassification issue, followed by a renewed class certification motion, and then further merits proceedings, and a likely appeal. Defendant and Defense Counsel are experienced, effective litigators. Further litigation would inevitably cause the Parties and the Court to expend substantial time and resources.

Even if Plaintiffs got to trial as a class, wage and hour trials are "complex and expensive." *Deluca v. Farmers Ins. Exch.*, 2020 WL 5071700, at *4 (N.D. Cal. Aug. 24, 2020); *see also Aguilar v. Wawona Frozen Foods,* 2017 WL 2214936, at *3 (E.D. Cal. May 19, 2017) (employment class actions are "by their nature, time-consuming and expensive to litigate."). There is no quick and easy route to payment for Class Members absent this settlement. This factor therefore supports approval of the settlement. *See Mitchinson v. Love's Travel Stops & Country Stores, Inc.*, 2017 WL 2289342, at *4 (E.D. Cal. May 25, 2017) ("actual recovery through settlement confers substantial benefits on the class that outweigh the potential recovery that could have been obtained through full adjudication of the action."). This factor therefore weighs in favor of approval of the settlement.

***iii. The risk of maintaining class action status through trial***

As noted above, the Court certified this class on the issue of whether ICs are misclassified, but not on the claims, and Defendant would certainly challenge continued class treatment. *See Harris v. Vector Marketing Corp.*, 2011 WL 1627973, at *15 (N.D. Cal. Apr. 29, 2011) (at the time motion for preliminary settlement approval was filed the class had been certified and the court considered

Defendant's possible future challenges to certification). The Parties agree that this case is appropriate for settlement on a class-wide basis, but getting to a final judgment on a class basis is far from certain particularly considering the Court's previous indication that doing so could entail "multitudinous and bone-crushing details." (ECF No. 98 at 3.) Given this guidance, the risk of maintaining class action status through trial appears high. This settlement provides substantial relief to class members which could otherwise be unavailable. The Court should approve the settlement.

***iv. The amount offered in settlement***

The settlement will bring substantial relief to the class members. The initial settlement amount, $3,150,000.00, was already substantial, and it has increased as a result of Defendant's agreement to provide additional funds on top of the settlement amount to address the data issues described above and the resulting increased allocations for seven individuals. After that supplemental payment, Defendant will pay a total of $3,258,313.61, and the settlement will distribute $2,450,813.61 to 294 individuals – an average of $8,336.10 per person. (Brome Decl. ¶ 6.) Settlement payments range from $200, for employees who are only receiving pay as California Travel Class Members, up to $61,442.50. (*Id.*) 71 individuals will receive $200 to $1,000, 149 individuals will receive $1,000 to $10,000, and 74 individuals will receive over $10,000. (*Id.*)

While the allocation reflects a wide range of individual payments, those amounts are proportionate to what Settlement Class Members would have received if the case proceeded to a favorable resolution. This allocation "is fair and reasonable because it will be done *pro rata* based on damages calculations which were determined based on [Defendant's] payroll records . . ." *Deluca*, 2020 WL 5071700, at *4. "This method tracks what Opt-in Plaintiffs and Class Members would stand to receive if the case proceeded to trial and they obtained judgment in their favor." *Id.* (citing *Bisaccia v. Revel*, 2019 WL 861425 (N.D. Cal. Feb. 22, 2019) (granting preliminary approval where "settlement payments will be calculated proportionately based on individualized damages calculations using payroll data provided by Defendant").) The settlement allocation is fair and reasonable because it reflects a very good result compared to possible results in litigation, and fairly distributes the funds among Class Members, because it gives the greatest payment to workers with the largest potential claims.

Importantly, Class Counsel reviewed and analyzed payroll data, employment history data, and travel data for Rule 23 Class Members and FLSA Opt-Ins. (ECF No. 123-1, Brome Prelim. App. Decl. ¶¶ 5–6.) Using this data, Class Counsel was able to analyze potential damages in conjunction with the risk of loss to Class Members. (*Id.*) After the supplemental payment, and assuming the Court approves Class Counsel's request of 25% for fees plus costs, the Settlement will distribute $2,450,813.61 to participating class members. (Brome Decl. ¶ 6.) This is a substantial sum that adequately recognizes Class Members' damages, and compensates them appropriately. The settlement distributes—after fees and costs—approximately 80% of the realistic value, which strongly supports approval.

Further, the Parties post-Notice negotiations and agreement strongly supports approval. After receiving valid disputes submitted by two participating Class Members, the Parties engaged in additional discussions—not required by the Settlement agreement, and conducted addition reviews of the underlying data. That additional review confirmed that the data issue was isolated (only seven out of 295 individuals are impacted), and that the claims of five other Class Members warranted recalculation. As a result, Defendant agreed to contribute an additional $108,313.61 to the value of the settlement to ensure that all Class Members are treated consistently, using the best data available. (Brome Decl. ¶ 5.)

The settlement will distribute, after deductions, roughly 80% of the realistic value, or approximately 30.5% of the maximum value, of the claims. Recovery at this rate strongly supports approval. *See Dixon v. Cushman & Wakefield Western, Inc.*, 2021 WL 3861465, at *14 (N.D. Cal. Aug. 30, 2021) (granting preliminary approval where maximum settlement value represented 8% of the maximum total exposure); *Roe v. Jose Torres L.D. Latin Club Bar, Inc.*, 2020 WL 5074392, at *6 (N.D. Cal. Aug. 27, 2020) (gross settlement amount representing 7.07% of maximum potential value provided "good value."); *Deluca*, 2020 WL 5071700, at *4 (finding that a gross settlement amount worth 46.6% of estimated total recovery reached after summary judgment ruling for plaintiffs constituted "a very good result"); *Nelson v. Avon Prod., Inc.*, 2017 WL 733145, at **4-6 (N.D. Cal. Feb. 24, 2017) (finding that gross settlement amount worth 12 to 24% of the alleged overtime damages was "a substantial benefit for the Class"); *Aguilar v. Wawona Frozen Foods*,

2017 WL 2214936, at *5 (E.D. Cal. May 19, 2017) (finding the value of the recovery worth between 47% and 75% of the total possible recovery was a very favorable result, "far greater" than the percentage recovered in other wage and hour cases); *Stovall-Gusman v. W.W. Granger, Inc.*, 2015 WL 3776765, at *4 (N.D. Cal. June 17, 2015) (approving settlement worth 7.3 percent of what Plaintiffs estimated could be awarded at trial); *Ma v. Covidien Holding*, 2014 WL 360196, at *5 (C.D. Cal. Jan. 31, 2014) (settlement providing "9.1% of the total value of the action [was] 'within the range of reasonableness.'").

This factor strongly favors approval.

***v. The extent of discovery completed and the stage of proceedings***

The Parties have conducted extensive discovery, including multiple depositions and multiple sets of written discovery; notably, Defendant has produced over one million pages of documents. (ECF No. 123-1, Brome Prelim. App. Decl. ¶ 4.) Data from Defendant was used to calculate damages for all ICs, not just the FLSA Opt-ins. The parties engaged in arms-length negotiations with the benefit of plenty of evidence on which to weigh the strengths and weaknesses of the case, and with data necessary to calculate damages. *See Nelson*, 2017 WL 733145, at *4 (noting that formal discovery is not required and review of relevant data, such as payroll records—even for a portion of the class—is more important and favors approval). "A settlement following sufficient discovery and genuine arms-length negotiation is presumed fair." *Nat'l Rural Telecommunications Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 528 (C.D. Cal. 2004). The amount of discovery parties have thus far conducted supports a finding that the settlement is fair and reasonable.

***vi. The experienced views of counsel***

Class Counsel have extensive experience in nationwide wage and hour litigation. Class Counsel is confident that this settlement is fair and reasonable, and provides excellent value to class members. (Brome Decl. ¶ 7.) The settlement provides clear advantages over continued litigation, including prompt and certain payment. (*Id.*) This settlement agreement is the result of arms-length negotiations, between experienced counsel representing the interests of Plaintiffs and Defendant, facilitated by an experienced Magistrate Judge, after thorough factual and legal investigation, and

detailed damages calculations. (*Id.*) This factor favors final approval. *Nelson*, 2017 WL 733145 at *4; *Bellinghausen*, 306 F.R.D. at 257.

***vii. Presence of a governmental participant***

There is no governmental participant in this case, rendering this factor neutral. *Nelson*, 2017 WL 733145, at *5; *Mitchinson*, 2017 WL 2289342, at *6.

***viii. The views of class members***

The reaction of the class strongly supports approval. All the FLSA Opt-ins have returned their claim forms, none of the Rule 23 class members objected, and only two sought to exclude themselves from the settlement. (Brome Decl. ¶ 3.) This rate of participating supports approval. *See Stonehocker v. Kindred Healthcare Operating LLC*, 2021 WL 1643226, at *8 (N.D. Cal. Apr. 27, 2021) (describing a settlement with "only three opt-outs and no objections" as an "overwhelmingly positive" response). Further, Plaintiffs' Counsel took steps to ensure that all class members received notice, by performing skip traces and contacting class members by email. (*Id.*) Taking these steps supports granting approval. *Mitchinson*, 2017 WL 2289342, at *6. The rate of participation here and the lack of objection or rejection to the agreement weighs heavily in favor of final approval. *Id.* (two requests for exclusion); *Covillo v. Specialtys Café*, 2014 WL 954516, at *6 (N.D. Cal. Mar. 6, 2014) (38% participation with no objections and no opt-outs "strongly favors approval").

**C. The FLSA settlement is a reasonable compromise of a bona fide dispute**

Settlement of FLSA claims for wages are subject to court approval. *Lynn's Food Stores, Inc. v. U.S.*, 679 F.2d 1350, 1353 (11th Cir. 1982). Court approval is favored "to promote the policy of encouraging settlement of litigation," where the settlement reflects a "reasonable compromise over issues" that are "actually in dispute." *Id.* at 1354. Here, the Settlement is a compromise over numerous issues, so approval is warranted.

As described above and in Plaintiffs' preliminary approval motion (ECF No. 123 at 14–16), there are numerous issues in dispute here: applicability of FLSA exemptions, statute of limitations, appropriateness of collective certification, method of calculating damages, and the actual number of hours worked by Plaintiffs. The settlement reflects a "reasonable compromise" on these issues, in that the class will receive 80% of the realistic value of claims. *See Jones v. Agilysys, Inc.*, 2014 WL

2090034, at *2 (N.D. Cal. May 19, 2014) (settlement that "constitutes between 30% to 60% of recoverable damages" supports approval). Additionally, all of the FLSA Opt-ins are participating in the settlement, which favors approval. *Mar*, 2017 WL 1495098, at *2 (94% participation showed class members' approval.). Accordingly, the settlement satisfies the *Lynn's Food* standard, which is less rigorous than the Rule 23 approval standard, and the Court should approve the settlement of Plaintiffs' FLSA claims.

**D. The Court should approve the requested attorneys' fees, costs, and service awards**

Plaintiffs filed a separate motion for attorneys' fees and costs (ECF No. 132) before the end of the notice period. *See In re Mercury Interactive Corp. Securities Litigation*, 618 F.3d 988 (9th Cir. 2010). As explained there, Class Counsel seeks attorneys' fees from the initial common fund (without any adjustment based on the supplemental payment) at the benchmark amount of 25%, pursuant to the Parties' Settlement Agreement. In addition to the factors set out in that motion (the results obtained, the quality of counsel and the work performed, the complexity of the issues, the risk of nonpayment in contingent litigation, and a lodestar cross-check), Plaintiffs note that the Class Members' responses to the notice of settlement supports granting the requested fees.

Similarly, both the preliminary approval motion and the fee motion addressed the reasonableness of awarding service awards to the Named Plaintiff and the seven deponents. (ECF No. 123 at 28–29; ECF No. 130 at 23–25.) In addition to the reasons set out previously (specifically: the Named Plaintiff has been actively involved in this litigation and has contributed in real and important ways throughout the case, and has taken on unique reputational risk on behalf of the class; the requested awards are modest compared to the total settlement amount and average class member payment), the reaction of the class supports granting approval. The class notice informed class members that the "settlement also provides for a service award of up to $5,000.00 to the Named Plaintiff, and $500.00 to plaintiffs who were deposed." (ECF No. 128-3 at 4.) No class members objected to this—or any other—term.

The universally positive reaction of the class supports approval of the requested attorneys' fees and costs and Plaintiff service awards.

### E. The Court should approve the *cy pres* recipient

In the event that any settlement checks remain uncashed after 90 days, the Settlement Agreement calls for those funds to be donated to Legal Aid at Work as a *cy pres* beneficiary. (Settlement Agreement § III(G)(6)(d), ECF No. 102-2 at 22.) Formerly known as the Legal Aid Society – Employment Law Center, Legal Aid at Work is a non-profit organization "that provides civil legal services to the indigent and pro bono employment law advice to low-income communities." *Moore v. PetSmart, Inc.*, 2015 WL 5439000, at *8 (N.D. Cal. Aug. 4, 2015) (approving designation as *cy pres* recipient, noting that "the work performed by the Employment Law Center bears a substantial nexus to the interests of the class members" in a wage and hour case). Legal Aid at Work "works to ensure that all workers benefit from the laws that regulate pay and work hours." *Eddings v. Health Net, Inc.*, 2013 WL 3013867, at *4 (C.D. Cal. June 13, 2013). Accordingly, Legal Aid at Work satisfies the Ninth Circuit's standard that a *cy pres* recipient be guided by objectives underlying the statutes at issue and the interests of silent class members. *McCulloch v. Baker Hughes Inteq Drilling Fluids, Inc.*, 2017 WL 5665848, at *6 (E.D. Cal. Nov. 27, 2017) (approving Legal Aid at Work as cy pres beneficiary in wage and hour class and collective settlement, citing *Dermis v. Kellogg Co.*, 697 F.3d 858, 865 (9th Cir. 2012)).

## IV. CONCLUSION

The Court has already found, on a preliminary basis, that the settlement is "fair, reasonable, and adequate." (ECF No. 130.) Since that decision, the class members have received notice of the settlement, and are participating in the settlement. The Court should make that decision final and grant approval of the settlement in all respects and enter the Proposed Order of Judgment.

Dated: October 19, 2021

**NICHOLS KASTER, LLP**

By: s/Daniel S. Brome
Matthew C. Helland
Daniel S. Brome
Rachhana T. Srey