UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

AARON KUDATSKY, on behalf of himself, and on behalf of those similarly-situated,

Plaintiffs,

v.

TYLER TECHNOLOGIES, INC.,

Defendant.

No. C 19-07647 WHA

**ORDER RE MOTION FOR FINAL SETTLEMENT APPROVAL AND MOTION FOR ATTORNEYS' FEES**

## INTRODUCTION

In this wage-and-hour class action, defendant technology company allegedly misclassified employees, depriving them of overtime and other wages. Parties now move for final approval of their settlement and plaintiffs move for attorneys' fees and costs. To the extent stated, the motions are **GRANTED**.

## STATEMENT

Prior orders detailed the facts involving our now-familiar plaintiffs, implementation consultants (ICs) and defendant software company, Tyler Technologies, Inc. (Dkt. Nos. 98, 130). Since then, the notice process appears to have reached all 295 putative class members, by either First Class mail or email. Class counsel received no objections. Two class members opted out for a total of 99.3% participation in this settlement. The total settlement fund now

comes to $3,258,313.61 (Brome Final. App. Decl. ¶¶ 2–3; Brome Decl. Re Class Service Provisions ("Brome Addendum Decl.") ¶ 9).

Additionally, two class members disputed Tyler's calculations of their dates of employment and settlement payments. In response, parties met and conferred. Tyler determined that it had used "incomplete employment data" for the two objecting class members. It agreed to revise its calculation of those two and, *su esponte*, the hours of five others. This entitled the class to an additional $128,979.45. To pay for this, the agreement provides for draining the contingency fund ($20,000) and using the funds that would have been paid to two opt-out plaintiffs $665.84). That not sufficing, Tyler agreed to foot the remaining $108,313.61 (the "supplemental payment") to cover the additional funds owed to the seven employees with corrected employment data (Brome Addendum Decl. ¶¶ 8–9).

Parties now move for final approval of the settlement and for fees and costs. There are no oppositions. This order follows a stipulated motion for final approval and a fairness hearing (telephonic due to COVID-19).

**ANALYSIS**

"The class action device, while capable of the fair and efficient adjudication of a large number of claims, is also susceptible to abuse and carries with it certain inherent structural risks." *Officers for Just. v. Civ. Serv. Comm'n of City & Cty. of San Francisco*, 688 F.2d 615, 623 (9th Cir. 1982). A settlement purporting to bind absent class members must be fair, reasonable, and adequate. *See* FRCP 23(e). Rule 23(e)(2) requires district courts to employ a two-step process: *First*, the parties must show the district court will likely be able to approve the proposed settlement. *Second*, the district court must hold a hearing to make a final determination of whether the settlement is fair, reasonable, and adequate. We have arrived at step two.

Our court of appeals recently explained that the final fairness assessment must analyze the eight *Churchill* factors: (1) the strength of the plaintiff's case; (2) the suit's risk, expense, and complexity; (3) the risk of maintaining class action status throughout the trial; (4) the amount; (5) the extent of discovery and stage; (6) abilities and views of counsel; (7) a

2

governmental participant (if any); and (8) the "reaction of the class members of the proposed settlement." *Kim v. Allison*, 8 F.4th 1170, 1178–79 (9th Cir. 2021) (quoting *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011)); *Churchill Vill. v. Gen. Elec.*, 361 F.3d 566 (9th Cir. 2004). Additionally, Rule 23(e)(2) requires the district court to consider the adequacy of the actual notice procedure, "the terms of any proposed award of attorney's fees," scrutinize the settlement for evidence of collusion or conflicts of interest, and consider other, relevant factors before deeming the settlement fair. *See Briseño v. Henderson*, 998 F.3d 1014, 1024–26 (9th Cir. 2021).

In short, in consideration for the dismissal of this action with prejudice and a release of claims, Tyler agrees to make a settlement payment of $3,258,313.61. Of this, $2,450,813.61 will be allocated to the 294 participating class members on a pro-rata basis. This order finds the proposed settlement fit for final approval.

1. **THE *CHURCHILL* FACTORS.**

This order reviews the eight *Churchill* factors. The factors support settlement.

*First*, the strength of plaintiffs' case supports settlement. Plaintiffs would have had the burden of establishing that Tyler violated various wage laws. Most notably, plaintiffs contend that Tyler erroneously mis-classified ICs as administratively exempt from the overtime requirement (*see* Cal. Lab. Code §§ 510, 1194, and 1198, and IWC Wage Order(s)). California's Wage Order 4–2001 provides that for the administrative exemption to apply, the employee must (1) perform "office or non-manual work directly related to management policies or general business operations" of the employer or its customers, (2) "customarily and regularly exercise[] discretion and independent judgment," (3) "perform[] under only general supervision work along specialized or technical lines requiring special training" or "execute [] under only general supervision special assignments and tasks," (4) be engaged in the activities meeting the test for the exemption at least fifty percent of the time, and (5) earn twice the state's minimum wage.

1  The parties briefed cross motions for summary judgment on this claim. Plaintiffs' counsel estimates 60% chance of success on the claim (Brome Prelim. App. Decl. ¶ 6). The ICs would have had to show, as a class, both that they worked overtime and that due to misclassification, Tyler owed them money for that time. Showing a willful violation or losing to Tyler's good faith defense would cut the FLSA damages substantially. Failure to show that Tyler acted knowingly, intentionally, and willfully could defeat the wage-statement and waiting-time-penalty claims. *See* Lab. Code §§ 226(e)(1), 203. Furthermore, plaintiffs would be required to establish that out-of-state workers are entitled to all provisions of the labor code by proving not just that they traveled into California (per Tyler records) but also that they performed work in California. *See Ward v. United Airlines, Inc.*, 9 Cal.5th 732 (2020). Therefore, substantial risk remains for plaintiffs, both at summary judgment and at trial.

*Second*, the risk, expense, and complexity of the case supports settlement. Our class certification order held,

> For now, certification applies solely to this issue: whether Tyler properly classified ERP ICs as administratively exempt from overtime and other California labor laws (or not). We will revisit possible certification of the other claims after we hold a trial on the certified issue. At that point, the Court will be better-informed to process the multitudinous and bone-crushing details of how plaintiff might establish class-wide overtime liability

(Dkt. No. 98 at 3). The order then held in abeyance, "the motion to certify a class as to the overtime, wage statement, waiting period, and UCL claims" (*ibid.*). Therefore, only the legal question of the administrative exemption stands ready for summary judgment and, perhaps, trial. Another round of class certification, dispositive motions, and possibly another trial would have to follow on the remaining claims. Even if summary judgment were to enter for plaintiffs, a damages phase could require still more painstaking litigation. This factor supports the settlement agreement.

*Third*, the risk of maintaining class action status throughout the trial militates in favor of settlement. Currently, to repeat, only the issue of administrative classification glues this class together — future class certification motions on the other claims await. Establishing class-

wide liability would require digging for common proof regarding whether the nonresident class members performed work in California and whether the class members worked overtime. Plaintiffs would be required to show such common proof exists. This factor favors settlement.

*Fourth*, the amount of the settlement award endorses the settlement agreement. Early on, Tyler agreed to a settlement payment of $3.15 million. Now, that figure has increased to $3,258,313.61, and the settlement will distribute $2,450,813.61 to 294 individuals (the 295-member class, minus two opt outs, plus named-plaintiff Aaron Kudatsky). This amounts to an average of over $8,000 per person. Assuming this order accepts 25% to counsel for fees and costs, plaintiffs contend that Tyler will pay 79% of the reasonable value of plaintiffs' claims (30.5% of the maximum value of $7,653,620.09). Especially considering the likely costs of protracted litigation, this order finds the recovery amount fair and reasonable. *See In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000) (Brome Final App. Decl. ¶¶ 5–7; Brome Prelim. App. Decl. ¶¶ 5–8; Brome Fees and Costs Decl. ¶ 5).

*Fifth*, the stage of the proceedings supports settlement. A class was certified. Motions for partial summary judgment remain pending. Defendants have produced over one-million pages of documents, which information class counsel used to calculate potential damages. Parties have conducted eleven depositions. In short, this settlement occurred in the shadow of trial, and each got to preview the evidence that the other side would have shown to a jury. The parties also had the benefit of settlement discussions under the guidance of Magistrate Judge Ryu (Brome Prelim. App. Decl. ¶ 4).

*Sixth*, the abilities and views of counsel support settlement. Class counsel has extensive experience in wage-and-hour cases. *See, e.g., Parr v. Stevens Transp., Inc.*, 2019 WL 4933583, at *3 (N.D. Cal. Oct. 7, 2019); *Oman v. Delta Air Lines, Inc.*, 230 F. Supp. 3d 986 (N.D. Cal. 2017) (Judge William H. Orrick). This order finds counsel have diligently applied nose to the grindstone to litigate class certification and to move for partial summary judgment. Counsel for both sides have approached settlement negotiations with the same zeal.

*Seventh*, no government entity participated in this action. This factor is neutral.

*Eighth*, the reaction of the class members of the settlement is positive, with 99.3% participation and favorable resolution of disputes that enriched the class by more than one-hundred thousand dollars. No class member objected (Brome Prelim. App. Decl. ¶ 3). Hence, this factor supports the settlement.

In sum, the settlement agreement ranks highly under the *Churchill* factors.

### 2. RULE 23 FACTORS AND OTHER RELEVANT CONSIDERATIONS.

Consideration of the *Churchill* factors alone does not suffice. *See Briseño*, 998 F.3d at 1025–26. This order accordingly evaluates whether the settlements fairly, reasonably, and adequately compensate the class under the factors enumerated in Rule 23(e)(2) not fully addressed by the *Churchill* factors and other, relevant considerations.

*First*, "The class must be notified of a proposed settlement in a manner that does not systematically leave any group without notice." *Officers for Justice v. Civil Serv. Comm'n of City & Cty. of San Francisco*, 688 F.2d 615, 624 (9th Cir. 1982) (citation omitted). The Court has previously approved the parties' proposed notice procedures for the class (Dkt. No. 130). In the motion for final approval, class counsel declared that counsel mailed notice of the settlement to all 295 class members and opt-in plaintiffs. Class counsel emailed notice to 244 of the same. Class and Tyler's counsel posted the notice to their website. Ten First-Class notices were forwarded to new mailing addresses. Fourteen First-Class notices were returned undeliverable. Five of the fourteen recipients confirmed receipt by email, however. Class counsel performed skip traces for the remaining nine, and re-mailed notices. These appear to have been delivered. Of the emailed notices, three bounced back. Counsel could not identify other email addresses, but the First-Class-mailed notices appear to have gone through. Therefore, it appears all class members got notice. The notice informed class members about all key aspects of the settlement, the date, time, and place of the fairness hearing, the process for objection and opt-out, and estimated recovery in settlement (Brome Final. App. Decl. ¶¶ 2, 3). This notice appears effective and supports settlement.

*Second*, the plan of allocation is also fair and reasonable. After expenses, attorney's fees, administrative costs, and service awards are paid out, the final settlement will deliver

6

$2,450,813.61 to 294 individuals. The net proceeds will be apportioned to each participating class member with no amount reverting to defendants. "The damages model assumes that all ICs worked ten hours per day (or 50 hours per week) prior to March 12, 2020, when the global COVID-19 pandemic effectively ended travel for ICs, and nine hours per day (or 45 hours per week) thereafter" (Brome Fees and Costs Decl. at ¶ 4). Settlement payments range from $200, for employees who are only receiving pay as California travel class members, up to $61,442.50. Seventy-one individuals will receive $200 to $1,000; 149 individuals will receive $1,000 to $10,000; and 74 individuals will receive over $10,000 (Brome Prelim. App. Decl. ¶¶ 8–9). Based on the risks of establishing liability and damages at trial — and the risks of maintaining class certification — this plan of allocation presents a minimally fair recovery to class members.

*Third* and *fourth,* as stated at preliminary approval, the settlement agreement does not reclassify employees, but the scope of release is appropriately narrow. While not required, reclassification would be an important remedy not captured by the common fund. Parties address this problem by explicitly *not* releasing any claims that accrued after April 19, 2021. Furthermore, the release of claims is limited to those defined by our certified class.

*Fifth*, the *cy pres* recipient, Legal Aid at Work, helps employees, *pro bono*, to become private attorneys general enforcing the statutes at issue in this case. *See Dermis v. Kellogg Co.*, 697 F.3d 858, 865 (9th Cir. 2012). Similarly, the organization supports the interests of silent class members. *See ibid*. This order approves Legal Aid at Work as *cy pres* recipient.

3. **FLSA.**

Settlement of FLSA claims must be approved by the district court or the Labor Secretary. Where FLSA class members are similarly-situated to other class members, most district courts analyze the settlement to see if it represents "a fair and reasonable resolution of a bona fide dispute over FLSA provisions." See *Otey v. Crowdflower, Inc.,* 2016 WL 304747, at *3 (N.D. Cal. Jan. 26, 2016) (Judge John S. Tigar), quoting *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1355 (11th Cir. 1982); see also 29 U.S.C. § 216(b). The legal issues at play in the dispute for FLSA and non-FLSA class members flow from the same alleged misconduct by

1  Tyler.  Thus, the FLSA class members appear similarly-situated.  The bona fide disputes

2  include applicability of FLSA exemptions, defenses including scienter, statutes of limitations,

3  hours worked, and method of calculating damages.  All FLSA opt-ins sent in their release of

4  claims forms and are participating.  The monetary reward appears fair and reasonable,

5  especially for FLSA class members.  This order finds that plaintiffs have met the FLSA

6  standard for settlement approval.

In short, having considered the applicable factors, this order finds the proposed class settlement is fair, reasonable, and adequate so as to warrant final approval.  The Court, however, shall retain jurisdiction to enforce the terms of the settlement for just six months from the date of this order.  Accordingly, and to the extent stated, final approval of the proposed class settlement and plan of allocation is **GRANTED**.

**4.    MOTION FOR ATTORNEY'S FEES, COSTS, AND INCENTIVE AWARDS.**

*A.    FEES.*

A district court must ensure that attorney's fees are "fair, adequate, and reasonable." *Staton v. Boeing Co.*, 327 F.3d 938, 963–64 (9th Cir. 2003).  "In 'common-fund' cases where the settlement or award creates a large fund for distribution to the class, the district court has discretion to use either a percentage or lodestar method."  Counsel argue that the percentage method should be applied in the instant motion.  Our court of appeals has recognized twenty-five percent of the common fund as a benchmark award for attorney's fees.  *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1029 (9th Cir. 1998).  California law authorizes the percentage method for awarding attorney's fees in common fund cases. *See Laffitte v. Robert Half Int'l Inc.*, 1 Cal. 5th 480, 503 (Cal. 2016).  The undersigned finds the percentage method to be appropriate under the circumstances.

Counsel seeks $787,500.00.  This represents 25% of the original gross settlement fund, but only 24% of the revised gross settlement fund (of $3,258,313.61).  This discrepancy is due to the fact that counsel did not seek 25% of Tyler's additional payment to the fund (those

1   additional payment, undertaken voluntarily, amounted to $108,313.61).  The $787,500.00

2   represents 32% of the net fund ($2,450,813.61) (Brome Addendum Decl. ¶¶ 8–9).

3       Class counsel conducted substantial motion practice and extensive discovery.  Further,

4   counsel also worked on a contingent-fee basis despite the risks of litigation, which were

5   substantial in this case — and for approximately two years.  The issues here are clearly

6   complex:  our order certified a class only on the *issue* of classification, leaving many more

7   litigious issues for the ultimate question of liability, were it to proceed.  Counsel has achieved a

8   payment of 30.5% of the maximum value of the claims, or 79% of the realistic value.  This

9   appears to be a fair settlement.  The 25% fee scheme received no objections from class

10  members, who received the proposed fee percentage with the notice of settlement and

11  opportunity to opt-out (Brome Final App. Decl. ¶ 3).

12      Finally, the lodestar is $323,385.00, and lodestar multiplier comes out to 2.34:  this

13  calculation uses 984.2 hours total to date and another forty hours of work split evenly between

14  lawyers and non-lawyers to finalize settlement payments.  Fees ranged from $175/hour for

15  non-lawyer hours to $575 for partner Rachhana T. Srey, $450 for associate Daniel Brome, and

16  short bursts by attorneys Matthew Helland ($650/hour) and Reena Desai ($500/hour) (*ibid*.).

17  These compare favorably to recent approvals.  *See, e.g., Bisaccia v. Revel Sys. Inc.*, 2019 WL

18  3220275, at *8 (N.D. Cal. July 17, 2019) (Judge Haywood Gilliam).  All of these factors weigh

19  in favor of this attorney's fees payment (Brome Fees and Costs Decl. ¶¶ 15–17, 23–25).

20      The fees appearing reasonable, the award is **GRANTED**.

21      **B.    COSTS.**

22      Counsel has incurred a total to date (as of September 14, 2021) of $18,957.28 in

23  unreimbursed costs but it anticipates additional costs associated with distributing settlement

24  payments and continuing to store electronic discovery, for a total of $20,000.00 in costs

25  (Brome Fees and Costs Decl. ¶ 11).  The largest component of claimed expenses are  for

26  deposition transcripts (approximately $8,800.00).  The second-largest are electronic storage

27  costs ($4,300.00 to date).  Counsel also seek reimbursement for mailing notices ($2,700.00 to

28  date).  The latter two will increase with settlement.  Other costs flow from filing, Pacer,

advertising, and legal research, and a few miscellaneous categories, and amounted to $3,000.00 (*see id*. ¶¶ 11–25). Appearing reasonable for this two-year and multi-million-dollar action, the $20,000.00 request for costs is **APPROVED**.

### C. INCENTIVE AWARD.

Plaintiff Kudatsky requests $5,000 as an incentive award. Tyler has not lodged any opposition to this request. Kudatsky declares, under oath, that he worked closely with class counsel throughout the litigation, providing about 80 hours of work. Such work included providing relevant documents to class counsel, reviewing, and discussing documents including Tyler's written discovery requests, preparing for a deposition, being deposed for a full day, attending two settlement conferences with Judge Ryu, and discussing the case with other class members (*see id*. ¶¶ 4–9).

As cautioned in the "Notice Regarding Factors to be Evaluated for Any Proposed Class Settlement," "[a] request for an incentive payment is a red flag." Incentive awards pose the risk that a class representative has gone along with a settlement, not because it secures a good outcome for the class, but simply, in part at least, for the incentive award. Such awards should therefore be subject to careful scrutiny. Kudatsky declares that he sought employment in the same technology field after leaving Tyler's employ but suffered eleven months of unemployment after initiating this suit. His name tops the marquee. An award of $1,000 to Kudatsky is reasonable under these circumstances and no others are warranted (Dkt. Nos. 35, 132 at 18, 19).

In sum, class counsel shall receive $20,000.00 as reimbursement for litigation expenses, to be paid promptly from the settlement fund. As for attorneys' fees, defendant shall wire transfer fifty percent of the total $787,500.00 as of the effective date as defined in the settlement. The remaining fifty percent shall be paid when defendants certify that all funds have been properly distributed and the file can be completely closed.

# CONCLUSION

To the extent stated, final approval of the class settlement, attorneys' fees, costs, and incentive awards, are **GRANTED**.

**IT IS SO ORDERED.**

Dated: November 17, 2021.

_____
WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE